IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Universal Tube & Rollform Equipment Corporation<br>26202 Glenwood Rd. Box 287<br>Perrysburg, OH 43552<br><br>*Plaintiff*<br><br>-vs-<br><br>YouTube, Inc.<br>2nd Floor 71 E. Third Avenue<br>San Mateo, CA 94401<br><br>and<br><br>Chad Hurley<br>(Address Unknown)<br><br>and<br><br>Steve Chen<br>(Address Unknown)<br><br>*Defendants* | Case No. 06-2628<br><br><br><br>Judge: James G. Carr<br><br><br>SECOND AMENDED COMPLAINT WITH REQUEST FOR INJUNCTIVE RELIEF AND WITH JURY DEMAND ENDORSED HEREON. |

Plaintiff, Universal Tube & Rollform Equipment Corporation ("uTube"), by and through its undersigned attorneys, alleges for its Complaint as follows:

**INTRODUCTION**

1.      This action has been filed by uTube, to stop the violation of its legal rights by Defendants YouTube, Inc., Chad Hurley, and Steve Chen whose illegal acts have resulted in the direction of millions of nuisance internet visitors to the Plaintiff's website.  Plaintiff has

1

used the internet domain name <utube.com> since 1996 for its business of selling used tube and pipe mills and rollform machinery.

2.        Defendant YouTube, Inc. officially launched its services in December 2005. YouTube's combination of providing illegal content, and its willingness to lose between $500,000.00 and $1,000,000.00 of its investor's money each month, has catapulted the company's website at <youtube.com> to the top of the internet traffic charts.

3.        Due to confusion in the minds of consumers, and the massive amount of visitors seeking the illegal content provided by Defendants, the spillover of nuisance traffic to Plaintiff's neighboring website at <utube.com> has destroyed the value of Plaintiff's trademark and internet property, repeatedly caused the shut down of Plaintiff's website, increased Plaintiff's internet costs by thousands of dollars a month, and damaged the Plaintiff's good reputation. Plaintiff seeks preliminary and permanent Injunctions, the transfer of the <youtube.com> domain to Plaintiff, damages, costs and attorneys' fees as authorized by the Lanham Act and Ohio Law.

## JURISDICTION AND VENUE

4.        This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1331 (Federal Question), 15 USC §1121 and 28 USC §1338 (Trademark Disputes), 15 USC §1116 (Injunctive Relief), and 28 USC §2201-02 (Federal Declaratory Judgment Act).

5.        This Court has supplemental jurisdiction over the additional causes of action pursuant to 28 USC §1367, as claims so related to other issues in the action that they form part of the same case or controversy.

6.        This Court has personal jurisdiction over the defendants due to their continuous and systematic contacts with this district.

7.        Venue is proper in the United States District Court for the Northern District of Ohio, Western Division under 28 U.S.C. §§1400(a) and 1391(b).

## THE PARTIES

8.        Universal Tube & Rollform Equipment Corporation ("uTube") is a corporation organized under the laws of the state of Ohio, with its principal place of business in Perrysburg, Ohio.  uTube was formed in 1985.

9.      Defendant, YouTube, Inc. ("YouTube") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California. YouTube was formed on October 14, 2005.

10.     Chad Hurley is an individual residing in the state of California, and the co-founder and CEO (Chief Executive Officer) of YouTube.

11.     Steve Chen is an individual residing in the state of California, and the co-founder and CTO (Chief Technical Officer) of YouTube.


## FACTUAL BACKGROUND

12.     Since 1985, Universal Tube & Rollform Equipment Corporation has been committed to being the number one supplier of used tube and pipe mills and rollform machinery in the world.

13.     uTube primarily sells reconditioned equipment that makes pipes and tubing from flat coils of metal.

14.     uTube has one of the largest selections of used tube and pipe mills in the world.  It utilizes over 125,000 square feet of warehouse space, and maintains approximately $6.5 million  worth of equipment and inventory on hand.

15.     uTube also represents many new equipment manufacturers and offers rebuilding, engineering, import and export services.

16.     In 1996, uTube purchased the domain name <utube.com> as its first step toward establishing a presence on the internet. uTube's website has developed into an important source of contact between the company and its customers, representatives, suppliers, prospective customers and other interested parties. The website is essential to the continued success and future prospects of the company.

17.     Since its inception, uTube has spent more than $1.5 million in advertising and promotion of its trade name, trademarks, products, services, and its www.utube.com website.

18.     uTube has also applied for federal registration of the UTUBE mark and is the owner of U.S. Trademark Application Serial No. 77/023852 with the United States Patent and Trademark Office.

19.      The predecessors of YouTube Inc. registered the domain name <youtube.com> much more recently, in February of 2005.

20.     After incorporating in Delaware in October 2005, Defendants, with the aid of experienced counsel and with funding from an established venture capital firm, went forward with its site's official public release in December, 2005.

21.     The foundation of YouTube is its so called "user-generated content." However, much of that content is not "user generated" at all. Rather, it is the "user-stolen" intellectual property of others, and YouTube is a willing partner in that theft.

22.     As an integral part of its service, YouTube permits, encourages, facilitates and induces the uploading by its members of thousands of unauthorized copies of copyrighted songs and music videos each day onto servers that it owns or controls, thereby enabling its members and the public to access infringing content for free. YouTube displays advertisements, from which it derives significant revenue, in association with infringing content.

23.     YouTube requires in its current Terms of Use that users:

> … grant YouTube a worldwide, non-exclusive, royalty-free,
> sublicenseable and transferable license to use, reproduce, distribute,
> prepare derivative works of, display, and perform the User Submissions in
> connection with the YouTube Website and YouTube's (and its successor's)
> business, including without limitation for promoting and redistributing
> part or all of the YouTube Website (and derivative works thereof) in any
> media formats and through any media channels.

24.     YouTube is therefore aware that it cannot post content without first obtaining a license to those works.

25.     YouTube harbors no illusion that the countless users who have posted bootleg videos and pirated sound records to YouTube have done so lawfully. YouTube simply posts the infringing material and leaves it there until it receives a take down notice from the copyright holder, apparently believing that its willful infringement is lawful until someone complains.

26.     YouTube and its website allow people to watch and share videos worldwide through the internet with virtually no accountability as to the subject matter or legality of the videos. YouTube facilitates and promotes the infringement of copyrighted works and the dissemination of illegal pornography through its service.

27.     YouTube condones the public exhibition of lewd and other disgusting videos which depict:

    i.  **A man committing suicide** -

       http://www.youtube.com/watch?v=51dpzsp6tH8

    ii.  **Torture fetish** - http://www.youtube.com/watch?v=iGeSiaF9Orw

    iii.  **Tampon fetish** -  http://www.youtube.com/watch?v=K9ybX7zckxc

    iv.  **Pubic hair fetish** -  http://www.youtube.com/watch?v=ZtRLlJfBOZE

    v.  **Discussion of corpse defilement** -  http://www.youtube.com/watch?v=92aUX_fgc-U

    vi.  **Child pornography** -  http://www.youtube.com/watch?v=DeD-mzsfBIg&mode=related&search

28.    By the time of YouTube's official public release, it was becoming clear that its users were sharing more than just their own videos to their own circles of friends.

29.    YouTube's website visitors viewed, millions of times over, unauthorized copyrighted material from major television networks such as NBC, ABC, CBS, and Fox, from the cable networks, and from a number of other media sources.

30.    What was originally started in February, 2005 – prior to the Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 125 S.Ct. 2764, 2778, 2782 (2005) decision -- as a personal video sharing service, has since morphed and grown into the leading video entertainment destination on the Internet, with people watching more than 100 million videos on the site daily.

31.    This dramatic and progressive increase in internet traffic is significantly based upon YouTube's illegal content and its lack of fiscal responsibility which allows it to continue to lose, upon information and belief, between $500,000 and $1,000,000 per month.

32.    YouTube is believed to have more than seven million videos currently posted, with more than 65,000 additional videos being uploaded daily. It has been reported that YouTube's video service currently accounts for sixty percent (60%) of all videos watched online.

33.    Upon information and belief YouTube's website currently attracts millions of visitors per day.

34.    News reports indicate that YouTube recently removed nearly 30,000 videos after complaints from a number of Japanese copyright owners. The videos allegedly contained copyright infringing material purloined from Japanese movies, music videos, and television.

35.    The Grokster decision provided clear notice to YouTube that its actions are illegal. In that case the Supreme Court ruled that trading copyrighted videos and music files online without authorization from copyright holders is illegal.

36.    Despite knowledge of such large-scale infringing activity, YouTube has willfully engaged in, and continues to engage in, and benefit from, the business of unauthorized reproduction, distribution, and/or public performance of copyrighted works.

37.    As a result of its actions, YouTube has been sued by Robert Tur for copyright infringement.  Tur is the photographer of the O.J. Simpson chase scene and of the shocking attack upon Reginald Denny at the start of the 1992 Los Angeles riots. Tur's video is the subject of unauthorized postings and viewings at the YouTube site. News reports suggest that YouTube will become a major litigation target in light of its activities.  Plaintiff is aware that at least one law enforcement agency has attempted to contact YouTube to demand removal of a video posting featuring child pornography.

38.    NBC demanded that YouTube remove  Saturday Night Live's "Lazy Sunday: Chronicles of Narnia" video.  YouTube knew before this notice that the video was infringing and that it was attracting numerous visitors to its site.

39.    YouTube has published numerous videos by comedians Jon Stewart and Stephen Colbert, causing Viacom Inc. to demand that those videos be purged from YouTube.

40.    Universal Music has demanded that YouTube take down infringing copies of music videos which it or its artists hold the rights to.  This led Universal Music Chief Executive Doug Morris to express his view that "What doesn't work for us are companies trying to build businesses using our content without getting a fair share."

41.    YouTube has built its business on user-stolen intellectual property of others, and is a willing partner in that theft.  Some estimates suggest that up to 80% of YouTube's traffic is generated from copyright infringing content.  Others estimate that YouTube delivers 100 million videos per day.  Thus YouTube may be committing copyright infringement 80 million times a day making them the biggest copyright infringer in history.

42.    On or about October 10, 2006, Google announced that it intended to acquire YouTube for $1.65 billion in stock.  This announcement dramatically increased the internet traffic to <youtube.com>.

43.    As YouTube's internet traffic increased, so did the traffic to Plaintiff's website at <utube.com>.  Plaintiff's website traffic has increased from a few thousand visitors per month to approximately 70,000 visitors per day, and is still climbing.  The visitors mistakenly arrive at Plaintiff's website as a result of confusion as to the source of Plaintiff's and Defendant's services caused by the similarity of <utube.com> to <youtube.com>.

44.    The recent, dramatic increase in traffic to Plaintiff's <utube.com> website has caused Plaintiff's web servers to crash on multiple occasions.  Finally, Plaintiff was forced to change internet service providers multiple times because its original service provider did not have sufficient bandwidth to support such massive traffic loads.  As a result, Plaintiff's internet hosting fees have increased from less than $100.00 per month to more than $2,500.00 per month.

45.    The 70,000 confused <utube.com> internet website visitors are not the kinds of visitors that Plaintiff wants at its website.  Furthermore, these unwanted visitors often fill out Plaintiff's sales request form at <utube.com> seeking more information in a vulgar and belligerent manner.

46.    Exhibit 1 is a message left by one visitor who asks "WHERE THE FUCK ARE ALL THE VIDEOS??? 1.5 BILLION FOR THIS PIECE OE SHIT WEBSITE? GOOGLE GOT TAKEN!"

47.    Exhibit 2 is an inquiry from a police department in Australia.  It states:  "YOU CURRENTLY HAVE A VIDEO TITLED CUNT THE MOVIE. IT MAY CONTAIN CHILD PORN AS THE PEOPLE IN IT ARE UNDER AGE. PLEASE REMOVE IT FROM THE SITE. COULD YOU PLEASE ALSO ADVISE ME IF YOU ARE ABLE, WHO UPLOADED IT ONTO YOUR SITE. REGARDS, SIMON CLEMENCE DETECTIVE SENIOR SERGEANT VICTORIA POLICE SEXUAL CRIMES"

48.    Exhibit 3 is from an individual who claims his email address is fuckyou@utube.com. He wonders "where r da videos?  YouTube roxman, but what happened to videos?". While YouTube provides content of interest to these individuals, uTube does not.

49.    Plaintiff has received hundreds of similar mistaken inquiries from persons around the world and continues to receive such mistaken and burdensome inquiries each day.

50.    Plaintiff's owners, employees and staff have been forced to devote substantial time and effort on a daily basis to sorting through the unwanted volume of mistaken inquiries looking for legitimate business inquiries from existing and prospective customers.

51.    Access to Plaintiff's website has been substantially disrupted or paralyzed entirely. Plaintiff has been notified by legitimate customers and representatives of their inability to reach Plaintiff's website. Plaintiff believes that it has lost sales as a result of the confusion and disruption caused by the Defendant.

52.    Plaintiff has received telephone calls from persons confused about the websites. Plaintiff has also received many inquiries from news organizations inquiring about the effects of the confusion caused by the Defendant's <youtube.com> website.

53.    As a result of the acts of Defendant, Plaintiff has suffered injury to its ability to conduct business, to its reputation, to its trademark rights, and has been deprived of its right to the quiet enjoyment of its domain name. Plaintiff has lost its kingdom with its domain.


## FIRST CLAIM FOR RELIEF

(Unfair Competition - 15 U.S.C. §1125(a))


54.    uTube incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.    As a direct result of uTube's longstanding use of the mark UTUBE in interstate commerce, sales, advertising and marketing, it has acquired trademark rights to the mark UTUBE.

56.    YouTube's use of the YOUTUBE mark is likely to cause, and has caused, consumer confusion as to the origin of the goods or services rendered under the UTUBE mark either through initial interest confusion, actual confusion or reverse confusion.

57.    Consumers believe that the Plaintiff's website is owned and operated by YouTube and that they can find videos, including illegal copyrighted materials and pornography, there.

58.    The public has now come to associate the UTUBE mark with the YouTube and mistakenly believes the Plaintiff to be the infringer or pornographer when it uses the mark.

59.    The infringing acts of YouTube have damaged, and will damage, the good will and reputation of uTube and will destroy the UTUBE mark.

8

60. YouTube has obtained gains, profits and advantages as a result of its infringing use of YOUTUBE as a mark. uTube has suffered monetary damages as a result of YouTube's acts.

61. These acts constitute a violation of Section 43 of The Lanham Act, 15 U.S.C. §1125(a).

62. As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial and is entitled to recovery of YouTube's profits, of actual damages and punitive damages. Plaintiff further seeks injunctive relief and the transfer of the infringing domain name as well as attorneys fees and the costs of this action.

## SECOND CLAIM FOR RELIEF

(Cancellation of YouTube's Trademark Applications)

63. uTube incorporates by reference paragraphs 1 through 62 as though fully set forth herein.

64. This Court has authority to determine the right to registration of a trademark and order its cancellation under Section 37 of the Lanham Act, 15 U.S.C. §1119 and 15 U.S.C. § 1064.

65. YouTube has filed U.S. Trademark Applications Serial Nos. 78/802261 and 78/802278 with the United States Patent and Trademark Office ("USPTO") for the mark YOUTUBE and the words and design respectively.

66. Plaintiff has pre-empted the USPTO ruling on these trademark issues and placed them before this Court through its filing of the present action.

67. Plaintiff seeks the cancellation of U.S. TM App. Ser. Nos. 78/802261 and 78/802278 on the grounds that YouTube's application cannot be granted because Plaintiff is the first user of the UTUBE mark for goods and services in U.S. commerce. YouTube's planned and existing use of the mark creates not just a likelihood of confusion, but actual and substantial consumer confusion, as to the sources of the respective goods and services of the Plaintiff and YouTube.

68.    Plaintiff, as first user of the UTUBE mark, therefore seeks cancellation of YouTube's U.S. Trademark Applications 78/802261 and 78/802278 pursuant to the Court's authority under 15 U.S.C. §1119 and 15 U.S.C. § 1064.


### THIRD CLAIM FOR RELIEF
(Dilution under Ohio Law)


69.    uTube incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

70.    YouTube's use of the YOUTUBE mark operates to whittle away and disperse in the mind of the public the unique identity of the Plaintiff's UTUBE mark.

71.    The UTUBE mark is distinctive and a strong mark, as there can only be one internet domain in the entire world named <utube.com>.

72.    YouTube's use of a confusingly similar domain name and website has diluted the strength of the Plaintiff's mark by blurring and diminishment.

73.    YouTube's use also dilutes Plaintiff's mark through tarnishment since YouTube provides infringing material and pornographic material on its website.

74.    YouTube's actions have appropriated and exploited the Plaintiff's mark.

75.    The UTUBE mark and the YOUTUBE marks are substantially similar marks.

76.    Plaintiff has no desire to be confused with YouTube and its disgusting and illegal content.

77.    As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial and is entitled to recovery of actual damages, and punitive damages.  Plaintiff further seeks a preliminary and permanent injunction stopping YouTube from using <youtube.com>, the transfer of the infringing domain name, and attorneys fees and the costs of this action.


### FOURTH CLAIM FOR RELIEF
(Trespass to chattels)

78.    uTube incorporates by reference paragraphs 1 through 77 as though fully set forth herein.

79.    Plaintiff owns the chattel <utube.com> and the rights to utilize it.

80.    YouTube's actions have diminished the value, quality or condition of the chattel.

81.    Plaintiff hosts its website on certain server computers connected to the internet.

82.    YouTube's actions have caused the shut down and crashing of those servers, and increased expense to the Plaintiff as a result of increased traffic meant for YouTube.

83.    YouTube's actions have diminished the value of Plaintiff's possessory interest in its computer network and website.

84.    As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recovery of actual damages and punitive damages.  Plaintiff further seeks a preliminary and permanent injunction stopping YouTube from using <youtube.com>, the transfer of the infringing domain name, and attorneys fees and the costs of this action.


## FIFTH CLAIM FOR RELIEF

### (Nuisance)


85.    uTube incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86.    Both Plaintiff and YouTube maintain a location and presence on the internet.

87.    The <youtube.com> domain name is almost identical to the domain name <utube.com> and therefore can be said to be adjacent to it on the internet.

88.    YouTube operates a place on the internet where lewd, indecent, lascivious, copyright-infringing, pornographic or obscene videos are permitted and exist for public exhibition to all including children.

89.    YouTube's operation of the website at <youtube.com> wrongfully interferes with or annoys Plaintiff in the enjoyment of its legal rights.  The tens of thousands of confused internet visitors to <utube.com> each and every day create a nuisance not unlike a noxious odor.

90.    In addition to damage to its reputation, trademark, and domain name, Plaintiff has suffered personal inconvenience, annoyance or discomfort as damages.

91.    As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recovery of actual damages and punitive damages for the injury done to its property and reputation.  Plaintiff further seeks a preliminary and permanent injunction stopping YouTube from using <youtube.com>, the transfer of the infringing domain name, and attorneys fees and the costs of this action.

## SIXTH CLAIM FOR RELIEF

### (Negligence)

92.    uTube incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93.    A reasonably prudent person would have anticipated that an injury was likely to result from the acts of the YouTube.

94.    Therefore YouTube owes Plaintiff a duty to exercise due care in the operation of its internet website based upon the forseeability of the harms which have occurred.

95.    YouTube has breached that duty.

96.    The breach was the proximate cause of Plaintiff's injuries.

97.    As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recovery of actual damages and punitive damages for the injury done to its property and reputation.  Plaintiff further seeks a preliminary and permanent injunction stopping YouTube from using <youtube.com>, the transfer of the infringing domain name, and attorneys fees and the costs of this action.

## SEVENTH CLAIM FOR RELIEF

### (Deceptive Trade Practices Act R.C. 4165.02)

98.    uTube incorporates by reference paragraphs 1 through 97 as though fully set forth herein.

12

99.    UTUBE is a "mark", "service mark", "trademark" and "trade name" pursuant to R.C. § 4165.01 (C), (E), (F), and (G).

100.    YouTube is a  "person" pursuant to R.C. § 4165.01 (D).

101.    YouTube's use of the <youtube.com> domain name causes a likelihood of confusion among internet users as to the source, sponsorship, approval, or certification of its goods or services.

102.    YouTube's use of the <youtube.com> domain name is a deceptive representation as to the source or origin of its website and services.

103.    YouTube's use of the <youtube.com> domain name causes a likelihood of confusion or misunderstanding among internet users as to affiliation, connection, or association with, or certification by the Plaintiff's website.

104.    YouTube's use of the <youtube.com> domain name tends to create a false impression sufficient to warrant injunctive relief under Ohio Deceptive Trade Practices Act. R.C. § 4165.02.

105.    As a direct and proximate result of the actions of YouTube, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recovery of actual damages and punitive damages for the injury done to its property and reputation.  Plaintiff further seeks a preliminary and permanent injunction stopping YouTube from using <youtube.com>, the transfer of the infringing domain name, and attorneys fees and the costs of this action.


## EIGHTH CLAIM FOR RELIEF

(Violation of Ohio RICO R.C. 2923.32 by Chad Hurley and Steve Chen)


106.    uTube incorporates by reference paragraphs 1 through 105 as though fully set forth herein.

107.    R.C. § 2923.34 (B) provides a civil remedy for any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code.

108.    R.C. § 2923.32 makes it unlawful for persons employed by, or associated with, any enterprise to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity.

109.    Chad Hurley and Steve Chen, at all time relevant hereto, have been employed by, or associated with YouTube Inc.

110.    Chad Hurley and Steve Chen have acquired and maintained an interest in or control of YouTube and have conducted or participated in, directly or indirectly, the affairs of the enterprise YouTube, through a pattern of corrupt activity.

111.    Chad Hurley and Steve Chen have conducted the affairs of YouTube through a consistent pattern of violations of 18 USC §2319 (relating to criminal infringement of copyright),  and 18 USC §2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances).

## Criminal Copyright Infringement 18 USC §2319

112.    Hurley and Chen have conducted the affairs of YouTube through a consistent pattern of thousands of violations of 18 U.S.C.A. § 2319, criminal copyright infringement.

113.    Upon information and belief, Hurley, Chen and YouTube have engaged in a pattern of infringing the copyrights of Robert Tur d/b/a/ Los Angeles News Service, Universal Music Group and numerous other authors and copyright owners.

114.    YouTube members can upload copyrighted audio, photographic, and/or audiovisual works to YouTube, which are then reproduced onto servers that YouTube owns or controls. Using the copies they have made, YouTube then creates an unauthorized derivative work in FLV format embodying these original works, and distributes and publicly performs these copyrighted works.

115.    YouTube:

    a)  reproduces (i.e., makes permanent copies of) audio and audiovisual works ("songs" and "videos") containing hundreds of copyrighted works onto servers that it owns or controls;

    b)  reformats the audiovisual works uploaded by their users in order to facilitate the further copying and distribution of such works to and by as many users as possible;

    c)  distributes and publicly performs the songs and videos uploaded onto their servers to their users on demand;

d)  encourages users viewing illegal copies of audio-visual works to invite others to watch infringing works through the use of the "Share Video" feature, or to save the video to their "Favorites" list;

e)  enables users to share the audio and/or audiovisual works by allowing or providing a feature for them to upload the videos and display them for anyone accessing the YouTube site.

116.   As viewers access these works, YouTube displays paid advertisements and thus receives revenue based upon the number of infringing works it publishes.

117.   These infringements are occurring on a substantial scale as measured by YouTube.com's own view counter feature.

118.   Robert Tur is the owner of the following registered copyrights:

PA-576-704, "Beating of Reginald Denny
PA-576-702: "Beating of man in brown hatchback with rescue;
PA-576-703: "Beating of man in white panel truck;"
PA-839-603: "Earthquake;" and
PA-862-544: "North Hollywood shootout.

119.   Based upon allegations made in Tur's current lawsuit against Youtube, the exclusive rights of the author in these works have been infringed by Youtube. For example, PA-576-704, "Beating of Reginald Denny," has been infringed in excess of 5,500 times through at least three bootlegged versions.

120.   Universal Music Group is the copyright owner or the owner of exclusive rights under copyright with respect to thousands of sound recordings for which UMG has obtained or has applied for Certificates of Copyright Registration issued by the Register of Copyrights including by way of example:

| SR-243-502 | Shania Twain | "Man I Feel Like a Woman" |
| SR-308-274 | U2 | "Beautiful Day" |
| SR-378-166 | Black Eyed Peas | "My Humps" |
| SR-366-051 | 50 Cent | "Candy Shop" |

121.   UMG has the exclusive rights, among other things, to reproduce these Copyrighted Sound Recordings in copies or phonorecords; to prepare derivative audiovisual works based upon the Copyrighted Sound Recordings; to distribute copies or phonorecords of the

Copyrighted Sound Recordings to the public; and to perform the Copyrighted Sound Recordings publicly by means of a digital audio transmission.

122.   The infringements of these works have persisted for many months and have occurred on a substantial scale as measured by YouTube.com's own view counter feature.

123.   One version of U2's "Beautiful Day" is online at http://youtube.com/watch ?v=5Cf22dj70YM, has been available since March of 2006, and has been viewed 17,933 times since then. (Exhibit 4)

124.   One version of  Shania Twain 's "Man I Feel Like a Woman" is online at http://youtube.com/watch?v=AEhViBnELTk, has been available since February of 2006, and has been viewed 8,105 times since then. (Exhibit 5)

125.   One version of Black Eyed Peas' "My Humps" is online at http://youtube.com/watch?v=KmPiU_LxCOA, has been available since February of 2006, and has been viewed 71,029 times since then. (Exhibit 6)

126.   One version of 50 Cent's "Candy Shop" is online at http://youtube.com/watch?v=-oHR61Mitj0, has been available since June of 2006, and has been viewed 7,844 times since then. (Exhibit 7)

127.   Upon information and belief, YouTube has made and stored illegal copies of these works, displayed these works to the public, made derivative works based upon these original works, provided a mechanism whereby the public could make copies of these works, and distributed copies of these works to the public for financial gain. Hurley, Chen and YouTube have thus violated the exclusive rights of Robert Tur d/b/a/ Los Angeles News Service, Universal Music Group and numerous other authors and copyright owners, as set forth in 17 U.S.C. § 106

128.   Pursuant to 17 U.S.C. § 501, Hurley, Chen and YouTube are infringers of the copyrights of the author.

129.   Since the terms of Use on YouTube's website clearly show knowledge that licenses or ownership are required before copyrighted works can be used lawfully, it is clear that YouTube knew of its legal duty relating to copyrights.

130.   YouTube voluntary and intentionally violated its known legal duty with respect to the copyrights in the infringing editions provided at youtube.com.  Therefore its direct infringement is willful and thus criminal pursuant to 17 U.S.C. § 506(a)(1)(A) and (B).

131.   Universal Music Group has been in talks for some time with YouTube and has advised them of their infringing acts long ago.  Recently, YouTube entered into a licensing agreement with UMG which further indicates that YouTube knew of its legal duty to license the works it was infringing for so many months prior to the agreement.

132.   Upon information and belief, YouTube has also entered into licensing arrangements with other copyright owners further evidencing the fact that YouTube is aware of its legal duties with respect to copyright infringement, yet YouTube chose to ignore them until they were caught.

133.   Based upon the foregoing, Hurley and Chen have conducted the YouTube enterprise through a repeated pattern of violations of 18 USC §2319.

### Violations of 18 USC §2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances)

134.   Hurley, Chen and YouTube, without the consent of the performer or performers involved, knowingly and for purposes of commercial advantage or private financial gain have repeatedly reproduced copies or phonorecords of the sounds or sounds and images of a live musical performance from an unauthorized fixation.

135.   Hurley, Chen, and YouTube, without the consent of the performer or performers, knowingly and for purposes of commercial advantage or private financial gain have repeatedly transmitted or otherwise communicated to the public the sounds or sounds and images of a live musical performance.

136.   Hurley, Chen, and YouTube, without the consent of the performer or performers, knowingly and for purposes of commercial advantage or private financial gain have repeatedly distributed copies of the sounds or sounds and images of a live musical performance from an unauthorized fixation of those performances.

137.   The version of 50 Cent's "Candy Shop" online at http://youtube.com/watch?v=-oHR61Mitj0, has been available since June of 2006 (Exhibit 7).  YouTube has reproduced copies of that event, distributed copies of that event and transmitted or otherwise communicated that event to the public 7,844 times since then.  It is obviously a home made video.  Pursuant to YouTube's policy of not affirmatively seeking permission before allowing

users to post videos, it is unlikely that YouTube has permission from these performers to post this video or that the fixation of this event was lawful.

138.   A version of a Sammy Hagar concert is on the Youtube website at http://youtube.com/watch?v=zzY6uropP2Y (Exhibit 8)and has been available since June of 2006.  YouTube has reproduced copies of that event, distributed copies of that event and transmitted or otherwise communicated that event to the public 510 times since then.  It is obviously a home made video.  Pursuant to YouTube's policy of not affirmatively seeking permission before allowing users to post videos, it is unlikely that YouTube has permission from these performers to post this video or that the fixation of this event was lawful.

139.   A version of a Kelly Clarkson performance is on the Youtube website at http://youtube.com/watch?v=Ni04E_n95Jg (Exhibit 9) and has been available since July of 2006.  YouTube has reproduced copies of that event, distributed copies of that event and transmitted or otherwise communicated that event to the public 1,562 times since then.  It is obviously a home made video.  Pursuant to YouTube's policy of not affirmatively seeking permission before allowing users to post videos, it is unlikely that YouTube has permission from these performers to post this video or that the fixation of this event was lawful.

140.   A version of a Greyhoundz concert is on the Youtube website at http://youtube.com/watch?v=c4ujz2ACP5k (Exhibit 10) and has been available since July of 2006.  YouTube has reproduced copies of that event, distributed copies of that event and transmitted or otherwise communicated that event to the public 682 times since then.  It is obviously a home made video.  Pursuant to YouTube's policy of not affirmatively seeking permission before allowing users to post videos, it is unlikely that YouTube has permission from these performers to post this video or that the fixation of this event was lawful.

141.   Based upon the foregoing, Hurley and Chen have conducted the YouTube enterprise through a repeated pattern of violations of 18 USC §2319A.

142.   YouTube has obtained its millions of visitors through a pattern of corrupt activity.

143.   YouTube's staggering amounts of traffic have created the nuisance complained of by Plaintiff and have caused actual confusion between UTUBE and YOUTUBE.

144.   As set forth above, Plaintiff has been injured and that injury arises indirectly from Hurley and Chen's violation of the Ohio Rico Statute.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants as follows:

1. Preliminary and permanent injunctive relief restraining Defendant YouTube, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

(a) further infringing uTube's trademarks by the use of the <youtube.com> domain name or the YOUTUBE mark;

(b) engaging in any other activity constituting unfair competition with uTube, or constituting an infringement of any of uTube's trademarks, or of uTube's rights in, or to use or to exploit, said trademarks, or constituting any dilution of any of uTube's marks, or good will;

(c) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b);

(d) from aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon uTube's trademarks;

(e) from using or continuing to use the YOUTUBE mark or any variation thereof on the Internet (either in the text of a website, as a domain name, or as a key word, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by uTube; and

(f) from using any e-mail addresses bearing the UTUBE mark or offering for sale any non-genuine services bearing the UTUBE mark or confusingly similar designations in U.S. commerce.

2. Directing that Defendant YouTube deliver for destruction all unauthorized goods or materials, including advertising materials, web pages and code, domain names, merchandise, wrappers, receptacles and advertisements relating thereto in their possession or under their control bearing any of uTube's trademarks or any simulation, reproduction, copy or colorable imitations thereof, and all plates, molds, originals, tapes, media, heat transfers, screens, matrices and other means of making the same.

3.  Directing that Defendant YouTube show its compliance with the above by presenting uTube with a sworn statement setting forth in detail the manner in which Defendant has complied with this injunction pursuant to 15 U.S.C. § 1116(a) and 15 U.S.C. §1118.

4. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that any products manufactured or services rendered, sold or otherwise circulated or promoted by Defendant YouTube are authorized by uTube or related in any way to uTube's products.

5. That uTube be awarded Defendant YouTube's profits derived from revenue obtained through its infringing use of the UTUBE mark.

6. That uTube be awarded from Defendant YouTube three times its profits from infringing sales after an accounting pursuant to 15 U.S.C§1125(a) and §1117 and such amounts required to conduct reparative advertising as may be needed.

7. That uTube be awarded its actual damages and reasonable attorney's fees and investigative fees pursuant to 15 U.S.C. §1117.

8.  Ordering that, pursuant to 11 U.S.C. §523(a)(6), Defendant YouTube be prohibited from a discharge under 11 U.S.C. §727 for malicious, willful and fraudulent injury to uTube.

9.  That uTube be awarded its costs in bringing this action.

10.  With respect to Plaintiff's RICO claims, Plaintiff demands an order from the Court providing injunctive relief which ensures that the above violations will not continue or be repeated.   Plaintiff requests an order from the Court requiring the divestiture of the defendants' interest in the YouTube enterprise or in any real property.  Plaintiff further is entitled to triple the actual damages it sustained in an amount to be proven at trial.  Plaintiff further requests that it be allowed to recover reasonable attorney fees in the trial and appellate courts.

11.  That this Court will retain jurisdiction of this action for the purpose of enabling uTube to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

12. That the Plaintiff have such other and further relief that this Court deems just.


Dated: December 1, 2006                          Respectfully submitted,

                                                 /s/ Anthony J. DeGidio_____

Anthony J. DeGidio (# 0069064)
Fraser Martin & Miller LLC
28366 Kensington Lane
Perrysburg, OH 43551-1401
419-874-1100
Fax: 419-874-1130
Email: tony@cyberlawyer.com
Co-Counsel for Plaintiff, Universal Tube
& Rollform Equipment Corporation

/s/ Richard G. Martin ____
Richard G. Martin (# 0043822)
Fraser Martin & Miller LLC
28366 Kensington Lane
Perrysburg, OH 43551-1401
419-874-1100
Fax: 419-874-1130
Email: martin@fraser-ip.com
Co-Counsel for Plaintiff, Universal Tube
& Rollform Equipment Corporation

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable to a jury.

/s/ Anthony DeGidio
Anthony J. DeGidio (0069064)
Attorney for Plaintiff