IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

WESTERN DIVISION


| | |
|---|---|
| UNIVERSAL TUBE & ROLLFORM EQUIPMENT CORPORATION, | Case No. 06-2628 |
| Plaintiff, | **RULE 12(b)(2) & (6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT (CLAIMS FOR RELIEF 1-8)** |
| v. | |
| YOUTUBE, INC., CHAD HURLEY, and STEVE CHEN | Judge:    James G. Carr |
| Defendants. | |

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.      Introduction.............................................................................................................1

II.     Background ..............................................................................................................1

III.    Statement of the Issue .............................................................................................2

IV.     Summary of the Argument.......................................................................................2

V.      Rule 12(b)(6) and Pleading Standards ....................................................................3

VI.     Law & Analysis .......................................................................................................3

        A.      Federal Claims ............................................................................................3

                1.      Unfair Competition ..........................................................................3

                        a.      Elements necessary to bring unfair competition claim. ..................3

                        b.      Universal fails to plead facts suggesting UTUBE is a
                                protectable mark................................................................4

                2.      Cancellation of YouTube's Trademark Applications:  the
                        Lanham Act does not authorize courts to cancel trademark
                        applications ......................................................................................6

        B.      State Claims ................................................................................................7

                1.      Dismissal of the federal claims should also result in dismissal
                        of the Ohio state law claims............................................................7

                2.      Ohio Common Law Dilution Claim:  UTUBE is not a famous
                        mark ..................................................................................................7

                3.      Trespass to Chattels:  YouTube does not interfere with
                        utube.com..........................................................................................8

                4.      Nuisance:  nuisance claims are limited to interferences with
                        land..................................................................................................10

                5.      Negligence:  YouTube owes Universal no duty of due care ...................11

                6.      Ohio Deceptive Trade Practices:  UTUBE is not a mark ..........................12

                7.      Ohio RICO Violation......................................................................12

                        a.      There is no basis for personal jurisdiction over Hurley
                                or Chen..............................................................................13

                        b.      Universal leaves out allegations regarding material
                                elements. ...........................................................................14

c.    The DMCA safe harbor precludes Universal's RICO claim. ................................................................17

d.    Universal's Ohio RICO claim is expressly barred by the CDA. ................................................................18

e.    The alleged Ohio RICO violation is not the proximate cause of Universal's injuries. ...........................................19

VII.    Conclusion ........................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ameritech, Inc. v. American Information Technologies Corp.*,
811 F.2d 960 (6th Cir. 1987) ............................................................7

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ....................................................5, 6, 13

*Compuserve, Inc. v. Cyberpromotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997) ..............................................8, 9

*Curcio Webb LLC v. National Benefit Programs Agency, Inc.*,
367 F. Supp. 2d 1191 (S.D. Ohio 2005) ............................................4

*Data Concepts, Inc. v. Digital Consulting, Inc.*,
150 F.3d 620 (6th Cir. 1998) ........................................................5, 6

*DeGidio v. West Group Corp.*,
355 F.3d 506 (6th Cir. 2004) ......................................................4, 12

*Doe v. Bates*,
No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348
(E.D. Tex. Dec. 27, 2006)..............................................................18

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ..........................................10

*Habeeba's Dance of the Arts, Ltd. v. Knoblauch*,
430 F. Supp. 2d 709 (S.D. Ohio 2006) .............................3, 4, 6, 7, 8, 11, 12, 14

*Hankins v. The Gap, Inc.*,
84 F.3d 797 (6th Cir. 1996) ............................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)......................................................................13

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992)......................................................................19

*Hughes v. Sanders*,
469 F.3d 475 (6th Cir. 2006) ........................................3, 8, 11, 14

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)......................................................................13

*Jet, Inc. v. Sewage Aeration System*,
165 F.3d 419 (6th Cir. 1999) ..........................................................7

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
985 F. Supp. 949 (C.D. Cal. 1999) ..................................................5

*MCI WorldCom Network Services, Inc. v. W.M. Brode Co.*,
411 F. Supp. 2d 804 (N.D. Ohio 2006)........................................8, 11

*Neitzke v. Williams,*
490 U.S. 319 (1989)...................................................................................................3

*Nuckols v. National Heat Exchange Cleaning Corp.,*
No. 4:00-CV-1698, 2000 U.S. Dist. LEXIS 18693 (N.D. Ohio Dec. 11, 2000) .........10, 11

*Perry v. American Tobacco Co.,*
324 F.3d 845 (6th Cir. 2003) ....................................................................................19

*Rauch v. Day & Night Manufacturing Corp.,*
576 F.2d 697 (6th Cir. 1978) .....................................................................................3

*Reed Elsevier, Inc. v. TheLaw.Net Corp.,*
269 F. Supp. 2d 942 (S.D. Ohio 2003) .......................................................................7

*Register.com v. Verio, Inc.,*
126 F. Supp. 2d 238 (S.D.N.Y. 2000)........................................................................10

*Stainbrook v. Fox Broadcasting Co.,*
No. 3:05-CV-7380, 2006 U.S. Dist. LEXIS 91540 (N.D. Ohio Dec. 19, 2006) ................8

*Tumblebus Inc. v. Cranmer,*
399 F.3d 754 (6th Cir. 2005) .....................................................................................4

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
505 U.S. 763 (1992)...................................................................................................4

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,*
529 U.S. 205 (2000)...................................................................................................4

*Zeran v. AOL, Inc.,*
129 F.3d 327 (4th Cir. 1997) ....................................................................................18

## STATE CASES

*Ohio v. Thrower,*
575 N.E.2d 863 (Ohio Ct. App. 1989)........................................................................19

## FEDERAL STATUTES

15 U.S.C. § 512(c) ...................................................................................................17

15 U.S.C. § 512(c)(1)...........................................................................................17, 18

15 U.S.C. § 512(c)(2)................................................................................................17

15 U.S.C. § 1052 ...................................................................................................4, 6

15 U.S.C. § 1052(a) ...................................................................................................4

15 U.S.C. § 1064......................................................................................................6, 7

15 U.S.C. § 1125(a) ...................................................................................................3

15 U.S.C. § 1125(a)(1)(A) ........................................................................................12

15 U.S.C. § 1127 ................................................................................................4, 6, 7

17 U.S.C. § 301(a) ...................................................................................................20

17 U.S.C. § 506(a) ...................................................................................................15

17 U.S.C. § 506(a)(2) ...............................................................................................16

18 U.S.C. § 1961 ......................................................................................................19

18 U.S.C. § 2319 ......................................................................................................15

18 U.S.C. § 2319(A) .................................................................................................15

18 U.S.C. § 2319A(a) ...............................................................................................16

28 U.S.C. § 1367(c)(3).................................................................................................7

47 U.S.C. § 230(c)(1) ...............................................................................................19

47 U.S.C. § 230(e)(2) ...............................................................................................19

Fed. R. Civ. P. 12(b)(2)............................................................................................13

Fed. R. Civ. P. 12(b)(6)...................................................................................3, 8, 14

## STATE STATUTES

Ohio. Rev. Code § 2923.32(A)(1) .......................................................................14, 15

Ohio Rev. Code Ann. § 4165.02(A)(2)......................................................................15

Ohio Rev. Code Ann. § 2923.31(E)...........................................................................16

Ohio Rev. Code Ann. § 2923.31 (I)...........................................................................15

Ohio Rev. Code Ann. § 2932.34(B) ..........................................................................16

Ohio Rev. Code Ann. § 4165.01(E)-(G).....................................................................12

Ohio Rev. Code Ann. § 4165.02(A)(2).......................................................................12

**MISCELLANEOUS**

Restatement (Second) of Torts § 217(b)..................................................................8, 10

Restatement (Second) of Torts § 218..................................................................9, 11

Restatement (Second) of Torts § 821A..................................................................10

Restatement (Second) of Torts § 821D..................................................................11

## I.    Introduction

Looking to cash in on YouTube's explosive growth and business success, Universal

Tubing & Rollform Equipment Corp. (Universal) conjures up a catalog of groundless claims.

YouTube, which TIME magazine named 2006's Invention of the Year, hosts a pioneering

website where Internet users can post and watch videos.  The site experienced exponential

growth in 2006, resulting in YouTube's acquisition by Google for $1.65 billion.  Now Universal,

a regional reseller of used heavy machinery, seeks to profit by bringing nuisance claims for,

among other things, trademark infringement, dilution, and trespass to chattels.  It bases its novel

claims on unwanted traffic to its website from Internet users who mistakenly type the address

utube.com when looking for youtube.com—traffic that Universal seeks to monetize, both

directly and via this baseless lawsuit.[1]  Defendants hereby move to dismiss.

## II.    Background

Universal filed its original complaint on October 30, 2006.  That complaint alleged seven

claims for relief against YouTube:  (1) federal unfair competition; (2) cancellation of YouTube's

trademark applications; (3) dilution under Ohio common law; (4) trespass to chattels; (5)

nuisance; (6) negligence; and (7) Ohio unfair competition.  (Dkt #1.)  One month later, Universal

filed its first amended complaint, which added Chad Hurley and Steve Chen—YouTube's

---

[1]  In fact, should this lawsuit proceed past pleadings motions, Universal's actions will form the basis of myriad counterclaims.  At the time YouTube was founded and achieved its remarkable success, Universal was a regional seller of machine tools that had *never* used "utube" as a trademark in any way.  YouTube's success resulted in millions of users visiting its website: unfortunately, through no one's fault, some small percentage of those users guessed incorrectly at YouTube's spelling, and mistakenly arrived at Universal Tube's abbreviated website address, "utube.com."  When YouTube learned of Universal's existence and problem through news reports, it immediately contacted Universal and offered to host a "landing page," at YouTube's sole cost, that would ask users which company they were seeking and direct them to the correct website.  This would have solved, overnight, the only "injury" of which Universal complains.

Universal, however, smelled a quick litigation buck and declined YouTube's offer.  It slapped a large "UTUBE" logo on its website, which previously had carried the "Universal Tubing & Rollform Equipment" logo.  It rushed a trademark application to the USPTO for the name "UTUBE"—the first time it had ever sought trademark status for that name—and days later filed this lawsuit with as much publicity as it could garner.  It then changed its website to include a faux "search engine," designed to make money by deliberately diverting users seeking YouTube's site to other websites.  These facts are of course beyond the corners of the Complaint, and we recognize that they cannot support dismissal.  They are, however, important to consider should Universal seek leave to file a Third Amended Complaint, as they severely constrain any ability to plead cognizable claims.

founders—as defendants.  (Dkt #6.)  The first amended complaint also added an eighth cause of action for violation of Ohio's RICO statute.  Based on the first amended complaint, it was unclear which causes of action Universal alleged against which defendants.  As such, a few hours after filing the first amended complaint, Universal tried to file a second amended complaint.  (Dkt #7.)  This complaint clarified that YouTube was the defendant for the first seven causes of action, while Hurley and Chen were the defendants for the eighth cause of action.  Because Universal could not file a second amended complaint without the Court's consent, the parties filed a related stipulation on December 21, 2006.  (Dkt #10.)  The Court granted Universal leave to file its second amended complaint on December 27, 2006.  (Dkt #11.)

### III.     Statement of the Issue

Whether Universal's claims should be dismissed with prejudice for failure to state a cause of action and for want of personal jurisdiction over the individual defendants.

### IV.     Summary of the Argument

Universal's causes of action all fail because Universal either omits to plead each requisite claim element or pleads only bare legal conclusions in lieu of facts, as follows:

- While Universal has used the web address "utube.com," it has never used "UTUBE" as a trademark to differentiate its goods or services from those of others, and to designate the source of its goods and services.  Its federal and state trademark claims therefore fail.

- Federal Courts only have the power to cancel a trademark *registration*.  Universal's purported cause of action for cancellation of YouTube's trademark *application* does not exist.

- Universal's trespass to chattels claim is based solely on the allegation that unwelcome Internet users visit utube.com.  Consequently, that claim, if any, lies against those unnamed users and not YouTube.

- Common law nuisance addresses interferences with the use of land, not websites.

- Universal cannot point to any source of a duty of care nor any breach of that duty such that YouTube could be liable for negligence.

- UTUBE is not a famous mark so Universal's Ohio dilution claim must fail.

- Universal fails to plead the basic requirements of an Ohio RICO claims; the safe harbor provisions of the Digital Millennium Copyright Act (DMCA) and the Communications Decency Act (CDA) immunize Hurley and Chen from suit; and,

in any event, their alleged corrupt activity is not the proximate cause of Universal's alleged injury.  As such, Universal's Ohio RICO claim cannot stand.

For these reasons, the Court should dismiss Universal's claims without leave to amend.

## V.     Rule 12(b)(6) and Pleading Standards

Rule 12(b)(6) permits courts to dismiss meritless cases that waste judicial resources and result in unnecessary discovery.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  "A motion to dismiss under Rule 12(b)(6) will be granted if the complaint lacks merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim."  *Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 430 F. Supp. 2d 709, 712 (S.D. Ohio 2006) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).  To meet even liberal pleading standards, this requires "'more than the bare assertion of legal conclusions.'"  *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006) (citation omitted); *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 713 ("The court is not required to accept as true unwarranted legal conclusions or factual inferences.").  Rather, a complaint "must contain 'either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Hughes*, 469 F.3d at 477; *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712-13.

## VI.     Law & Analysis

For each of its eight claims, Universal fails to meet even liberal pleading standards, making no factual allegations that might support a finding of liability.  Moreover, Universal has no legal basis or standing for bringing its claims and thus leave to amend would be futile.

## A.     Federal Claims

### 1.     Unfair Competition

Universal claims that YouTube violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (Compl. ¶¶ 54-61.)  Because Universal has not alleged that UTUBE is a protectable mark, its claims fail as a technical matter.  In addition, because, prior to this suit, Universal did not use UTUBE as a mark but only as a domain name, Universal has no viable claim.

#### a.     Elements necessary to bring unfair competition claim.

Section 43(a) of the Lanham Act provides a federal cause of action for infringing a mark

that has not obtained federal registration. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). To state a Section 43(a) claim, Universal must allege that (1) its mark is protectable; and (2) that YouTube's use of its mark is likely to cause confusion regarding the source of goods or services. *Tumblebus*, 399 F.3d at 761; *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1208 (S.D. Ohio 2005); *see also* 4 McCarthy on Trademarks and Unfair Competition §§ 27:14, 27:18 (4th ed. Supp. 2006) ("McCarthy"); 2 Jerome Gilson et al, Trademark Protection and Practice § 7:02[5] (Supp. 2006) ("Gilson").

Whether a mark is protectable is evaluated under the general principles qualifying a trademark for registration under Section 2 of the Lanham Act. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Two Pesos*, 505 U.S. at 768; *DeGidio v. West Group Corp.*, 355 F.3d 506, 509 (6th Cir. 2004). First, the mark must be distinctive; it must distinguish its owner's goods from the goods of others. 15 U.S.C. § 1052; *Wal-Mart*, 529 U.S. at 210; *Two Pesos*, 505 U.S. at 768; *Curcio Webb*, 367 F. Supp. 2d at 1208 n.32. A mark meets this qualification if it is inherently "distinctive"—if it is "arbitrary," "fanciful," or "suggestive"—or if it has developed secondary meaning—if in the minds of the public the mark's primary significance is to identify the product's source. *Wal-Mart*, 529 U.S. at 211; *Curcio Webb*, 367 F. Supp. 2d at 1208 n.32; *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 715; *see also* 15 U.S.C. § 1052(a). Second, the mark must meet the statutory definition of a "mark": any word, name, symbol, or any combination thereof used by a person to identify and distinguish their goods or services from those of others and to indicate the source of the goods or services. 15 U.S.C. § 1127 (defining "trademark" and "service mark," and including both in the definition of "mark"); *Curcio Webb*, 367 F. Supp. 2d at 1208 n.32.

   b.  **Universal fails to plead facts suggesting UTUBE is a protectable mark.**

Universal does not (and cannot) meet either other the necessary two elements. First, Universal makes no claim that UTUBE is "distinctive." Specifically, Universal's complaint is

devoid of allegations that UTUBE is either inherently distinctive[2] or has acquired secondary meaning.  Paragraphs 1-62 contain neither direct nor inferential allegations with respect to these necessary elements.  Indeed, Universal fails to plead even bare legal conclusions as to these critical elements of an unfair competition claim.

Second, Universal fails to allege that UTUBE meets that statutory definition of a "mark."  Regardless of whether Universal contends UTUBE is a "trademark" or "service mark," it does not allege that it used UTUBE to identify and distinguish its goods or services from those of others.  Nor does Universal allege that it used UTUBE to indicate the source of its goods or services.  At best, Universal claims "use of the mark UTUBE."  (Compl. ¶ 55.)  But this bare legal conclusion cannot suffice.  Not only is it unsupported by any facts—and therefore incapable of satisfying federal pleading standards—it is also incomplete:  the statement contains no direct or indirect allegation about using UTUBE to designate the origin of goods or services.

Furthermore, while Universal alleges that it owns the domain name utube.com, this does not suggest—either directly or indirectly—that UTUBE is a mark.  To the contrary, Universal explicitly states that it promoted www.utube.com as its *website* (Compl. ¶ 17.); it never alleges that it promoted UTUBE as a mark.  The use of UTUBE in its domain name, however, does not, as a matter of law, equate to use of a trademark.  To the contrary, "'[w]hen a domain name is used only to indicate an address on the Internet, the domain name is not functioning as a trademark.'"  *Bird v. Parsons*, 289 F.3d 865, 878 (6th Cir. 2002) (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956 (C.D. Cal. 1999)); *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 627 (6th Cir. 1998) (Merritt, J. concurring) (same).  The Trademark Manual of Examination Procedures (TMEP) similarly cautions trademark examiners that "[a] mark composed of a domain name is registrable as a trademark or service mark *only if it functions as a source identifier*."  TMEP § 1215.02(a) (2006) (emphasis added).  To qualify for trademark protection, a domain name "must be presented in a manner that will be perceived by potential purchasers to indicate source and not as merely an informational indication of the

_____

[2]  Nor could Universal so plead:  "UTUBE" is nothing more than a contraction of "Universal Tubing & Rollform Equipment Corp."—nothing could be more descriptive of a company

domain name address used to access a web site." *Id.* (citing *In re Eilberg*, 49 U.S.P.Q.2d 1955 (TTAB 1998)). "[A] term that only serves to identify the applicant's domain name or the location on the Internet where the applicant's web site appears, and does not separately identify applicant's services, does not function as a service mark." *Id.* (same). Where, as here, Universal merely alleges that it owned the web address utube.com, that allegation does not support an inference of trademark use.

For the same reason, leave to amend must be denied, as Universal cannot plead trademark use. Prior to this lawsuit, Universal *never* used UTUBE as a mark—it used it only as part of a web address.[3] One's website url is no more a trademark than one's telephone number. *Bird*, 289 F.3d at 878; *Data Concepts*, 150 F.3d at 628.[4] Universal therefore has no Rule 11 basis for alleging it used UTUBE as a source designation for its goods or services.

### 2. Cancellation of YouTube's Trademark Applications:  the Lanham Act does not authorize courts to cancel trademark applications

Universal asks the Court to order the cancellation of YouTube's federal trademark application. No such cause of action exists. The Lanham Act provides for cancellation of a federal trademark registration by petition to the USPTO. *See* 15 U.S.C. § 1064. It similarly gives courts the power to order the cancellation of a *registered* mark. *See id.* § 1119. But the statute defines a "registered mark" as a "mark registered in the United States Patent and Trademark Office." *See id.* § 1127. Thus, the Lanham Act does not grant federal courts the power to cancel trademark *applications* because applications do not become "registered marks" until after examination and a period for opposition. *See id.* §§ 1051, 1052, and 1063.

In light of the Lanham Act's express provisions, Universal's second claim is not legally

---

offering the universe of tubing and rollform equipment.

[3]  Although the Court may not consider extrinsic evidence in determining whether the complaint states a claim, *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 713, it should bear this evidence in mind when exercising its discretion to grant Universal leave to amend. To the extent this motion cites extrinsic evidence, it is for this limited purpose.

[4]  While a domain name can in limited circumstances become a trademark, it can only do so if it is *also* used *as a company or product name*—to identify the source of specific goods and services. *Data Concepts*, 150 F.3d at 627; 2 McCarthy § 7:17.1 (discussing protectability of domain names); 2 Gilson §§ 5.11[3] and 5.11[5] (same). This is not such a case:  Universal made no effort to use "utube" as anything other than a url until it added the word "UTUBE" to

cognizable.  Universal cannot, as it alleges, "pre-empt[] the USPTO ruling on these trademark issues and place[] them before this Court through its filing of the present action."  (Compl. ¶ 66.) To the contrary, Universal can either adhere to USPTO procedures, which permit it to oppose a filed application at the USPTO, or await registration before seeking cancellation of the YouTube mark before this Court.  15 U.S.C. §§ 1064, 1127.  It has no basis to challenge YouTube's trademark *application* in federal court.  The claim should therefore be dismissed with prejudice "due to an absence of law to support [it]."  *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712.

**B.     State Claims**

**1.     Dismissal of the federal claims should also result in dismissal of the Ohio state law claims**

Because Universal's federal claims fail, the Court should also dismiss Universal's remaining state-law-based claims for lack of supplemental jurisdiction.  When a court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the other claims.  28 U.S.C. § 1367(c)(3).  As a practical matter, a court generally should so decline.  *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996); *see also* 16 Moore's Federal Practice § 106.66[2] (3d ed. 1997).

Here, Universal's only federal claims are its First and Second causes of action.  As discussed in Part IV.A, those claims must be dismissed.  Accordingly, the Court should dismiss the supplemental state law claims.  *See Hankins*, 84 F.3d at 803.  In the alternative, the Court can dismiss each supplemental Ohio cause of action on the merits for the reasons discussed below.

**2.     Ohio Common Law Dilution Claim:  UTUBE is not a famous mark**

While Ohio has not enacted an anti-dilution statute, its courts recognize dilution as a common law cause of action.  *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir. 1999) (citing *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 965 (6th Cir. 1987)); *Reed Elsevier, Inc. v. TheLaw.Net Corp.*, 269 F. Supp. 2d 942, 952 (S.D. Ohio 2003) (same).  To prevail, the senior trademark user must demonstrate that it has a famous mark that the junior user's conduct damages by blurring or tarnishment.  *Id.*; *see also Reed Elsevier*, 269 F. Supp. 2d

---

its website days before filing this lawsuit.

at 952 (noting that the senior mark must be famous to make out a dilution claim).

Universal does not allege that UTUBE is a famous mark. Indeed, as discussed above, Universal fails even to allege that UTUBE is a "mark," much less a famous one. This failure to allege a material element necessary to sustain an Ohio common law dilution claim makes the complaint deficient. *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712-13. And without facts and allegations sufficient to plead a valid dilution claim, the Court must dismiss the claim pursuant to Rule 12(b)(6). *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712-13.

Here again the Court should not grant Universal leave to amend. As discussed with respect to Universal's Section 43(a) claim, Universal has no basis to contend that UTUBE is a mark because it has been used only as a web address, not an identifier for the source of goods or services. Consequently, Universal cannot contend that UTUBE is a famous mark.

### 3.    Trespass to Chattels:  YouTube does not interfere with utube.com

Universal likewise fails to allege the elements of a trespass to chattels claim, including that YouTube intentionally committed any alleged trespass, that the trespass was to a "chattel", and that Universal itself possesses the chattel. Nor can it. The Court should therefore dismiss Universal's fourth claim for relief without leave to amend.

"While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort." *Compuserve, Inc. v. Cyberpromotions, Inc.*, 962 F. Supp. 1015, 1021 (S.D. Ohio 1997); *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.*, 411 F. Supp. 2d 804, 810 (N.D. Ohio 2006) (quoting *Compuserve* for identical proposition); *Stainbrook v. Fox Broad. Co.*, No. 3:05-CV-7380, 2006 U.S. Dist. LEXIS 91540, *10 (N.D. Ohio Dec. 19, 2006) (same). Recognizing the lack of relevant case law, courts applying Ohio law have turned to the Restatement (Second) of Torts. *Stainbrook*, 2006 U.S. Dist. LEXIS 91540 at *10; *Compuserve*, 962 F. Supp. at 1021. According to the Restatement, trespass to chattels occurs when one intentionally uses or interferes with a chattel in the possession of another. Restatement (Second) of Torts § 217(b) (1979); *see also W.M. Brode*, 411 F. Supp. 2d at 810; *Compuserve*, 962 F. Supp. at 1021. Section 217, Comment e defines "intermeddling" as

"intentionally bringing about a physical contact with the chattel. The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another." Restatement § 218 further notes that liability for trespass to chattels only attaches if, among other things, "the chattel is impaired as to its condition, quality, or value."

For a variety of reasons, Universal fails to plead a trespass to chattels claim. First, Universal does not allege that YouTube "intermeddles" with Universal's chattel. In other words, Universal does not claim that YouTube intentionally comes into physical contact with Universal's alleged property—utube.com. (Compl. ¶ 79.) To the contrary, Universal complains that "confused internet website visitors" mistakenly arrive at utube.com, thereby increasing Universal's website traffic. (Compl. ¶¶ 43, 45.) The trespass claim, if any, lies against the "one who commits a trespass," here, the individual Internet users who mistype utube.com when trying to reach YouTube.com.[5] YouTube itself does not commit a trespass because YouTube itself does not come into any physical contact with utube.com, intentionally or otherwise.

Second, Universal incorrectly claims that utube.com is its chattel. A "chattel" is "[m]ovable or transferable property; personal property; esp. a physical object capable of manual delivery and not the subject matter of real property." Black's Law Dictionary 251 (8th ed. 2004). A website does not meet this definition; it is not movable, physical, personal property. Instead, utube.com is an address on the World Wide Web—an intangible property right that cannot, by definition, be interfered with physically. It cannot, therefore, be trespassed.

Novel applications of trespass to chattels claims may serve to address some unwanted intrusions via the Internet, but those theories do not apply here. For example, trespass to chattels has been used to prevent a commercial enterprise from sending unsolicited electronic mail to subscribers of an online computer service. *See, e.g., Compuserve*, 962 F. Supp. at 1015. Trespass to chattels has similarly been used to block web aggregators from "spidering."[6] *See,*

---

[5]  It is doubtful that any claim would lie against those individual users. As Universal concedes, their action are mistaken (Compl. ¶ 43), not intentional. In addition, the impairment attributable to any one individual user would not support a trespass claim. And if those users are not engaged in acts of trespass, YouTube cannot be liable for contributing to or aiding a trespass.

[6]  A spider, or web crawler, is a program or automated script that browses the World Wide Web in a methodical, automated manner, collecting up-to-date information from other sites.

*e.g., Register.com v. Verio, Inc.*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000). In both types of cases, however, the alleged trespassers intentionally came into contact with the plaintiff's chattel—their computer system— by generating and sending electronic signals to that computer system via email or over the web. *See Compuserve*, 962 F. Supp. at 1021; *Register.com*, 126 F. Supp. 2d at 250; *eBay*, 100 F. Supp. 2d 1070-71. Here, the allegations are different. Universal does not claim that YouTube generated and directed signals to Universal. Rather, the allegation is that various others misdirected their electronic signals to Universal by mistakenly typing "utube.com." Moreover, Universal does not even allege trespass to a "chattel," as discussed above. It claims the trespass was to its web address, not its computer systems.

The trespass to chattels theory simply does not apply to the facts here, therefore the Court should not grant leave to amend this claim. Universal's complaint already concedes that the alleged trespass—the intended physical contact—comes from Internet users, not YouTube. Universal also cannot rectify its failure to allege a proper "chattel." Its website utube.com expressly states that it is hosted by One Net For All. This means that the computer system with which Internet users mistakenly come into contact belongs not to Universal but someone else. Without a possessory interest in the chattel—the computer system—Universal has no basis for sustaining a trespass action. Restatement (Second) of Torts § 217(b).[7]

> ### 4.    Nuisance:  nuisance claims are limited to interferences with land

For many of the same reasons, the Court should dismiss Universal's nuisance claim.

Ohio law recognizes two types of nuisance:  public and private. Restatement (Second) of Torts § 821A; *Nuckols v. Nat'l Heat Exchange Cleaning Corp.*, No. 4:00-CV-1698, 2000 U.S. Dist. LEXIS 18693 (N.D. Ohio Dec. 11, 2000) (citing Restatement). Although a public nuisance can interfere with a variety of different rights, a private nuisance—such as the one alleged here— is more limited. (*See* Compl. ¶¶ 89 (alleging only that YouTube "interferes with or annoys *Plaintiff* in the enjoyment of *its* legal rights (emphasis added), 89-90 (claiming damages arising

---

[7]  Allegations about the time or resources Universal has expended on the trespasses are not an impairment of the physical condition of the chattel, and therefore not actionable. *See Intel v.*

out of its alleged need to address an alleged personal interference).  Specifically, "[a] private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of *land*."  Restatement (Second) of Torts § 821D (emphasis added); *see also Nuckols*, 2000 U.S. Dist. LEXIS 18693 at *19 (quoting same).

Although the pleadings are altogether thin with respect to its nuisance claim, Universal appears to allege only interference with its web address.  A web address is *intangible* property, a way of telling computers (via a central database) the IP address of the related website.  It is not land.  Without alleging that YouTube interferes with Universal's land, the claim must fail.

For the same reasons, Universal should not be allowed to amend its claims.  No amount of amendment will turn Universal's intangible property right into land and conjure up actionable nuisance.  Without a land use claim, Universal's nuisance claim must be dismissed outright.  *See Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712.

### 5.    Negligence:  YouTube owes Universal no duty of due care

Universal's negligence claim rests on bare legal conclusions and points to no source of a duty to exercise due care.  The claim should therefore be dismissed.

"To prevail on a claim for negligence, the movant must establish that Defendant owed Plaintiff a duty of care; Defendant breached that duty of care; and Plaintiff's injury was proximately cause by Defendant's breach."  *W.M. Brode Co.*, 411 F. Supp. 2d at 809.

Here, Universal's sixth claim for relief simply re-states these legal requirements, without any factual allegations.  First, Universal makes the conclusory allegation that YouTube owes Universal a duty of due care, (Compl. ¶ 94.), without any explanation how or why such a duty would have arisen.  Second, Universal summarily alleges that "YouTube has breached that duty," (Compl. ¶ 95), without any supporting facts.  In a similar vein, Universal avers that "the breach was the proximate cause of [its] injuries," (Compl. ¶ 96.), without even suggesting the manner in which it *could* have been injured.  These statements are base.  They depend on no facts and only the barest assertion of a legal conclusion.  Accordingly, Universal's negligence claim should be dismissed.  *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006);

*Hamidi*, 1 Cal. Rptr. 3d 32, 45-47 (2003); Restatement (Second) of Torts § 218, comment h.

*Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 712-13.  Once again, because Universal can point to neither a duty of care nor a breach of that duty, it should not be given leave to amend.

### 6.    Ohio Deceptive Trade Practices:  UTUBE is not a mark

In Count 7, Universal attempts to rely on the Ohio Deceptive Trade Practices Act by alleging that YouTube's actions have somehow interfered with its "trademark," "service mark," or "trade name."  (Compl. ¶ 99.)  In making these bare legal assertions, however, Universal cannot escape the fact that the Ohio Deceptive Trade Practices Act prohibits the same type of conduct as Section 43(a) of the Lanham Act—causing a likelihood of confusion regarding the source of goods or services.  *Compare* Ohio Rev. Code. Ann. § 4165.02(A)(2) *with* 15 U.S.C. § 1125(a)(1)(A); *see also DeGidio v. West Group Corp.*, 355 F.3d 506, 509 (6th Cir. 2004) (stating that the same analysis applies to alleged trademark violations under Ohio law as under the federal law); *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 713 (treating the federal and state claims identically for purposes of evaluating Rule 12(b)(6) motion).  Since Universal has failed to allege a viable Lanham Act claim, as discussed above in Part IV.A.1, it similarly fails to state a viable Ohio Deceptive Trade Practices claim.

In addition, here again Universal alleges that it meets the applicable statutory definitions.  But these allegations are conclusory and cannot withstand a motion to dismiss.  Indeed, Universal does not even feign to address the necessary underlying issue:  whether it *ever* used UTUBE to identify its goods or services and distinguish them from those of others.  Ohio Rev. Code Ann. § 4165.01(E)-(G).  Nor does Universal plead that its purported mark has acquired secondary meaning, as would be required for protection of a descriptive term.  Having failed to plead sufficient facts to make a valid claim that UTUBE satisfies the statutory definitions, its seventh claim must be dismissed with prejudice.

### 7.    Ohio RICO Violation

Universal's bizarre Ohio RICO claim fares no better than its other claims.  Universal, in a transparent effort to drag YouTube's two founders into a public dispute, attempts a baroque sequence of bootstrapping operations.  Universal, although it has no copyright claims of its own, has noticed that *others* have attempted to bring such claims against YouTube.  Those *other*

claims, in turn, are not actually based on *YouTube's* actions, but rather the alleged actions of
YouTube's *users*, who on occasion misuse YouTube by posting videos without the copyright
owner's permission.  Thus Universal is attempting to state a claim based on the acts of one set of
nonparties (YouTube's users) that allegedly infringe the rights of another set of nonparties (the
underlying copyright holders).  But Universal's RICO claims are even more removed than this:
rather than attempt to state them against YouTube, they seek to hold YouTube's *officers*
individually liable, based on no allegations other than that they are officers of YouTube.

Universal's Ohio RICO claim fails for myriad reasons.  It fails for lack of personal
jurisdiction.  It fails to plead required elements.  It is preempted by *both* the safe harbor
protections of the DMCA *and* the express immunity granted by the CDA.  And, finally, it fails
because Universal cannot demonstrate proximate cause or injury attributable to YouTube's
alleged corrupt activity.

### a.    There is no basis for personal jurisdiction over Hurley or Chen

The Court should dismiss the Ohio RICO claims against Hurley and Chen "for lack of
jurisdiction over the person."  Fed. R. Civ. P. 12(b)(2).  The court may exercise personal
jurisdiction over Hurley and Chen if Universal establishes that (1) the state long-arm statute
authorizes the exercise of jurisdiction, and (2) if the exercise of jurisdiction complies with the
constitutional guarantee of due process.  *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)
(stating that the plaintiff bears the burden of proving personal jurisdiction).  Although the Ohio
long-arm statute is not coterminous with federal constitutional limits, courts consistently focus
on the due process inquiry—whether the defendant has sufficient minimum contacts with the
forum state.  *Id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

"Minimum contacts" can be subdivided into contacts that give rise to "specific" personal
jurisdiction and those that give rise to "general" personal jurisdiction.  *Bird*, 289 F.3d at 873; *see
also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-14 (1984).
"General" jurisdiction exists when a party has "continuous and systematic" contacts with a state
such that the plaintiff's claims for relief do not have to arise out of the defendant's contacts with
the forum.  *See Bird*, 289 F.3d at 873; *see also Helicopteros*, 466 U.S. at 414 n.9.  Here,

Universal alleges only general jurisdiction.  (*See* Compl. ¶ 6.)

Universal pleads no facts suggesting that Hurley and Chen have *any* contacts with Ohio, much less the minimum contacts necessary to warrant exercising general jurisdiction over them. Nonetheless, Universal claims, without foundation, that Hurley and Chen have "continuous and systematic contacts with this district."  (Compl. ¶ 6.)  Again, Universal improperly substitutes a sweeping legal conclusion for factual allegations, in contravention of pleading requirements.  *See Hughes*, 469 F.3d at 477; *Habeeba's Dance of the Arts*, 430 F. Supp. 2d at 713.  Moreover, the claim is belied by Universal's own averments that Hurley and Chen each reside in California. (Compl. ¶¶ 10, 11).  Because Universal has not met its burden of showing that Hurley and Chen are subject to general jurisdiction in Ohio, and even pleads facts at odds with jurisdiction, the Court should dismiss the Ohio RICO claims against them under Rule 12(b)(2).

> **b.    Universal leaves out allegations regarding material elements.**

Ohio's RICO statute, Revised Code §§ 2923.31-36, outlines the required elements.  Three of those elements are relevant here, and Universal fails to adequately plead any of them

First, the statute states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."  Ohio Rev. Code Ann. § 2923.32(A)(1). Certainly Universal's complaint feigns to track the *words* of this statute—i.e., it alleges that Hurley and Chen have "been employed by or associated with" YouTube (Compl. ¶¶ 109-10), and that YouTube is an "enterprise" (Compl. ¶¶ 110-11).  It similarly alleges that Hurley and Chen have "acquired and maintained an interest in or control of YouTube and have conducted or participated in, directly, or indirectly, the affairs of the enterprise YouTube."  (Compl. ¶ 110.) But the complaint otherwise fails to track the statute's logic.  As such, even if its conclusory allegations could withstand a motion to dismiss—and they cannot—Universal's claim would fail.

Specifically, Universal mixes up the acts of Hurley and Chen with those of YouTube, thereby erroneously collapsing the material elements.  The facts pled by Universal suggest that YouTube the corporation engages in the alleged criminal copyright infringement and distribution

of live musical performances. (*See* Compl. ¶¶ 114-27, 129-32, and 137-40.)[8] Simply put, Universal alleges that YouTube engages in "corrupt activity." But that does not give rise to a RICO claim against YouTube's officers Hurley and Chen. To state a proper RICO claim, Universal must allege either that Hurley and Chen are employees of YouTube and conduct YouTube's affairs through a pattern of corrupt activity, or that Hurley and Chen maintain an interest in YouTube through a pattern of corrupt activity. *See* Ohio. Rev. Code § 2923.32(A)(1) & (2). Here, Universal gets it backwards, alleging that the enterprise YouTube engages in corrupt activity yet bringing its claim against Hurley and Chen. In other words, Universal claims that Hurley and Chen should be held accountable for YouTube's corrupt activity, not that Hurley and Chen engaged in corrupt activity while conducting the affairs of YouTube. Because this does not track the statute, Universal's RICO claim against Hurley and Chen must fail.

Second, a RICO plaintiff must allege that the defendants engaged in "corrupt activity,"— defined as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in (1) Conduct defined as 'racketeering activity' under the 'Organized Crime Control Act of 1970,' 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E), as amended." *Id.* § 2923.31(I). This includes violations of 18 U.S.C. §§ 2319 (relating to *criminal* copyright infringement) and 2319A (relating to unauthorized transmissions of live musical performances). In sum, a defendant's "corrupt activity" must be criminal activity.

Instead of alleging criminal copyright infringement by either YouTube or its founders, however, Universal's Complaint rests on an assertion that *others* have made *civil* copyright claims in other cases (Compl. ¶¶ 112-33). 18 U.S.C. § 2319, more particularly, requires a violation of 17 U.S.C. § 506(a). In turn, 17 U.S.C. § 506(a) imposes criminal liability on any person who willfully infringes a copyright either: "(1) for purposes of commercial advantage or private financial gain, or (2) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works,

---

[8] In a transparent attempt to try to line up its claims with the statute, Universal creatively substitutes Hurley and Chen for YouTube at the end of its allegations. (*Compare* Compl. ¶¶ 127,

which have a total retail value of more than $1,000." Universal's complaint does not contain any allegations as to this necessary underlying charge. Specifically, Universal has not alleged that any such willful infringement was committed (a) by either defendant or (b) for purposes of private financial gain. Nor has Universal alleged that the willful infringement meets the requirements of 17 U.S.C. § 506(a)(2). To the contrary, Universal blankly alleges violations of altogether non-existent statutory provisions by claiming criminal infringement under "17 U.S.C. § 506(a)(1)(A) and (B)" (Compl. ¶ 130). These subsections *do not even exist*. Based on these pleading errors and deficiencies, one thus cannot determine what, if any, corrupt activity Chen and Hurley are accused of.[9]

Third, Universal must further allege sufficient facts to show not simply "corrupt activity," but a "*pattern* of corrupt activity." A pattern is defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code Ann. § 2923.31(E). Here, Universal attempts to allege that the "criminal transmission" of live musical performances constitutes the requisite pattern, but its own complaint acknowledges a fatal deficiency. 18 U.S.C. § 2319A(a) imposes criminal liability on "[w]hoever, without the consent of the performer or performers involved, knowingly and for purposes of commercial advantage or private financial gain" fixes or distributes the sounds and images of a live musical performance in a copy or phonorecord, or transmits those sounds and images to the public. Universal does not contend, however, either that Hurley and Chen committed any such acts or that they do not have consent for them. Instead, Universal repeatedly alleges that "it is *unlikely* that YouTube has

---

130-32 *with* ¶¶ 128, 133.) YouTube, however, is an independent legal entity.

[9] Notwithstanding the strictures of Rule 11, Universal falsely alleges that YouTube infringes copyrights held by Universal Music Group (UMG). UMG and YouTube entered into a highly publicized agreement licensing YouTube's hosting of UMG's copyrighted music and music videos on October 9, 2006—three weeks before Universal filed its original complaint. Yet when it filed its first amended complaint on November 30, 2006, Universal added its unsupportable allegations that YouTube criminally infringes UMG's copyrights. Moreover, even on December 27, when it filed is second amended complaint, almost three months after the YouTube-UMG deal, Universal continued to unjustifiably assert that YouTube infringes UMG's copyrights.

permission" from the performers. (Compl. ¶¶ 137-40 (emphasis added).) As a matter of pleading, this cannot suffice: it is not allegation but speculation. Lacking any allegation that Hurley and Chen violate Section 2319A, Universal cannot support its Ohio RICO claim.

Without its allegations that Hurley and Chen criminally infringe UMG's copyrights, or that YouTube transmitted live musical performances without consent, Universal has not pled a "*pattern* of corrupt activity." At best, Universal is left with a single allegation of copyright infringement (*see* Compl. ¶ 119), and even that claim is not properly pled (as discussed above).

### c.    The DMCA safe harbor precludes Universal's RICO claim.

Universal's pleading deficiencies, however, are the least of its RICO problems. More fundamentally, Universal's own factual averments establish that its claims are barred by the safe harbor provisions of the DMCA. The Online Copyright Infringement Liability Limitation Act (OCILLA) insulates YouTube (and thus its founders) from Universal's RICO claim. OCILLA, which is section 512 of the DMCA, provides service providers a safe harbor from copyright infringement allegations. Specifically, it protects service providers from liability and injunctive relief "for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" if they meet the conditions outlined in 15 U.S.C. § 512(c)(1). In addition, the service provider must have designated an agent to receive notifications of claimed infringement. *Id.* § 512(c)(2). These provisions are commonly referred to as the DMCA notice-and-takedown provisions.

Because YouTube complies with the requirements of DMCA § 512(c), and therefore cannot be held liable for the underlying charges of copyright infringement, Universal's Ohio RICO claim must be dismissed. From its web homepage at www.youtube.com, YouTube provides a link titled "Copyright FAQ." That linked page explains the procedures for filing a copyright infringement notification with YouTube, and specifically refers to Section 512(c) of the Copyright Act. *See* http://www.youtube.com/t/dmca_policy. More importantly, YouTube adheres to this policy, as Universal's complaint expressly admits. Indeed, Universal concedes that YouTube provides user-posted material "until it receives a take down notice from the copyright holder." (Compl. ¶ 25.) Universal further concedes that YouTube in fact takes down

material after receiving such a notification.  For example, Universal notes that YouTube removed content recorded from Saturday Night Live at NBC's request.  (Compl. ¶ 38.).  As another example, Universal acknowledges that YouTube removed videos by comedians Jon Stewart and Stephen Colbert at Viacom's request.  (Compl. ¶ 39.)  More generally, Universal admits in its complaint that YouTube removed numerous Japanese videos following complaints from the copyright owners.  (Compl. ¶ 34.)

Given its compliance with the DMCA notice-and-takedown provisions—which Universal affirmatively pleads—YouTube is afforded the protections of the DMCA safe harbor provisions. *See* 17 U.S.C. § 512(c)(1).  Universal's copyright infringement allegations therefore cannot form the basis for Universal's Ohio RICO claim.

### d.     Universal's Ohio RICO claim is expressly barred by the CDA.

In addition to being preempted by the DMCA, the CDA prohibits Universal's Ohio RICO claim.  The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  While the CDA does not impair the enforcement of criminal law, intellectual property law, or state law consistent with the statute, *see* § 230(e), it otherwise immunizes service providers from suit.  *See Zeran v. AOL, Inc.*, 129 F.3d 327 (4th Cir. 1997).  As such, it effectuates the Congressional policy "to avoid disincentives to innovation and to encourage self-regulation."  *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348, at *8 (E.D. Tex. Dec. 27, 2006) (noting these policies were made explicit in § 230(b)).

Universal's claim must therefore be dismissed under section 230 of the CDA.  As in *Doe*, Universal attempts to bring a civil claim on the belief that YouTube's actions violate the criminal laws.  Specifically, Universal alleges that Chen and Hurley engage in federal criminal violations of 18 U.S.C. §§ 2319 and 2319A, and thereby also violate Ohio's RICO statute.  *See* Ohio R.C. § 2923.32(A)(1).  But private litigants may not bring civil claims on their own belief that a service provider's actions violates the criminal laws.  *Doe*, 2006 U.S. Dist. LEXIS 93348, at *12.  Thus, as in *Doe*—the only case to address the applicability of § 230(e)(1) to a private civil suit based on alleged criminal acts, *see Doe*, slip op. at 5—Universal's claim is barred by the CDA's

immunity provision.[10]

> **e.    The alleged Ohio RICO violation is not the proximate cause of Universal's injuries.**

Finally, Universal cannot demonstrate proximate causation since its alleged injury—unwelcome visits to its website—is unrelated to the alleged copyright infringement.

Ohio's RICO statute is patterned after the federal RICO statute, 18 U.S.C. § 1961 *et seq*. *Ohio v. Thrower*, 575 N.E.2d 863, 870 (Ohio Ct. App. 1989).  Ohio courts therefore look to federal RICO law in applying Ohio's RICO law.  *Id.* at 870-871.  "The Supreme Court has explained that common law principles of proximate causation are incorporated into the RICO statute."  *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  "At common law, 'a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.'"  *Id.* (quoting *Holmes*, 503 U.S. at 268-69).  Thus, to have standing to bring a RICO claim, "a plaintiff must demonstrate proximate cause between the alleged injury and the defendant's injurious conduct."  *Id.*

As in *Perry*, this Court should dismiss Universal's claims for lack of proximate cause. Universal does not have a private Ohio RICO claim to enforce third-party copyrights or live musical performance rights because, without an interest in those works, Universal is not directly or indirectly injured by the alleged statutory violations.  Simply put, Universal's alleged injury comes from unwanted internet traffic, not criminal violations.  The fact that Internet users phonetically mistype utube.com when looking for youtube.com and its video content—the only injury complained of in Universal's suit—is entirely unconnected to the alleged corrupt activity.

The lack of proximate cause is perhaps best demonstrated with a hypothetical.  Imagine that YouTube engaged in all the same alleged corrupt activity, but at the website xylophone.com. In this hypothetical, it is unlikely that any Internet users would accidentally mistype utube.com when looking for allegedly infringing videos or unauthorized recordings of live musical

---

[10]   Neither can Universal argue that its RICO claim survives CDA preemption because it is based solely on intellectual property laws.  47 U.S.C. § 230(e)(2).  That argument would push Universal squarely into yet another form of federal preemption, as state claims based solely on

performances.  Universal would have no standing to file an Ohio RICO claim because the alleged pattern of corrupt activity would not affect Universal, which holds no copyright in allegedly infringed works.  *See also* Ohio Rev. Code Ann. § 2932.34(B) (allowing RICO claims to be filed only by "[a]ny person who is injured or threatened by injury *by a violation of section 2932.32*" (emphasis added)).

The alleged corrupt activity here is the same, and is similarly not actionable.  The only difference is that Universal claims *separate* injury from the fact that users mistype "youtube.com."  That injury has nothing to do with the alleged corrupt activity, and would be unchanged if YouTube had licenses for all of the content users post to its site.[11]  There is simply no causal link between the claimed violations and the claimed injuries.

### VII.    Conclusion

For the foregoing reasons, Defendants ask that the Court dismiss Universal's claims without leave to amend.

Dated:  February 1, 2006                                  Respectfully Submitted

By:    /s/ Matthias A. Kamber_____

HARRY D. CORNETT, JR. - #13179
CAROLYN C. RUSSELL - #73549
Tucker Ellis & West LLP
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115-1475
Telephone:  216/696-2618
Facsimile:  216/592-5009

MICHAEL H. PAGE
MARK A. LEMLEY
MATTHIAS A. KAMBER
Keker & Van Nest, LLP
710 Sansome St.
San Francisco, CA 94111
Telephone:  415/391-5400
Facsimile:  415/397-7188

*Attorneys for Defendants, YouTube, Inc.,*
*Chad Hurley, and Steve Chen*

---

acts that violate the Copyright Act are preempted.  17 U.S.C. § 301(a).

[11]  In fact, this is no hypothetical:  YouTube has recently negotiated licenses with many of the largest content providers, but we do not expect that Universal would agree that those licenses eliminate the harm it claims from inadvertent visitors.

388980.02

20

**Certificate of Service**

I hereby certify that on **February 1, 2007**, a copy of foregoing **RULE 12(b)(2) & (6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT (CLAIMS FOR RELIEF 1-8)** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

s/ Matthias A. Kamber
MATTHIAS A. KAMBER
Keker & Van Nest LLP
710 Sansome St
San Francisco, CA, 94111
Phone: (415) 391-5400
Fax: (415) 397-7188
E-mail: mkamber@kvn.com

388980.02