IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL TUBE & ROLLFORM EQUIPMENT CORPORATION, | Case No. 06-2628 |
| *Plaintiff,* | Judge: James G. Carr |
| -vs- | |
| YOUTUBE, INC., CHAD HURLEY, AND STEVE CHEN, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| *Defendants.* | |

Dockets.Justia.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...…..ii

Introduction…………………………………………………………………………………1

    I.    Background……………………………………………………………………1

        A.  Facts regarding Plaintiff………………………………………………1

        B.  Facts regarding Defendants……………………………………………...1

    II.    Law and Argument…………………………………………………………..3

        A.  The Legal Standard for Defendant's Motion to Dismiss…………………………3

            1.      Rule 12(b)(6)…………………………………………………3

            2.      Rule 12(b)(2)…………………………………………………...4

        B.  UTube has properly pleaded its claim for violation of
             15 U.S.C. 1125(a) against yTube………………………………………….5

        C.  15 U.S.C.§ 119 and 1064 provide this Court with authority over applications…………………6

        D.  Dismissal of federal claims would not require dismissal of Ohio claim………………….8

        E.  Ohio Common Law Dilution does not require a famous mark…………………………8

        F.  Trespass to chattels………………………………………………………...9

        G.  Ohio does not limit nuisance to interference with land…………………………...11

        H.  Plaintiff has clearly set forth that yTube owes it the duty of ordinary care………………12

        I.  A challenge to the validity of the UTUBE mark would require evidence
            outside the pleadings……………………………………………………...12

        J.  Violation of Ohio's RICO statute……………………………………………...13

            1.      Ohio has personal jurisdiction over Hurley and Chen………………………13

            2.      uTube has properly pleaded all of the elements of an
                Ohio RICO claim……………………………………………………14

            3.      the DCMA safe harbor does not excuse yTube's
                copyright infringement………………………………………………16

            4.      the CDA does not bar yTube's RICO claims…………………………….19

            5.      the RICO violation is the proximate cause of uTube's injuries……………19

    III.    Conclusion…………………………………………………………………..20

## Cases

A&M Records, Inc. v. Napster, Inc., 114 F. Supp. 2d 896 (N.D. Cal. 2000).............................................. 21

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) ...................................................... 21

Allard Enterprises, Inc. v. Advanced Programming Resources, Inc., 249 F.3d 564, (6th Cir.) 2001 ............ 6

Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir.1988)....................................................... 5

Ameritech, Inc. v. Am. Info. Techs. Corp., 811 F.2d 960, 965 (6th Cir. 1987)..................................... 9, 10

Argos v. Orthotec LLC, 304 F. Supp. 2d 591, 595 (D. Del. 2004)......................................................... 7

Bird v. Parsons, 289 F.3d 865, 874 (6th Cir.2002) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890
    (6th Cir.2002)................................................................................................................... 16

Buitoni Foods Corp. v. Gio Buton & C.S.P.A., 530 F. Supp. 949, 973 (E.D.N.Y. 1981) ............................ 8

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984)............................................. 4

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, (2001) ......................................................... 17

CompuServe, Inc. v. Cyber Promotions, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997)................................ 12

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)................................................ 3

D.M. Antique Import Corp. v. Royal Saxe Corp. 311 F. Supp. 1261, 1269 (S.D.N.Y. 1969) ...................... 9

Davis v. Metro Productions, Inc. 885 F.2d 515 C.A.9 (Ariz.),1989 ...................................................... 17

Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir.1998)..................................................... 5

Delta Systems, Inc. v. Indak Mfg. Corp. 4 Fed.Appx. 857 C.A.Fed. (Ohio),2001 .................................. 16

Doe v Bates, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Texas Dec. 27, 2006)....................... 22

Dreyfus Fund Inc. v. Royal Bank of Canada, 525 F. Supp. 1108, 1114 (S.D.N.Y. 1981).......................... 9

Durox v. Duron Paint Co., 320 F.2d 882, 886 (4th Cir. 1963) ............................................................. 8

Electrical Constr . & Maintenance Co. v. Maeda Pacific Corp., 764 F.2d 619, 623 (9th Cir. 1985)............. 4

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) ........................................................................ 22

In re Delorean Motor Co. v. Weitzman, 991 F.2d 1236, 1240 (6th Cir.1993) ........................................... 3

In re Oppedahl & Larson LLP, 373 F.3d 1171, C.A.Fed., 2004............................................................ 15

In re Richmond Produce Co., 118 Bankr. 753, 755 (Bankr. N.D. Ca., 1990) ........................................ 4, 11

In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981) ................................................. 4

Int'l Tech Consultants, Inc. v. Euroglas, S.A., 107 F.3d 386, 391 (6th Cir.1997) ................................... 5

Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc. 23 F.Supp.2d 771, (N.D.Ohio 1998) ................... 23

Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999).......................................................... 4

Jes Properties Inc. v. USA Equestrian et. al., Case No. 8:02-cv-1585-T-24MAP, p. 17 (M.D.Fla. 2003) (Bucklew, J.).... 5

Jet, Inc. v. Sewage Aeration Sys., 165 F.3d 419 (6th Cir. 1999)........................................................... 9

Jones v. Sherrill, 827 F.2d 1102, 1103 (6th Cir.1987) ...................................................................... 4

Kottmyer v. Mass, 436 F.3d 684, 688 (6th Cir. 2006)....................................................................... 3

Kuhn v. Bader , 89 Ohio App. 203 (1951)..................................................................................... 12

LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 56 USPQ2d 1965 (Fed.Cir.2000)............................. 16

LSJ Inv. Co., Inc. v. O.L.D., Inc., 167 F.3d 320, (6th Cir. 1999) ........................................................ 17

McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39 (6th Cir.1988).............................................. 4

Metro-Goldwyn-Mayer Studios Inc. v Grokster, Ltd., 545 U.S. 913 (2005)............................................. 22

Mussivand v. David (1989), 45 Ohio St.3d 314, 318,N.E. 66)............................................................. 15

Nat'l City Bank v. Nat'l City Window Cleaning Co., 174 Ohio St. 510, 513 (1963).................................... 10

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99.................... 18

Neitzke v. Williams, 490 U.S. 319, 326-327 (1989)....................................................................... 22, 23

Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 569 n. 30 (S.D.N.Y.1985) ............................... 17

O'Brian v. DiGrazia, 544 F.2d 543, 546 n. 3 (1st Cir.1976)................................................................ 4

Perkins v. Benguet Consolidated Mining Co., 158 Ohio St. 145, 107 N.E.2d 203 (Ohio 1952)....................... 16

Reed Elsevier, Inc. v. thelaw.net Corp., 269 F. Supp.2d 942, 952 (S.D. Ohio 2003) ............................. 9, 10

Restatement (Second) of Torts § 876 ......................................................................................... 12

Scheid v. Fanny Farmer Candy Shops, Inc. 859 F.2d 434 (6th Cir.1988) .............................................. 4

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ........................................... 3
Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1220 (9th Cir.1996) ............................................. 6
Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir.1989) ............................................. 5
Shull v. Pilot Life Ins. Co., 313 F.2d 445 (5th Cir. 1963) ................................................................... 4, 11
Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485, 491 (3rd Cir. 1958) ..................... 8
Standard Pressed Steel Co. v. Midwest Chrome Process Co., 418 F. Supp. 485 (N.D. Ill. 1976) .................. 8
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) .................................... 4
Taylor v. City of Cincinnati, 143 Ohio St. 426, at 431 (1944). ............................................................... 14
Theunnisen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.1991) ................................................................. 5
Tumblebus Inc. v. Cranmer, , 760-61 (6th Cir. 2005) ........................................................................... 6
United States Playing Card Co. v. Bicycle Club, 119 Ohio App. 3d 597, (Ohio Ct. App., Hamilton County 1997)....... 14
United States v. Turkette, 452 U.S. 576, 591, 101 S.Ct. 2524, 69 L.Ed.2d 246 ........................................ 18
Universal Coach, Inc. v. New York City Transit Auth., Inc. (1993), 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32-33.. 17
Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815-16 (1st Cir. 1987). .............................. 6
W & G Tennessee Imp., Inc. v. Esselte Pendaflex Corp., 769 F. Supp. 264 (M.D. Tenn.1991 ....................... 8
Ward v. Barringer (1931), 123 Ohio St. 565, 176 N.E. 217 ................................................................... 14
Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir.1997) ......................................................................... 4
Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir.1976) ........................................................................... 3
Zeran v. AOL, Inc., 129 F.3d 327 ................................................................................................... 22

## Statutes

15 U.S.C. § 1119 ............................................................................................................. 7, 8, 9
15 U.S.C. §1064 .................................................................................................................... 7
15 U.S.C. §1119 ................................................................................................................. 7, 8
15 U.S.C. §1127 .................................................................................................................... 6
17 U.S.C § 512(c)(1)(A) .......................................................................................................... 20
17 U.S.C. § 301(a) ................................................................................................................ 23
17 U.S.C. § 506 .................................................................................................................... 18
17 U.S.C. § 506(a)(1)(A) and (B) .............................................................................................. 18
17 U.S.C. § 512(c). ............................................................................................................... 20
17 U.S.C. § 512(c)(1) ............................................................................................................ 20
17 U.S.C. § 512(c)(1)(B) ........................................................................................................ 21
17 U.S.C. § 512(i) ................................................................................................................ 19
17 U.S.C. § 512(i)(1)(A). ....................................................................................................... 19
17 U.S.C. § 512(k)(1)(A)-(B) ................................................................................................... 19
17 U.S.C. §512(c)(1)(A). ........................................................................................................ 20
18 U.S.C. § 1962(c) .............................................................................................................. 16
18 USC §2319 .................................................................................................................. 3, 17
18 USC 2319A ................................................................................................................. 3, 17
47 U.S.C. § 230(b)(4) ............................................................................................................ 22
47 U.S.C. § 230(e)(2) ............................................................................................................ 22
ALA. CODE § 8-12-17 (2006) ................................................................................................... 10
DEL. CODE. ANN. tit. 6, § 3313 (2006) ....................................................................................... 10
GA. CODE ANN. § 10-1-451(b) (2006) ........................................................................................ 10
LA. REV. STAT. ANN. §51:223.1 (2006) ..................................................................................... 10
MASS GEN. LAWS ch. 110H, § 13 (2006) ................................................................................... 10
ME. REV. STAT. ANN. tit. 10, § 1530 (2006) ............................................................................... 10
MO. REV. STAT. § 417.061 (2007) ............................................................................................. 10
N.H. REV. STAT. ANN. § 350-A:12 (2006) ................................................................................... 10

N.Y. GEN. BUS. LAW § 360-l (2006) ........................................................................................ 10
O.R.C. §2923.34(B) ................................................................................................................... 23
OR. REV. STAT. § 647.107 (2006) .......................................................................................... 10
R.I. GEN. LAWS § 6-2-12 (2007) ............................................................................................ 10
TEX. BUS. & COM. CODE ANN. § 16.29 (2006) ................................................................... 10
West's Florida Statutes 495.151 ............................................................................................... 10

## Rules

FRCP 12(b)(2) ............................................................................................................................... 5
FRCP 12(b)(6) ........................................................................................................... 3, 4, 5, 7, 13, 22
Ohio Supreme Court Rules of Practice Rule 18(1) ..................................................................... 24

## Treatises

J. Thomas McCarthy,  McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed.2000) ................................. 6

## Secondary Sources

72 Ohio Jurisprudence 3d 458, Nuisances, Sec. 65 ................................................................... 14
Pattishall, Dawning Acceptance of the Dilution Rationale for Trademark-Trade Identity Protection (1984) ............... 10
Restatement (Second) of Torts § 217 ........................................................................................ 11
Restatement (Second) of Torts § 217 (1979) ........................................................................... 11
Restatement (Second) of Torts § 217 cmt. d (1965) ................................................................ 11
Restatement (Second) of Torts § 218 (1979) ........................................................................... 11
Restatement (Second) of Torts § 218(b) .................................................................................. 12
Restatement (Second) of Torts § 8A (1965) ............................................................................. 12
Schechter, The Rational Basis of Trademark Protection (1927), 40 Harv.L.Rev. 813, 825 ...................................... 10

## Record

Amended Complaint ................................................................................ 2, 6, 7, 11, 15, 17, 19
Motion to Dismiss at 17-18 ....................................................................................................... 20

## Miscellaneous

Brad Stone and Miguel Helft, New Weapon in War Over Piracy, N.Y. TIMES, Feb. 19, 2007 ................................... 21
http://arstechnica.com/news.ars/post/20061003-7892.html ......................................................... 2
S. REP. NO. 105-190, (1998) ........................................................................................ 19, 20, 21

## INTRODUCTION AND STATEMENT OF THE ISSUE

Plaintiff, Universal Tube & Rollform Equipment Corporation ("uTube"), by and through its undersigned attorneys, hereby opposes Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim and for Lack of Personal Jurisdiction. Plaintiff's opposition is based upon this memorandum of points and authorities, the Declaration of William Dusseau, and the pleadings on file herein.

Defendants' motion should be denied in its entirety. The Complaint is legally sufficient because it states cognizable legal claims and sufficient facts under those claims. This Court has personal jurisdiction over the Defendants based on their commission of tortious conduct outside of the State of Ohio that individually targeted or affected Plaintiff within the State of Ohio, and because the Defendants' contacts with Ohio, arising from their web site, are interactive and have been continuous and systematic.

## I.    BACKGROUND

### A.    Facts regarding Plaintiff

Since 1985, Universal Tube & Rollform Equipment Corporation ("uTube") has been committed to being the number one supplier of used tube and pipe mills and rollform machinery. It ships its machinery throughout the United States and numerous foreign countries. uTube primarily sells reconditioned equipment that makes pipes and tubing from flat coils of metal. uTube has one of the largest selections of used tube and pipe mills in the world. Its 125,000+ square feet of warehouse space houses approximately $6.5 Million in equipment. uTube also represents many new equipment manufacturers and offers rebuilding, engineering, import and export services.[1]

In 1996, uTube purchased the domain name <utube.com> to establish a presence on the internet. uTube's website has developed into an important link between the company and its customers, representatives, suppliers, prospective customers and other interested parties. The website is essential to the continued success and future prospects of the company. Since its inception, uTube has spent more than $1.5 million in advertising and promotion of its trade name, trademarks, products, services, and its www.utube.com website. uTube also recently applied for federal registration of its UTUBE mark and is the owner of U.S. Trademark Application Serial No. 77/023852 with the United States Patent and Trademark Office.

### B.    Facts regarding Defendants

The predecessors of YouTube Inc. ("yTube") registered the domain name <youtube.com> in February of 2005, almost 10 years after the Plaintiff registered <utube.com>. After incorporating in Delaware in October 2005, Defendants, aided by experienced counsel and an established venture capital firm, launched its website publicly in December, 2005. The foundation of yTube is its so-called "user-generated content." However, much of that content is not "user generated" at all. Rather, it is the "user-stolen" intellectual property of others, and yTube is a willing partner in that theft.

---

[1]    While these facts are relatively easy to verify, YouTube has incorrectly and frivolously asserted in its motion that uTube is "… a regional seller of machine tools that had never used "utube" as a trademark in any way". Contrived facts and misstatements of law persist throughout the motion and will be pointed out when relevant.

yTube permits, encourages, facilitates and induces the uploading by its members of thousands of unauthorized copies of copyrighted songs and music videos each day onto servers that it owns or controls.  yTube thus enables members and the public to access large amounts of infringing content for free.  yTube displays advertisements, which generate significant revenue, concurrent with the illegal publication and performance its purloined content.

yTube is aware that it cannot post copyrighted content without first obtaining consent or a license.  yTube harbors no illusion that the countless users who have posted bootleg videos and pirated sound records to yTube have done so lawfully.  yTube simply posts the infringing material and leaves it there unless a take-down notice is received from the copyright holder, apparently believing that its flagrant and willful infringement is lawful until someone complains.

yTube facilitates and promotes the infringement of copyrighted works and the dissemination of illegal pornography through its service.  yTube condones the public exhibition of lewd and other disgusting videos, which have graphically depicted such things as a man committing suicide, people with a torture , tampon or pubic hair fetish, discussion of corpse defilement, and child pornography.

Not surprisingly, yTube's lewd videos and freely downloadable unlicensed copyrighted content caused yTube's traffic to experience phenomenal growth in a very short period of time.  In June of 2006, yTube pulled in a total of 19.6 million unique visitors, according to Nielsen/NetRatings, up from less than five million in January of 2006. This caused many people to notice that much of yTube's traffic comes from infringement of copyrighted content.  For example, Dallas Mavericks owner and dot-com billionaire Mark Cuban has predicted that yTube will be "sued into oblivion. "They are just breaking the law," says Cuban.[2] Cuban's statements appear to be coming true as Viacom International Inc., Comdey Partners, Country Music Television, Paramount Pictures and Black Entertainment Television have recently filed a copyright infringement lawsuit seeking 1 billion dollars in damages for the infringement of 150,000 copyrighted works. (Complaint attached as Exhibit 1).

As yTube's internet traffic increased, so did the traffic to Plaintiff's website at <utube.com> due to actual confusion among consumers.  Plaintiff's website traffic has increased from a few thousand visitors per month to more than 100,000 visitors per day. The confusion is continuing without letup. The visitors mistakenly arrive at Plaintiff's website as a result of confusion as to the source of Plaintiff's and Defendant's services caused by the similarity of <utube.com> to <youtube.com>.  Exhibit 2 of Plaintiff's Second Amended Complaint shows actual confusion by a police department in Australia, blaming Plaintiff for child pornography they  found at yTube's web site.  The Complaint sets forth other examples of actual confusion, all of which harm the Plaintiff's reputation, mark, and property interests.[3]

---

[2]     See http://arstechnica.com/news.ars/post/20061003-7892.html. The article goes on to state "Cuban's comments touch upon an important issue that many others have noticed: much of YouTube's traffic comes from copyrighted content. Whether it's clips from The Colbert Report, Saturday Night Live sketches, or Nate's favorite music video, much of the YouTube catalog consists of video that neither it nor the poster owns the rights to…. Universal Music Group has taken a rather dim view of YouTube's activities. CEO Doug Morris has painted YouTube and MySpace with the copyright-infringer brush, saying that they "owe us millions of dollars" for infringement".

[3]     It is interesting that yTube labels Plaintiff as a gold digger and suggests that this dispute could easily be resolved if Plaintiff would simply convert its home page into a billboard that directs traffic to yTube by allowing browsers to select between the two sites.  Yet infringer and porno purveyor yTube, as a late arrival to the internet and second user of a confusingly similar mark, is not willing to to the same by convertin its own homepage into redirection page.  yTube's real argument, as Plaintiff imagines it, is that yTube isn't opposed to breaking copyright law for profit, so why should it have to obey the trademark laws. These facts are, of course, beyond the corners of the Complaint. However, they are important to consider because yTube has seen fit to address this supposed resolution in its motion.

Chad Hurley is a cofounder and the CEO of yTube. Steve Chen is a co-founder and the CTO of yTube. Hurley and Chen are, at the least, associated with the enterprise yTube, and have participated in the affairs of the enterprise through a pattern of corrupt activity. The corrupt activity comprises a consistent pattern of violations of 18 USC §2319 (criminal infringement of copyright), and 18 USC §2319A (unauthorized fixation of, and trafficking in, sound recordings and music videos of live musical performances).

As a result of Defendants' acts, Plaintiff has brought claims against yTube for (1) federal unfair competition; (2) cancellation of yTube's trademark applications; (3) dilution under Ohio common law; (4) trespass to chattels; (5) nuisance; (6) negligence; and (7) Ohio unfair competition. Plaintiff has also brought claims against Hurley and Chen for violation of Ohio's RICO statute.

## II.     LAW AND ARGUMENT

### A.   The legal standard for Defendants' Motion to Dismiss

#### 1.   Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In deciding such a motion, "a district court must accept as true all allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." Kottmyer v. Mass, 436 F.3d 684, 688 (6th Cir. 2006). The court's task is to determine not whether the complaining party will prevail on its claims but whether it is entitled to offer evidence to support those claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is appropriate only if the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(emphasis added).

Rule 8(a) sets forth the basic federal pleading requirement that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir.1976). Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." In re Delorean Motor Co. v. Weitzman, 991 F.2d 1236, 1240 (6th Cir.1993) (quoting Conley, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts.

In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Jones v. Sherrill, 827 F.2d 1102, 1103 (6th Cir.1987) citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984) (quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981), cert. dismissed, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); see also, 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216 at 121-23 (1969).

The United States Court of Appeals for the Sixth Circuit recently stated:

[W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.." Scheid v. Fanny Farmer Candy Shops, Inc. 859 F.2d 434 (6th Cir.1988); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39 (6th Cir.1988), quoting, O'Brian v. DiGrazia, 544 F.2d 543, 546 n. 3 (1st Cir.1976).

Specificity in the pleadings is only required pursuant to Rule 9(b) for averments of fraud or mistake, neither of which are present in this case.  [A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). There are exceptions, however. One exception permits consideration of documents attached to a motion to dismiss. "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." Id. (citing Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir.1997)).

Additionally, courts should be extremely reluctant to grant a motion to dismiss when the claim in question asserts a novel theory of recovery.  Novel theories of recovery are best tested for legal sufficiency in light of actual, rather than alleged facts. Electrical Constr . & Maintenance Co. v. Maeda Pacific Corp., 764 F.2d 619, 623 (9th Cir. 1985);  In re Richmond Produce Co., 118 Bankr. 753, 755 (Bankr. N.D. Ca., 1990); Shull v. Pilot Life Ins. Co., 313 F.2d 445 (5th Cir. 1963).  The "court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." Jes Properties Inc. v. USA Equestrian et. al., Case No. 8:02-cv-1585-T-24MAP, p. 17 (M.D.Fla. 2003) (Bucklew, J.) citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1357 (2d ed. 1990).  Without this approach there would never be a novel theory of recovery or expansion of legal theories to adapt to new technologies or changes in society because they would all be dismissed via 12(b)(6).

2.  Rule 12(b)(2)

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) requires the court to determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendants.  In a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden to establish personal jurisdiction. Int'l Tech Consultants, Inc. v. Euroglas, S.A., 107 F.3d 386, 391 (6th Cir.1997).  If the court does not conduct an evidentiary hearing, plaintiff can meet his burden with a *prima facie* showing of jurisdiction. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir.1998).  The Court must view the evidence in the light most favorable to the plaintiff without weighing any disputed assertions of the party seeking dismissal. Theunnisen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.1991).  However, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." Id. at 1262.

In ruling upon a Rule 12(b)(2) motion, the court has three procedural alternatives: (1) the court may determine the motion on the basis of written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; or

(3) it may conduct an evidentiary hearing on the merits of the motion. See Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir.1989).  As long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss should be denied, even in the face of controverting evidence presented by the moving party. Serras, 875 F.2d at 1214; Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir.1988).

## B. uTube has properly pleaded its claim for violation of 15 U.S.C. 1125(a) against yTube.

Defendants argue that Plaintiff's pleading is deficient under 12(b)(6) because it has "not alleged that UTUBE is a protectable mark".  Defendants' argument is hypercritical and ignores the facts alleged in the Complaint.  Furthermore, the alleged defense related to the validity of the UTUBE mark is based on facts not in the record.  Plaintiff has gained trademark rights to UTUBE from uses of the mark in commerce that are listed in the Complaint as well as from uses not referenced in the Complaint.  uTube is not required to state each and every use of its marks.  Rather, Plaintiff is only required to allege that it owns a mark and that there is a likelihood of confusion between its mark and yTube's mark.

Plaintiff does not dispute that it must eventually prove that it owns a protectable mark. yTube begins its faulty analysis by misrepresenting the statements of the court in Tumblebus Inc. v. Cranmer, , 760-61 (6th Cir. 2005).  yTube incorrectly claimed that the court in Tumblebus required the specific pleading, in a Section 43(a) claim, of allegations that (1) the mark is protectable; and (2) that the defendant's use of its mark is likely to cause confusion regarding the source of goods or services.  In fact, the court was simply referring to matters that must be determined later by the trial court.

It is also true that a mark may not be protectable if certain circumstances apply, including such things as genericness; descriptiveness without secondary meaning; abandonment; assignment; failure to affix; antitrust violations; functionality; or laches, estoppel, or acquiescence. Certainly Plaintiff is not required to allege the non-applicability of each of these.  The point is, simply, that alleged defects in protectability require extensive evidentiary showings that make them inappropriate for a motion to dismiss.

Rights in trademarks are primarily common law property rights acquired by the first party to appropriate the mark and use it in connection with a particular business. Federal registration is not a requirement for a protectable mark. The first to use a mark in the sale of goods or services is the "senior user" of the mark, and gains common law rights to the mark immediately upon use. J. Thomas McCarthy,  McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed.2000) [hereinafter McCarthy]. See for example Allard Enterprises, Inc. v. Advanced Programming Resources, Inc., 249 F.3d 564, (6th Cir.) 2001; Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1220 (9th Cir.1996). Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815-16 (1st Cir. 1987).

For purposes of the Lanham Act, a mark is deemed to be in use in commerce …
… on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce..." 15 U.S.C. §1127.  Plaintiff has clearly alleged that it is the first user of the UTUBE mark in commerce and that such use arose from, among other things, the display of the mark in advertising. Additional facts were alleged in the Second Amended Complaint as follows:

1. Plaintiff's Second Amended Complaint alleged that Plaintiff has used the internet domain name <utube.com> since 1996 for its business of selling used tube and pipe mills and rollform      machinery. (¶ 1).

2. uTube has also applied for federal registration of the UTUBE mark and is the owner of U.S. Trade-mark Application Serial No. 77/023852 with the United States Patent and Trademark Office. (¶ 18).

3. As a direct result of uTube's longstanding use of the mark UTUBE in interstate commerce, sales, advertising and marketing, it has acquired trademark rights to the mark UTUBE. (¶ 55)

4. The visitors mistakenly arrive at Plaintiff's website as a result of confusion as to the source of Plaintiff's and Defendant's services caused by the similarity of <utube.com> to <youtube.com>(¶ 43)

5. yTube's use of the YOUTUBE mark is likely to cause, and has caused, consumer confusion as to the origin of the goods or services rendered under the UTUBE mark either through initial interest confusion, actual confusion or reverse confusion. (¶ 56)

There can be no dispute that the allegations give fair notice that yTube is being sued for trademark infringement of the UTUBE mark.  Plaintiff has properly alleged it has trademark rights in and to the UTUBE mark and that consumer confusion is likely, given defendants' use of a nearly identical mark.  These allegations are sufficient to state a claim.

Defendants also argue that Plaintiff's pleading is deficient under 12(b)(6) because, it claims,, prior to this suit, Universal did not use UTUBE as a mark but only as a domain name.  First, this is a contrived fact and uTube is willing to provide evidence that it also used the UTUBE mark  outside the internet.  Second, the court may not consider this false and contrived factual allegation because it is outside the pleadings.  Third, there is no *per se* rule that use of a mark as a domain name is not "use in commerce" or that it is not trademark use.  In the context of domain names, use in the operation of a website can satisfy the "use in commerce" requirement, "because it affects a party's ability to offer services." Argos v. Orthotec LLC, 304 F. Supp. 2d 591, 595 (D. Del. 2004).

If the Court determines that the allegations in Plaintiff's Complaint fail to state a claim upon which relief may be granted, then Plaintiff requests leave of Court to remedy any perceived deficiency through an additional amendment alleging the needed facts.  Ultimately, the questions of whether Plaintiff owns a mark will require factual evidence that must be interpreted by a trier of fact.

### C.  15 U.S.C. § 1119 and § 1064 provide this Court with authority over applications.

Plaintiff's Second cause of action seeks cancellation of yTube's trademark *applications* pursuant to this Court's authority under Section 37 of the Lanham Act, 15 U.S.C. §1119 and 15 U.S.C. §1064. (Second Amended Complaint ¶ 63-68).

In *any action involving a registered mark* the court may determine the right to registration, order the cancellation of registrations, in whole or in part, *restore canceled registrations,* and *otherwise rectify the register* with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of

the Patent and Trademark Office, and shall be controlled thereby.  15 U.S.C. §1119 (emphasis added).

yTube's interpretation of the statute (without the benefit of any interpreting case law) suggests that the clause "…any action involving a registered mark …" means that the mark in the litigation must be registered before the court obtains authority over the Patent and Trademark Office register.

Courts have analyzed this argument and consistently found contrary to yTube's unsupported interpretation.  In Durox v. Duron Paint Co., 320 F.2d 882, 886 (4th Cir. 1963) the Court held that Section 37 of the Lanham Trademark Act (15 U.S.C. § 1119) gives the courts parallel jurisdiction over the right to the registration of trademarks.  In particular "…the authority given by this section to the courts over the respective rights of parties to trademark registrations is concurrent with the authority of the Patent Office to conduct opposition[4] and cancellation proceedings, and the remedies are not mutually exclusive." Id. at 886.

As stated in Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485, 491 (3rd Cir. 1958):

Congress has provided that all questions in respect to a registered trademark may be determined in one proceeding, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office tribunals.

There is an abundance of authority that follows Durox.  In W & G Tennessee Imp., Inc. v. Esselte Pendaflex Corp., 769 F. Supp. 264 (M.D. Tenn.1991) the Court, citing Durox, held that it had, along with the TTAB, concurrent jurisdiction over registration and cancellation of trademarks under 15 U.S.C. § 1119.  In Buitoni Foods Corp. v. Gio Buton & C.S.P.A., 530 F. Supp. 949, 973 (E.D.N.Y. 1981) the Court decided it could order the modification of a pending trademark application or even the issuance of a trademark registration where an application has not yet been filed in order to resolve the trademark issues between the parties.  The Northern District of Illinois, in Standard Pressed Steel Co. v. Midwest Chrome Process Co., 418 F. Supp. 485 (N.D. Ill. 1976), ruled that a district court has the authority to determine the registrability of an applicant's mark, relying on Durox.  Also see D.M. Antique Import Corp. v. Royal Saxe Corp. 311 F. Supp. 1261, 1269 (S.D.N.Y. 1969).

To interpret the statute any other way would require a party to proceed with the litigation in federal court and simultaneously file an opposition proceeding with the USPTO to prevent the mark from being registered.  yTube's interpretation might also require Plaintiff to prevail in this action, then file a cancellation proceeding against the yTube registration (if it issues) after the final decision in this action. In other words, the duplicative, vexatious and harassing litigation that yTube apparently seeks can easily be avoided through the proper interpretation of 15 U.S.C. § 1119. To suggest that a federal court does not have jurisdiction over the internal workings of a federal agency is ludicrous.

Although it appears that the issue is one of first impression for a court in the 6th Circuit, it is not a difficult decision.  Under mainstream thinking, Plaintiff's claim for cancellation of the application should not be dismissed.

---

[4]     An opposition does not involve a registered mark but rather stops an application from maturing into a registration.

**D.  Dismissal of federal claims would not require dismissal of Ohio claims.**

yTube also argues that dismissal of all the federal claims would require dismissal of all state law claims since the court may decline to exercise supplemental jurisdiction over those claims.   This result is very unlikely because it would simply recast this case as a diversity case instead of one based upon federal question.  Plaintiff could easily amend to allege diversity, and such an amendment would most likely conserve judicial resources, because yTube would most likely request removal to federal court if the remaining claims were re-filed in a state court.

**E.  Ohio Common Law Dilution does not require a famous mark.**

Under Ohio common law, trademark dilution does not require the senior trademark user to demonstrate that it has a nationally famous mark.  See Ameritech, Inc. v. Am. Info. Techs. Corp., 811 F.2d 960, 965 (6th Cir. 1987); Reed Elsevier, Inc. v. thelaw.net Corp., 269 F. Supp.2d 942, 952 (S.D. Ohio 2003). A mark might be weak nationally, but the mark can still be strong in a particular geographical or product area and thus deserve trademark protection. Ameritech, Inc., 811 F.2d at 967 (citing Dreyfus Fund Inc. v. Royal Bank of Canada, 525 F. Supp. 1108, 1114 (S.D.N.Y. 1981)) (emphasis added).  Nevertheless, yTube contends that the Court required fame for an Ohio dilution claim in Jet, Inc. v. Sewage Aeration Sys., 165 F.3d 419 (6th Cir. 1999).  yTube's interpretation is in error as because it relies solely on dicta. The Jet court assumed that fame was an element without examining the issue. That court cited Ameritech in support, but the Ameritech court made no such holding.  The Ameritech court only required that the trademark be distinctive and stated that national fame is not necessary.  Ameritech, Inc., 811 F.2d at 965.

yTube goes on to misinterpret Reed as requiring a senior trademark user to demonstrate that it has a famous mark to prevail on a common law dilution claim.  The Reed court clearly explained that "[d]ilution occurs when the senior user possesses a *distinctive mark*…." Reed 269 F. Supp.2d at 952 (emphasis added).  In fact, the Reed court cites Ameritech in support of its statement requiring only a distinctive mark, not a famous mark. See Ameritech, Inc., 811 F.2d at 965; Reed Elsevier, Inc., 269 F. Supp.2d at 952.

The court in United States Playing Card Co. v. Bicycle Club, 119 Ohio App. 3d 597, (Ohio Ct. App., Hamilton County 1997), did not require fame as an element for dilution protection under Ohio law stating:

> Trademark dilution is "the 'gradual whittling away' of a trademark's distinctiveness through use by third parties on non-confusing, non-competing products." Schechter, The Rational Basis of Trademark Protection (1927), 40 Harv.L.Rev. 813, 825. n4  Trademark dilution protects  a trademark owner against the diminution of a trademark's "commercial magnetism" or selling power by a junior user's unauthorized use of the same or substantially similar mark. See Pattishall, Dawning Acceptance of the Dilution Rationale for Trademark-Trade Identity Protection, 74 Trademark Rep. 289 (1984), 74 Trademark Rep. 289, 290. n5.

While the Ohio Supreme Court has not specifically ruled on this issue, it has suggested that "the trend…has been to broaden the scope of protection to established and reputable business enterprises to prevent the appropriation and exploitation of their distinctive names by others, even though such others are engaged in dissimilar activities." Ameritech, Inc., 811 F.2d at 966 (quoting Nat'l City Bank v. Nat'l City Window Cleaning Co., 174 Ohio St. 510, 513 (1963)). Thus,

Ohio grants senior users broad trademark protection. Id. If Ohio wanted to add fame as a required element, the courts could have done so, or the legislature could have enacted an anti-dilution statute with fame as an element. Furthermore, Ohio is not the only state that does not require fame. Numerous states do not limit dilution protection to famous marks.[5]

uTube clearly alleged that UTUBE "is distinctive and a strong mark, as there can only be one internet domain in the entire world named <utube.com.>." (Amended Compl. ¶ 71). Therefore, this Court should find that uTube has pleaded sufficient facts to state a claim for Ohio common law dilution. In the event that this Court finds that factual allegations are in fact lacking so as to create a pleading defect, uTube requests the opportunity to amend to correct any such defect.

### F.  Trespass to chattels.

Paragraphs 78 through 84 of Plaintiff's Amended Complaint precisely mirror the elements of trespass to chattels set forth in the restatement. Restatement (Second) of Torts § 217 (1979) requires an intermeddling with a chattel in the possession of another. Restatement 218 creates liability when the chattel is impaired as to its condition, quality, or value, or the possessor is deprived of the use of the chattel for a substantial time. Restatement (Second) of Torts § 218 (1979). Plaintiff maintains that both the webservers he leases and the domain name itself are chattels which have been interfered with. Plaintiff suffered a diminished value in his webservers because they were down due to the increased traffic and because the costs to rent them substantially increased. The domain name's value is diminished because any use of that name will require additional expense to host it and because its use for purposes other than a video site are destroyed.

yTube claims that uTube failed to allege the elements of a trespass to chattels claim, namely, that yTube intentionally committed the trespass, that the trespass was to a "chattel", and that uTube itself possesses the chattel. However, there is no Ohio case law that clearly sets forth the elements for the claim of trespass to chattels. Furthermore the trespass of a domain name is novel and this claim  should go forward to allow the Court to evaluate this somewhat novel claim "since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." Electrical Constr. & Maintenance Co. v. Maeda Pacific Corp., 764 F.2d 619, 623 (9th Cir. 1985); Shull v. Pilot Life Ins. Co., 313 F.2d 445 (5th Cir. 1963); In re Richmond Produce Co., 118 Bankr. 753, 755 (Bankr. N.D. Ca., 1990).

yTube has omitted relevant portions of the comments in the Restatement (Second) of Torts § 217 in its motion to dismiss. The Restatement indicates that a trespass to chattels claim is applicable even if the intermeddling was an indirect result of an act done by yTube. Restatement (Second) of Torts § 217 cmt. d (1965).  Further, a trespass to chattels can be committed by causing a third person to intermeddle with another's chattel or when there is no direct

---

[5]     See ALA. CODE § 8-12-17 (2006); DEL. CODE. ANN. tit. 6, § 3313 (2006); GA. CODE ANN. § 10-1-451(b) (2006); LA. REV. STAT. ANN. §51:223.1 (2006); ME. REV. STAT. ANN. tit. 10, § 1530 (2006); MASS GEN. LAWS ch. 110H, § 13 (2006); MO. REV. STAT. § 417.061 (2006); N.H. REV. STAT. ANN. § 350-A:12 (2006); N.Y. GEN. BUS. LAW § 360-l (2006); OR. REV. STAT. § 647.107 (2006); R.I. GEN. LAWS § 6-2-12 (2007); TEX. BUS. & COM. CODE ANN. § 16.29 (2006);  West's Florida Statutes 495.151.

physical contact with the chattel. Id. at cmt. e. Even if the intermeddling was done by a party other than yTube, it is still jointly liable because sufficient facts have been alleged which would bring its conduct under the provisions of the Restatement (Second) of Torts § 876("joint liability"). Ohio has adopted this section of the Restatement. Kuhn v. Bader, 89 Ohio App. 203 (1951). These points are conveniently omitted by yTube when it attempts to convince this Court to dismiss the claim by asserting that its direct acts are not trespassing, that the trespass is being committed by third parties, or that no physical contact with the chattel takes place. The Restatement makes it clear that none of these items are required elements of a trespass to chattels claim.

Even if yTube has properly formulated the elements of a trespass to chattels, issues remain that may only be properly resolved after development of a full, factual record. For example, 'intent' as defined in the Restatement (Second) of Torts is when "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). What yTube desired or believed cannot be determined without discovery. yTube perhaps knew that using the YOUTUBE mark and domain would interfere with the uTube website. It is likely that yTube conducted a search when it selected its name and was aware of the uTube mark and website. If so, yTube intentionally adopted the confusingly similar YouTube name. It then intentionally pursued a business strategy of using unauthorized and illegally displayed copyrighted material to attract visitors to its website. yTube achieved its intended success through its deliberate actions. Those deliberate acts resulted in harm to the chattels of uTube. The harm caused by yTube establishes the basis for its liability. Restatement (Second) of Torts § 218(b); see also, CompuServe, Inc. v. Cyber Promotions, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (stating that "[a]n unprivileged use or other intermeddling with a chattel which results in actual impairment of its physical condition, quality or value to the possessor makes the actor liable for the loss thus caused").

yTube creatively interprets a definition of "chattel" to exclude a domain name. First, yTube cites the Blacks Law Dictionary definition of chattel, namely, "[m]ovable **or transferable** property; personal property; esp. a physical object capable of manual delivery and not the subject matter of real property." Next, yTube rephrases the Black's Law Dictionary definition to read "moveable, physical, personal property" ignoring the words "**or transferable**". Finally, yTube refers to an example of a chattel that is provided with the definition as a limiting example rather than as an illustration that is provided to clearly distinguish a chattel from real property. A domain name is property that can be transferred from a seller to a buyer. Therefore, domain names such as <utube.com> are chattels according to the definition cited by yTube.

The fact that the website <utube.com> resides on a computer system owned by a third party has no relevance to uTube's right to enjoy the full use of its domain name free from trespass. uTube owns the domain name and is leasing space on a third party computer system, like many domain name owners, in order to enjoy the benefits of owning the domain name. Any logical extension of yTube's "third party" argument illustrates its invalidity. For example, the yTube argument would bar a trespass to chattel claim where the chattel was a tangible item located in leased warehouse space. Further, the uTube claim is not that its computer is being trespassed but that its domain name

and website are being trespassed. yTube's argument to dismiss the trespass to chattels claim because the website is hosted on a computer owned by a third party is an attempt to obfuscate the issue before the Court.

Even if the Court determines that the property interest in the host computer is an important factor, uTube has a personal property interest in the computer system that hosts the <utube.com> website. uTube has a contractual agreement for computing space on the host computer system. The agreement is essentially a lease for the use of a specific portion of the computer system and creates a property interest therein. uTube's property interest in the computer system has been interfered with as a result of the intentional acts of yTube. Defendants' illegal use of <youtube.com> has caused a veritable tidal wave of traffic to uTube's website due to confusion. That confusion and traffic has damaged uTube by massively increasing the required amount of server space and bandwidth, thus substantially increasing the fees uTube must pay. Additionally, the massive increase in confusion traffic has increased uTube's expenses associated with the administration of the web site. yTube's intentional acts have created an enormous amount of electronic mail directed to uTube asking "where the videos are" and the like. uTube spends valuable administrative time separating the yTube inquiries from its legitimate electronic mail. The consumption of computer and administrative resources caused by yTube reduces the availability of the resources to uTube and its customers, thus substantially reducing the value of the long-established website. See generally CompuServe, 962 F.Supp. at 1022. The reduction in the value of the website is the "predicate for liability." Id. yTube is liable because its intentional acts have interfered with, and substantially reduced the value of, the company's domain <utube.com> and website.

Accordingly, the novel and unsettled issues of law and fact involved with the uTube claim of trespass to chattels make a Rule 12(b)(6) motion to dismiss inappropriate at this point. Any questions relating to Ohio law should be certified to the Ohio Supreme Court.

### G. Ohio does not limit nuisance to interference with land.

The Defendants ask this court to dismiss the claim for nuisance suggesting that it is limited to "invasion of another's interest in the enjoyment of land." The Ohio Supreme Court addressed this issue long ago and found otherwise.

> Nuisance is a form of tort but it is not restricted to a single type of tortious conduct. 'Nuisance' is a term used to designate the wrongful invasion of a legal right or interest. *It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally.* However, such right or interest may be invaded by any one of several types of wrongful conduct, and the liability of a defendant, in any case, depends upon the type of his wrongful conduct with respect to the right or interest invaded. 'The tort of * * * nuisance includes intentional harms, and harms caused by negligent, reckless or ultrahazardous conduct.' 4 Restatement of Torts, 220. Taylor v. City of Cincinnati, 143 Ohio St. 426, at 431 (1944). (emphasis added).

The Defendants' reliance on the Restatement definition is misplaced as Ohio has adopted a broader definition of actions which may constitute nuisance. Given the similarities between internet real estate and physical real estate, it is

likely the Ohio Supreme Court would extend nuisance to cover one's home on the internet.  Any doubts in this regard should be resolved by certification to the Ohio Supreme Court.

### H.  Plaintiff has clearly set forth that yTube owes it the duty of ordinary care.

yTube seeks dismissal of the negligence claim suggesting that Plaintiff did not identify the source of a "duty to exercise due care."  The duty arises as a matter of law.  Generally, an individual has a duty of ordinary care; that is, he must exercise that degree of care which an ordinarily reasonable and prudent person exercises under the same or similar circumstances.  Ward v. Barringer (1931), 123 Ohio St. 565, 176 N.E. 217.  With  respect to the operation of a business:

> The defendant under the circumstances in the operation of such businesses, which are lawful, is charged with the duty not to unreasonably interfere with the plaintiff's enjoyment of his property under all of the attending circumstances, that is, the plaintiff should not be compelled to withstand any greater annoyance or bear any greater burden than he should reasonably be required to bear under all the circumstances.  72 Ohio Jurisprudence 3d 458, Nuisances, Sec. 65.

Plaintiff clearly spelled out that the duty of ordinary care is involved in this case.  Plaintiff averred that "a reasonably prudent person would have anticipated that an injury was likely to result from the acts of the YouTube."  (2nd Am. Compl.  93).  Those acts were specified extensively throughout the rest of the Complaint.  Plaintiff set forth the basis of the duty owed, which is "…to exercise due care in the operation of its internet website based upon the forseeability of the harms which have occurred.  (2nd Am. Compl.  94).  The existence of a duty depends upon the forseeability of harm.  If a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." Texler v. D.O. Summers Cleaners & Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 680.  A reasonably prudent person would have anticipated that an injury was likely to result from selecting a domain name which is almost identical to that of another.  In this case the individuals involved were not new to the internet and no doubt had specific knowledge that internet users often don't recall the exact spelling of a domain name.  Even if that were not true, yTube has clearly been informed at this point about the injury resulting from their selection of a domain name almost identical to Plaintiff's.  yTube is specifically aware of the injury caused and can clearly "forsee" that its continued maintenance of the website at <youtube.com> is causing injury to Plaintiff, thus breaching the duty of care.  yTube also confusingly argues that Plaintiff has not even suggested the manner in which it could have been injured. Apparently yTube did not read paragraphs 43 through 53 of the Second Amended Complaint.

The common law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances.  Mussivand v. David (1989), 45 Ohio St.3d 314, 318,N.E. 66).

### I.  A challenge to the validity of the UTUBE mark would require evidence outside the pleadings.

yTube again claims that Plaintiff's UTUBE mark is not a mark.  Plaintiff has already addressed this issue above.  It is not required to prove its trademark rights in its pleading.  uTube clearly set forth facts indicating the date it began

using the mark and the manner in which it was used. Since that time, there is an abundance of evidence which supports Plaintiff's allegations that it has rights in UTUBE as a mark, but that evidence is beyond the scope of the motion to dismiss. yTube persists by again claiming uTube has not plead that its …purported mark has acquired secondary meaning, as would only be required for protection of a descriptive term. yTube is not required to plead or prove in the Complaint that its mark is arbitrary, fanciful, suggestive or descriptive (which would require a showing of secondary meaning) because the classification of the proposed mark on the 'fanciful'-'suggestive'-'descriptive'-'generic' continuum is a question of fact. See In re Oppedahl & Larson LLP, 373 F.3d 1171, C.A.Fed., 2004.

Any challenge to the validity of Plaintiff's mark would require extensive evidence far outside the pleadings. Therefore yTube's challenge at this time is without merit.


**J.    Violation of Ohio's RICO statute.**

yTube's analysis of the Ohio RICO statute would render John Gotti not liable for, nor subject to, jurisdiction for conducting the affairs of the Mafia. yTube would reason that Gotti cannot be held liable for the acts of the entity known as the Mafia, and jurisdiction is solely based upon the acts of the entity. This result by yTube is reached only by ignoring relevant case law and parts of the statute itself. yTube even admits that it operated without any license from Universal Music Group (UMG) for approximately one year with full knowledge that it needed one.[6] At the same time, yTube doesn't deny that the numerous other videos listed by Plaintiff in its complaint are still unlicensed. Nor can yTube now deny the 150,000 copyrights it continues to infringe which are referred to in the Viacom Complaint attached ( para. 3 Viacom Complaint). Apparently yTube is only obtaining licenses from companies that are rich enough to sue yTube and even in those cases will mot stop infringing unless they get a license on their own terms. The hundreds of millions of dollars which yTube is now spending to obtain licenses is itself proof of their willful and widespread copyright infringement While yTube's claimed desire to become a legitimate operation is heart-warming, it does not relieve yTube from liability for past or continuing violations.

1. Ohio has personal jurisdiction over Hurley and Chen

yTube argues the Court may exercise personal  jurisdiction over Hurley and Chen only if uTube establishes that (1) the state long-arm statute authorizes the exercise of jurisdiction, and (2) that the exercise of jurisdiction complies with the constitutional guarantee of due process.   yTube seems to fault Plaintiff for only relying on its allegation of general jurisdiction.  However, the Ohio long-arm statute is not necessary as general jurisdiction is allowable.

The Ohio long-arm statute not the only source of jurisdiction over an out-of-state defendant under Ohio law. In LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 56 USPQ2d 1965 (Fed.Cir.2000), the court addressed the issue, namely, whether Ohio courts will entertain suits unrelated to activities within the state so long as the defendant has sufficient contacts with Ohio to satisfy federal due process requirements for general jurisdiction. Relying on the Ohio Supreme Court's decision in Perkins v. Benguet Consolidated Mining Co., 158 Ohio St. 145, 107 N.E.2d 203 (Ohio

---

[6]      If yTube is immune under the DMCA as it suggests then why is it spending hundreds of millions of dollars on licenses?

1952), and its progeny, the court held that "a defendant conducting activity that meets the federal due process threshold for general jurisdiction is necessarily amenable to process under Ohio's 'doing business' standard as described in Perkins," and is therefore subject to the personal jurisdiction of the district court. LSI Indus., 232 F.3d at 1374, 56 USPQ2d at 1969. See also Delta Systems, Inc. v. Indak Mfg. Corp. 4 Fed.Appx. 857 C.A.Fed. (Ohio),2001. In short, this Court may properly exercise personal jurisdiction over Hurley and Chen if they maintain the "continuous" and "systematic" contacts with Ohio sufficient to satisfy the standard for general jurisdiction.

yTube does not dispute that the operation of the interactive website at <youtube.com> is sufficient to confer general jurisdiction nor can it[7]. In the 6th Circuit, the operation of an Internet website can constitute the purposeful availment of the privilege of acting in the forum state under the first Mohasco factor 'if the website is interactive to a degree that reveals specifically intended interaction with the residents of the state.' " Bird v. Parsons, 289 F.3d 865, 874 (6th Cir.2002) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir.2002)). Since a motion to dismiss for lack of jurisdiction may go beyond the pleadings, Plaintiff has attached the Declaration of William Dusseau which provides support for each of the factors relied upon by the courts in Bird and Neogen.

yTube claims uTube did not plead any facts suggesting that Hurley and Chen have any contacts with Ohio. While Hurley and Chen are separate from the enterprise they conduct through their pattern of corrupt activity, they are still liable individually for their actions. Their actions included directing the corporation YouTube Inc. This is why a civil RICO judgment does not require piercing the corporate veil, because violations of 18 U.S.C. § 1962(c) result in direct individual liability. LSJ Inv. Co., Inc. v. O.L.D., Inc., 167 F.3d 320, (6th Cir. 1999). Hurley and Chen have no fiduciary shield which would insulate them from liability based upon their positions as officers. See Davis v. Metro Productions, Inc. 885 F.2d 515 C.A.9 (Ariz.),1989 and Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 569 n. 30 (S.D.N.Y.1985) stating "the [fiduciary shield] doctrine is ... inapplicable in an action brought under RICO …"). For this reason, the enterprise and the individuals who operate or manage it are all proper defendants in a RICO claim.

Because Hurley and Chen's action under the RICO claim were manifested by the enterprise they controlled, they are subject to general jurisdiction based upon the interactive website they operated.

2. uTube has properly pleaded all of the elements of an Ohio RICO claim.

To state an Ohio RICO claim, a plaintiff must plead (1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct constitutes a pattern of corrupt activity; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. Universal Coach, Inc. v. New York City Transit Auth., Inc. (1993), 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32-33.

Plaintiff alleged that Chad Hurley is the cofounder and CEO of YouTube Inc. (Second Amended Complaint ¶ 10), and Steve Chen is the co-founder and CTO of YouTube. (Second Amended Complaint ¶ 11). Chad Hurley and Steve Chen have conducted the affairs of YouTube through a consistent pattern of violations of 18 USC §2319 (criminal

---

[7]     It is odd that defendants seem to think the California residence of Hurley and Chen is somehow contrary to finding general jurisdiction based upon a website operated at the direction of those individuals.

infringement of copyright), and 18 USC §2319A (unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances). (Second Amended Complaint ¶ 111). yTube claims Plaintiff is improperly confusing Hurley and Chen with the corporation and it must somehow separate their acts.

yTube's argument has been presented to the U.S. Supreme Court and found to have no merit. In Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, (2001), the Supreme Court reviewed a Second Circuit case which expressed the view that § 1962(c) applies only where a plaintiff shows the existence of two separate entities, a "person" and a distinct "enterprise," the affairs of which that "person" improperly conducts. In this instance, the court noted, it was undisputed that the defendant was an employee of his corporation (just as Hurley and Chen are). Under the court's analysis, the defendant, in a legal sense, was part of the corporation, not a "person," distinct from the "enterprise," who allegedly improperly conducted the "enterprise's affairs." The Supreme Court held under these circumstances that

§ 1962(c) requires no more than the formal legal distinction between "person" and "enterprise" (namely, incorporation); hence, the provision applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner-whether he conducts those affairs within the scope, or beyond the scope, of corporate authority. This Court does not quarrel with the basic principle that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. Nonetheless, the Court disagrees with the appellate court's application of that "distinctness" principle to the present circumstances, in which a corporate employee, acting within the scope of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. The Court can find nothing in RICO that requires more "separateness" than that. … Further, to apply RICO in these circumstances is consistent with the statute's basic purposes of protecting both a legitimate "enterprise" from those who would use unlawful acts to victimize it, United States v. Turkette, 452 U.S. 576, 591, 101 S.Ct. 2524, 69 L.Ed.2d 246, and the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which unlawful activity is committed, National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99. Conversely, the appellate court's critical legal distinction - between employees acting within and without the scope of corporate authority - would immunize from RICO liability many of those at whom this Court has said RICO directly aims, e.g., high-ranking individuals in an illegitimate criminal enterprise, who, seeking to further the enterprise's purposes, act within the scope of their authority, cf. Turkette, supra, at 581, 101 S.Ct. 2524.

Accordingly, it is quite proper to allege that the illegal acts were committed by those who manage the corporation, even though the acts were manifested by the corporate enterprise. Hurley and Chen, according to the Supreme Court, have individual liability because they use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which unlawful activity is committed.

yTube argues that no willful infringement was alleged against Hurley and Chen, but this allegation is clearly made in paragraph 129 where Plaintiff states that Hurley and Chen knew of their duty to license the materials, and paragraph 130 of the complaint where it is alleged that the infringement was willful.

yTube goes on to claim "…Universal blankly alleges violations of altogether non-existent statutory provisions by claiming criminal infringement under "17 U.S.C. § 506(a)(1)(A) and (B)" (Compl. 130). These subsections do not

even exist". The current amended version of 17 U.S.C. § 506 actually does contain this provision. The statute was amended in 2005 by Pub.L. 109-9, § 103(a), which rewrote subsection (a).

yTube next imagines that uTube did not allege any corrupt activity. Paragraphs 134 through 136 clearly state that Hurley, Chen, and YouTube, without the consent of the performer or performers involved, knowingly and for purposes of commercial advantage or private financial gain have repeatedly reproduced copies or phonorecords of the sounds or sounds and images of a live musical performance from an unauthorized fixation (134), repeatedly transmitted or otherwise communicated to the public the sounds or sounds and images of a live musical performance (135) and have repeatedly distributed copies of the sounds or sounds and images of a live musical performance from an unauthorized fixation of those performances. uTube then goes on to cite numerous examples of these violations claiming for each that it is "unlikely" that yTube has permission from the performers. yTube, however, forgets that Plaintiff's burden at trail is to prove its case by a preponderance, not by absolute certainty. Furthermore, without discovery Plaintiff has no confirmation that yTube has now obtained the needed licenses. Plaintiff has pleaded the required degree of culpability, but yTube chooses to ignore it. In the event more violations need to be alleged then Plaintiff can amend and include the 150,000 copyrights being violated which are owned by the Viacom plaintiffs.

yTube's bizarre comments regarding Rule 11 and the recently obtained UMG licenses are again misguided. Plaintiff clearly referenced the recent licenses in paragraph 131 of its Second Amended Complaint. The fact remains that yTube, under the guidance of Hurley and Chen, criminally infringed those copyrights prior to obtaining any licenses. UMG is free to waive civil liability but it cannot undo the crimes that were committed.

### 3. The DMCA safe harbor does not excuse yTube's copyright infringement.

yTube ignores significant portions of the Digital Millennium Copyright Act (DMCA) in reaching the erroneous conclusion that yTube's willful copyright infringement is excused under the DMCA.

The legislative history of the Act makes clear that the safe harbor provisions of the DMCA are only available to internet service providers (ISPs). yTube is a for-profit website operation, not an ISP. Congress clearly indicated that it did not intend the safe harbor provisions to extend to mere websites by specifically distinguishing between an ISP and a website. S. REP. NO. 105-190, at 8 (1998)). Congress also gave specific examples of qualifying ISPs. The examples include telephone companies that provide internet transmission and AOL, which provides internet access, electronic mail addresses, and server space for third parties to store web pages. Id. at 8-9. The owner and operator of a website is a user, not an ISP. Id. at 43 (describing an ISP as providing server space for a user's website). The DMCA includes two definitions for an ISP.[8] 17 U.S.C. § 512(k)(1)(A)-(B). The congressional record explicitly states that a website does not fall within the first DMCA definition of an ISP. S. REP. NO. 105-190, at 54. Further, in clarifying the second DMCA definition of an ISP, Congress describes an ISP as "providing internet access, e-mail, chat room and web page hosting

---

[8]      17 U.S.C. § 512(k)(1)(A): As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.
      17 U.S.C. § 512(k)(1)(B): As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefore, and includes an entity described in subparagraph (A).

services." S. REP. NO. 105-190, at 54-55. yTube does not provide internet access, nor does it provide e-mail services or sell hosting services for chat rooms or web pages. yTube is a website for watching and sharing videos. yTube is not an ISP and does not qualify for the DMCA safe harbor.

Even if yTube is found to be an ISP, it must meet specific eligibility requirements to avail itself of the safe harbor provisions. The conditions of eligibility are described in 17 U.S.C. § 512(i). The conditions include having "adopted and reasonably implemented … a policy that provides for the termination … of subscribers and account holders … who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Whether, and when, yTube adopted or implemented such a policy is a factual matter that cannot be answered without discovery.

yTube claims the safe harbor under 17 U.S.C. § 512(c)(1). yTube devotes the entirety of its DMCA discussion to §512(c)(1)(C), the notice and take-down provision of §512(c). (Motion to Dismiss at 17-18). yTube is either unaware of, or has intentionally omitted, the other two requirements of 17 U.S.C. § 512(c). These requirements clearly disqualify yTube from the safe harbor. Even if yTube is found to be an ISP (and potentially eligible for the safe harbor), it still must meet all of the additional requirements of 17 U.S.C. § 512(c), not just the notice and take-down requirements. S. REP. NO. 105-190, at 54.

The safe harbor under § 512(c)(1) is only available to an ISP if it "does not have actual knowledge" or "aware[ness] of facts or circumstances from which infringing activity is apparent". The ISP can still avail itself of the safe harbor if "upon obtaining such knowledge or awareness, [the ISP] acts expeditiously to remove or disable access to the material." 17 U.S.C. § 512(c)(A)(i)-(iii). Accordingly, an ISP cannot simply allow infringing material to remain on its network until a copyright owner provides notice and demands the removal of the material. An ISP must remove infringing material from its network when it obtains "actual knowledge" or awareness of "facts or circumstances" of its presence "even if the copyright owner … does not notify the [ISP] of the claimed infringement." S. REP. NO. 105-190, at 54. By its own admission, yTube ignores 17 U.S.C. §512(c)(1)(A) and removes infringing material only when given notice. Therefore, yTube is not eligible for the safe harbor provided by the DMCA.

yTube has actual knowledge of the existence of infringing material at its website. In fact, yTube promotes such infringing works through its "most viewed" and "related videos" features. Further, it professes to employ "editors" that scour the website for videos to promote under its "featured videos" links. These editors see the numerous infringing videos while searching out videos to promote. Despite the actual knowledge that yTube obtains through its editors, yTube will not remove the infringing material unless given notice from the copyright owner. yTube's policy of only removing infringing material on notice from the copyright owner, even when it has actual knowledge of the infringing material, is not in accord with 17 U.S.C § 512(c)(1)(A) and disqualifies yTube from the DMCA safe harbor provision.

The safe harbor provision is also lost if the ISP "receive[s] a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). yTube has control over the infringing activity. yTube has stated that it removes infringing material when given notice. (Motion to Dismiss at 17-18). This shows it has control over what videos are available at its website. yTube

17

receives a direct financial benefit from the presence of the infringing material. yTube's advertising revenue and overall worth is directly related to the number of visitors to its website. The presence of the unauthorized copyrighted works on the website is what attracts the astounding number of visitors to yTube's website. The copyrighted works on the website are the predominant reason yTube has achieved the phenomenal growth that resulted in the nearly unprecedented financial windfall to its owners of the $1.6 Billion sale to Google in late 2006 only months after starting operations. It is undeniable that yTube and its founders have "received a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B). yTube loses the protection of the DMCA safe harbor because it receives a direct financial benefit from the infringing activity. S. REP. NO. 105-190, at 54 [9].

The purpose of the DMCA is to have "strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringement". S. REP. NO. 105-190, at 49. yTube has implemented a business strategy to commit and encourage massive, intentional copyright infringement for its financial gain. Many video and audio websites on the World Wide Web are cooperating with copyright owners and adopting technology to detect and remove copyrighted material. yTube, however, is described as the "major holdout" in implementing such technologies. Brad Stone and Miguel Helft, New Weapon in War Over Piracy, N.Y. TIMES, Feb. 19, 2007. It is also reported that yTube has threatened to only use such technology to "detect clips owned by companies that agree to broader licensing deals with yTube." Id. Rather than cooperate to eliminate the copyright infringement that occurs at its website. yTube is apparently attempting to use such technology to extort licenses from copyright owners. YTube's actions are not consistent with the Congressional intent for the DMCA - to promote cooperation between service providers and copyright owners. Therefore, yTube is rightfully disqualified from the DMCA safe harbor.

yTube is to copyrighted video as Napster was to copyrighted music. Similar to yTube, Napster was an electronic file sharing website that was infringing copyrights. Napster was shut down by court order because of its infringing activities. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) and A&M Records, Inc. v. Napster, Inc., 114 F. Supp. 2d 896 (N.D. Cal. 2000). In Napster, the Court made it clear that a computer system operator is a contributory infringer if it has knowledge of the infringing material on its system and does not remove it. A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1021 (9th Cir. 2001). The Court held that the DMCA safe harbor issue was not likely to immunize Napster from liability but was an issue that needed to be developed and examined at trial. Id. at 1025.

Accordingly, yTube's infringement of copyrights is not excused or immunized under the DMCA. Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 326-327 (1989). The DMCA component is not dispositive of the RICO claim. The court should only dismiss a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with

---

[9]    yTube, by its actions, apparently believes that its continued success depends on retaining infringing material on its website. This fact was made clear in a recent article from the New York Times. The article tells of yTube's resistance to incorporating technologies that have the capability of removing or blocking infringing video and audio files. Brad Stone and Miguel Helft, New Weapon in War Over Piracy, N.Y. TIMES, Feb. 19, 2007. A competitor of yTube made it clear that the unauthorized copyrighted material is the sole source of the extraordinarily high numbers of internet visitors to video sharing websites. Id. yTube competitor Guba.com is reported as saying that "[Guba's] popularity plunged" once it removed all infringing material. Id. Guba's chief technology officer explained that "[w]e all know what people want to see" – i.e. copyrighted material. yTube is desperately trying to avoid a similar plunge in popularity by continuing to willfully engage in copyright infringement.

the allegations." Id. citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). As discussed above, factual issues exist consistent with the Ohio RICO claim, and its copyright infringement predicate, that are sufficient to establish that the Court may grant relief to uTube. Accordingly, yTube's DMCA basis for dismissal of the RICO claim should be denied.

     4.  The CDA does not bar yTube's RICO claims.

     Contrary to yTube's argument, the CDA simply has no relevance to Plaintiff's claim that yTube has violated Ohio's RICO statute. Plaintiff's Ohio RICO claim is predicated on yTube's willful and knowing violation of copyright law. Copyright is a species of intellectual property. The CDA expressly states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Therefore, the CDA is not a defense against a claim of copyright infringement.

     yTube misrepresents or misinterprets the Congressional intent behind the CDA by selective quotation. Congress enacted the CDA to remove disincentives that deterred ISPs from attempting to prevent children from accessing offensive materials. 47 U.S.C. § 230(b)(4).  In this case, Plaintiff's Ohio RICO claims do not involve any issues pertaining to any effort by yTube to prevent children from accessing offensive material on its website or to any defamation claim based on material at yTube's website.

     yTube also misapplies the case law when attempting to construe the CDA as allowing it to circumvent copyright law.  yTube relies on Zeran v. AOL, Inc., 129 F.3d 327 (4th Cir. 1997) and Doe v Bates, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Texas Dec. 27, 2006) to support its ill-conceived interpretation of the CDA. In both cases, the courts interpreted the CDA as providing immunization to the ISPs for the acts of a third party. Here, yTube has committed the infringing activities itself through the distribution of copyrighted material and through the inducement of others to commit copyright infringement. uTube is not attempting to hold yTube responsible for the acts of a third party. Instead, uTube is claiming that yTube itself directly violated statutory copyright law.

     If yTube's slanted interpretation of the CDA were correct, the U.S. Supreme Court in Metro-Goldwyn-Mayer Studios Inc. v Grokster, Ltd., 545 U.S. 913 (2005) would have found websites such as Grokster (an internet service facilitating music file sharing between third parties) immune from copyright infringement claims. However, the United States Supreme Court did not even consider the CDA as a possible defense for the infringing acts of Grokster.

     yTube continues to show its intent to mislead this Court by asserting that 17 U.S.C. § 301(a) preempts the Ohio RICO claim.  yTube makes its assertion in a mere footnote without any substantive support. Furthermore, 17 U.S.C. § 301(a) simply establishes that the federal copyright statutes preempt state copyright statutes. 17 U.S.C. § 301(a) does not prevent yTube's violation of the federal copyright statutes from serving as a predicate for an Ohio RICO violation.

     Accordingly, yTube's knowing and willful violation of copyright law is not excused by the CDA. The CDA is not dispositive of the RICO claim and therefore, yTube's CDA-based request for dismissal of the RICO claim should be denied. Neitzke, 490 U.S. at 326-327.

     5.  The RICO violation is the proximate cause of  uTube's injuries.

     While it is true that Ohio's RICO statute is patterned after the federal RICO statute, there are some

distinct differences.  Unlike the federal law, which requires direct injury, Ohio's RICO provides persons indirectly injured by violations of the Act, or by conspiracies to violate the Act, with standing to bring an action. O.R.C. §2923.34(B); <u>Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc</u>. 23 F.Supp.2d 771, (N.D.Ohio 1998) (holding that a union health trust had standing to sue tobacco companies to recover medical expenses paid by the trust and allegedly caused by beneficiaries' smoking even though corrupt acts were directed against others).

Plaintiff has been injured by confusion among consumers and the damage to its mark and website caused by yTube.  Without its illegal business plan, yTube would never have generated enough traffic to cause the tidal wave of confusion that now exists.  While the direct injury from yTube's copyright infringement falls upon the artists and copyright owners, uTube has suffered indirect damage to its good name and trademark rights, and from increased hosting and operating expenses for its website - all because of the unprecedented traffic that yTube receives as a result of its illegal give-away of infringing material.

**III.     CONCLUSION**

Based on the foregoing points and authorities, Plaintiff requests that the Court deny Defendants' Motion to Dismiss in its entirety.  In the alternative, Plaintiff requests that the Court allow an opportunity for jurisdictional discovery if needed and/or the opportunity to amend Plaintiff's Complaint to conform to the Court's ruling.

If the Court intends to dismiss Plaintiff's claim for trespass to chattels, nuisance or dilution under Ohio law, Plaintiff requests this Court to suspend these proceedings in lieu of dismissal of the claims, to permit Plaintiff to certify the questions relating to these state law causes of action and any novel claims to the Ohio Supreme Court pursuant to Ohio Supreme Court Rules of Practice Rule 18(1) ("S.Ct.R. 18(1)").


Dated: March 15, 2007                                    Respectfully submitted,

                                                        /s/ Anthony J. DeGidio____
                                                        Anthony J. DeGidio (# 0069064)
                                                        Fraser Clemens Martin & Miller LLC
                                                        28366 Kensington Lane
                                                        Perrysburg, OH 43551-1401
                                                        419-874-1100
                                                        Fax: 419-874-1130
                                                        Email: tony@cyberlawyer.com
                                                        Co-Counsel for Plaintiff, Universal Tube
                                                        & Rollform Equipment Corporation

                                                        /s/ Richard G. Martin____
                                                        Richard G. Martin (# 0043822)
                                                        Fraser Clemens Martin & Miller LLC
                                                        28366 Kensington Lane
                                                        Perrysburg, OH 43551-1401
                                                        419-874-1100

Fax: 419-874-1130
Email: martin@fraser-ip.com
Co-Counsel for Plaintiff, Universal Tube
& Rollform Equipment Corporation

## **L.R. 7.1(f) CERTIFICATION**

I hereby certify that the foregoing Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss meets the page limitations set forth in L.R. 7.1.  This case was placed upon the standard track pursuant to Order of this court on 3/8/2007 (Doc. # 18)

/s/ anthony degidio
Anthony J. DeGidio, Esq.


## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss was filed electronically this 6th day of March 2007.  Parties may access this filing throughout the Court's system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via electronic or U.S. Mail.

/s/ anthony degidio
Anthony J. DeGidio, Esq.