IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL TUBE & ROLLFORM EQUIPMENT CORPORATION, | Case No. 06-2628 |
| Plaintiff, | **DEFENDANTS' REPLY TO RULE 12(b)(6) and 12(b)(2) MOTION TO DISMISS PLAINTIFF'S COMPLAINT (CLAIMS FOR RELIEF 1-8)** |
| v. | |
| YOUTUBE, INC., CHAD HURLEY, and STEVE CHEN | Judge:    James G. Carr |
| Defendants. | |

# TABLE OF CONTENTS

I.    Introduction ................................................................................................1

II.    Argument ...................................................................................................1

    A.    Federal Claims ...................................................................................1

        1.    Having failed to plead facts that it used UTUBE as a trademark, Universal has no cognizable Lanham Act unfair competition claim ...................................................................1

        2.    Courts do not have jurisdiction to cancel trademark applications. ...............................................................................3

    B.    State Claims ......................................................................................5

        1.    The Court should not exercise pendant jurisdiction or certify Universal's novel claims to the Ohio State Supreme Court. ......................5

        2.    Ohio common law dilution claims require a famous mark. ........................6

        3.    Universal has alleged neither a proper trespass nor a proper chattel. ...............................................................................7

        4.    Universal's nuisance claim must be dismissed for failure to plead an interference with land. .................................................9

        5.    Universal's negligence claim rests on bare legal conclusions. ....................9

        6.    Having failed to plead facts showing that it used UTUBE as a mark, Universal's Ohio Deceptive Trade Practices must be dismissed ..........................................................................10

        7.    Universal's Ohio RICO claims fail for myriad reasons. ...........................10

            a.    There is no basis for personal jurisdiction over Hurley or Chen .............................................................10

            b.    Universal leaves out allegations regarding material elements. ..............................................................12

            c.    The DMCA safe harbor precludes Universal's RICO claim ..............................................................13

            d.    Universal's Ohio RICO claim is expressly barred by the CDA. ..............................................................15

            e.    The alleged Ohio RICO violation is not the proximate cause of Universal's injuries. ......................................16

III.    Conclusion ................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ameritech, Inc. v. American Information Technologies, Corp.*,
811 F.2d (6th Cir. 1987) ......................................................................................6

*Begala v. PNC Bank, Ohio, National Association*,
214 F.3d 776 (6th Cir. 2000) ..............................................................................3

*Buitoni Foods Corp. v. Gio Buton & C.S.P.A.*,
530 F. Supp. 949 (E.D.N.Y. 1981) ......................................................................4

*Compuserve, Inc. v. CyberPromotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997) ....................................................................8

*Compuserve, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ............................................................................10

*D.M. Antique Import Corp. v. Royal Saxe Corp.*,
311 F. Supp. 1261 (S.D.N.Y. 1969)......................................................................4

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ..............................................................................3

*Durox v. Duron Paint Co.*,
320 F.2d 882 (4th Cir. 1963) ..............................................................................3

*In re Goodyear Derivative Litigation*,
2007 U.S. Dist. LEXIS 1233 (N.D. Ohio Jan. 5, 2007)........................................2

*Hendrickson v. Amazon.com, Inc.*,
298 F. Supp. 2d 914 (C.D. Cal. 2003) ................................................................14

*Hughes v. Sanders*,
469 F.3d 475 (6th Cir. 2006.) ............................................................................10

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................8

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)..........................................................................................11

*Iron Workers Local Union No. 17 Insurance Fund v. Philip Morris, Inc.*,
23 F. Supp. 2d 771 (N.D. Ohio 1998)..................................................................16

*Jet, Inc. v. Sewage Aeration System*,
165 F.3d 419 (6th Cir. 1999) ..............................................................................6

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
48 U.S.P.Q. 2d 1385 (W.D. Wis. 1998)................................................................4

392269.03

*MGM v. Grokster*,
545 U.S. 913 (2005)..........................................................................................................15

*Nuckols v. National Heat Exchange Cleaning Corp.*,
No. 4:00-CV-1698, 2000 U.S. Dist. LEXIS 18693 (N.D. Ohio Dec. 11, 2000) ...........................9

*Parker v. Google*,
422 F. Supp. 2d 492 (E.D. Pa. 2006) .........................................................................14

*Perfect 10, Inc. v. CCBill LLC*,
340 F. Supp. 2d 1077 (C.D. Cal. 2004) .......................................................................14

*Perfect 10, Inc. v. CCBill LLC*,
Nos. 04-57143, -57207, 2007 U.S. App. LEXIS 7238 (9th Cir. Mar. 29, 2007) .......................13

*Reed Elsevier, Inc. v. TheLaw.Net Corp.*,
269 F. Supp. 2d 942 (S.D. Ohio 2003) ........................................................................6

*Register.com v. Verio*,
126 F. Supp. 2d 238 (S.D.N.Y. 2000)..........................................................................8

*Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp*,
257 F.2d 485 (3rd Cir. 1958) ...................................................................................4

*Standard Pressed Steel Co. v. Midwest Chrome Process Co.*,
418 F. Supp. 485 (N.D. Ill. 1976) .............................................................................4

*Third National Bank v. Wedge Group, Inc.*,
882 F.2d 1087 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990)....................................11

*Theunnisen v. Matthews*,
935 F.2d 1454, 1458 (6th Cir. 1991) ..........................................................................11

*United States v. Flack*,
No. 2:96-CV-122, 1997 U.S. Dist. LEXIS 1980 (S.D. Ohio Jan. 31, 1997) ..............................12

*W&G Tennessee Importation, Inc. v. Esselte Pendaflex Corp.*,
769 F. Supp. 264 (M.D. Tenn. 1991)..........................................................................4

*Walker v. Concoby*,
79 F. Supp. 2d 827 (N.D. Ohio 1999)..........................................................................12

*Weller v. Cromwell Oil Co.*,
504 F.2d 927 (6th Cir. 1974) ..................................................................................12

## STATE CASES

*Taylor v. City of Cincinnati*,
143 Ohio St. 426 (1944)..........................................................................................9

## FEDERAL STATUTES

15 U.S.C. § 1064..............................................................................................................3

15 U.S.C. § 1071..............................................................................................................3

17 U.S.C. § 512(a)..........................................................................................................13

17 U.S.C. § 512(b)-(d)....................................................................................................14

## STATE STATUTES

Ohio Rev. Code Ann. § 2923.32(A)(1)............................................................................13

Ohio Rev. Code Ann. § 4165.01(E)-(G).........................................................................10

392269.03

I.    **Introduction**

Universal Tube & Rollform Equipment Corp. ("Universal") and its counsel are clearly

fascinated with the copyright law implications of YouTube's phenomenally successful service.

That fascination is understandable: the copyright law and Digital Millennium Copyright Act

issues are on the cutting edge of the law, and have garnered considerable interest among lawyers,

commentators, and the press. They will no doubt be hotly contested in both pending cases and

others to come.

But Universal's interest in those copyright issues is nothing more than academic.

Universal doesn't own any copyrights. It isn't a broadcaster, or a producer, or a competitor. It is

a seller of used heavy machinery. So while Universal's counsel may very much wish to be

involved in the development of online copyright law, to do so he will need a client with a

copyright claim. The Copyright Act does not include a private attorneys general provision, and

the incantation of "RICO" cannot create one.

Despite its incessant reference to copyright claims brought by other parties in other

courts, Universal's complaint has nothing to do with copyright. It is, instead, a fatally flawed

attempt to state trademark, trespass, and nuisance claims. As set forth in YouTube's opening

brief, those claims fail as a matter of law, are not curable, and must be dismissed with prejudice.

Nothing in Universal's opposition changes that analysis.

II.    **Argument**

A.    **Federal Claims**

1.    **Having failed to plead facts that it used UTUBE as a trademark,
Universal has no cognizable Lanham Act unfair competition claim.**

Universal's complaint does not plead any facts that support a claim of ownership of a

trademark. The *only* allegation of *fact* in that complaint is that Universal has used "utube.com"

as a domain name. (Compl. ¶¶ 16-17.) But, as set forth in our opening brief, use as a domain

name is no more trademark use than use as a phone number or a physical address.

In opposition, Universal attempts two arguments. First, it argues that there is no *per se* rule that a domain name cannot be a trademark. True enough: YouTube made the same point in its opening brief. (Mot. to Dismiss 6 n.4.) Some domain names *are* trademarks because they are *also* company names and are used as trademarks. Examples include "Pets.com," "MP3.com," "Cars.com," and "Hotels.com." Similarly, there is no *per se* rule that a phone number cannot be a trademark *if* the owner uses it as the name of the company, like "1-800-CONTACTS." That does not make every domain name, or every phone number, a trademark, even though (like "utube.com") each one is unique. Here, Universal has not alleged—and cannot allege—that it used "utube" as a trademark. It has not alleged that it ever used "utube" standing alone to identify anything, and even "utube.com" is just a way of locating the company on the Internet.

Second, Universal argues that it is not required to plead *every* use of its purported mark. It must, however, plead *some* facts to show either federal registration or common law trademark rights, not just the legal conclusion that it has such rights. This is not a "hypertechnical" requirement deriving from a cramped reading of the statute, but a fundamental principle of trademark law that prevents frivolous allegations of trademark infringement like the one Universal has made. Instead of pleading facts, Universal belatedly suggests that "it is willing to provide evidence that it also used the UTUBE mark outside the internet," and asks leave to file "an additional amendment alleging the needed facts." (Opp. Br. 6.) But Universal does not deign to tell us what those additional facts are.

For Universal to impose on this Court for leave to file a Third Amended Complaint, it must show why leave would not be futile.[1] Universal cannot simply request leave to amend without proffering the proposed amendment. *See, e.g., In re Goodyear Derivative Litig.,* 2007 U.S. Dist. LEXIS 1233 (N.D. Ohio Jan. 5, 2007) (leave to amend denied where "plaintiffs have

---

[1] For the same reason, Universal's related argument—that a challenge to the validity of the Utube mark requires evidence outside the pleadings—fails. (Opp. Br. 12.) There is no need to challenge the validity of a mark unless and until Universal can plead facts that would support the

failed to articulate what additional facts they would allege in a Second Amended Verified Consolidated Complaint"); *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 699 (6th Cir. 2004) (no leave to amend without proffering proposed amended complaint or contents thereof); *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2000) (same).

### 2.    Courts do not have jurisdiction to cancel trademark applications.

Universal's purported claim for "cancellation" of a pending trademark application is not cognizable. Although Universal describes as "ludicrous" the proposition that a court cannot (absent express authority) interject itself into an executive branch administrative process, none of the cases it cites suggest otherwise.

Two separate Lanham Act provisions allow courts to exercise jurisdiction over decisions of the Patent and Trademark Office. *First,* Section 21 (15 U.S.C. § 1071) provides for appeals of decisions of the Trademark Trial and Appeal Board (TTAB) to either the Federal Circuit or—if the parties so elect—to a district court. *Second,* Section 37 (15 U.S.C. § 1119), on which Universal purports to rely, applies with respect to *registered marks.* Neither provision, however, grants a court jurisdiction to interfere with a pending trademark application.[2]

Each of the seven cases cited by Universal involves either (a) an appeal under Section 21, (b) an action regarding a registered mark under Section 37, or (c) both. *Durox v. Duron Paint Co.,* 320 F.2d 882 (4th Cir. 1963), on which Universal primarily relies, was a Section 21 appeal of a TTAB ruling. The first words of the opinion are: "Plaintiff's complaint under 15 U.S.C.A. § 1071 . . . asked the district court to reverse a decision of the Patent Office Trademark Trial and Appeal Board and to direct the Commissioner of Patents to issue to plaintiff its requested registration . . . ." The question in *Durox* was whether, as part of that appeal, the district court could only reverse or affirm the TTAB, or whether it could instead direct the PTO to modify its

---

existence of a mark in the first place.

[2] Universal's Opposition cites Section 14 (15 U.S.C. §1064) as conferring jurisdiction on this court. Section 14, however, sets forth the procedure for petitioning *the PTO* to cancel a

prior registration decision.

  *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp*, 257 F.2d 485 (3rd Cir. 1958), was an appeal of an action to cancel a *registered* mark. *W&G Tennessee Imp., Inc. v. Esselte Pendaflex Corp.*, 769 F. Supp. 264 (M.D. Tenn. 1991), similarly involved the cancellation of a *registered* mark, among other claims: the court was asked to stay the case pending cancellation proceedings before the TTAB, based on the primary jurisdiction doctrine. Because the district court case involved issues over and above registration, the court declined to issue a stay.

  *Buitoni Foods Corp. v. Gio Buton & C.S.P.A.*, 530 F. Supp. 949 (E.D.N.Y. 1981), dealt with another Section 21 appeal of a TTAB decision cancelling a registration, and also involved several other registered marks. *Standard Pressed Steel Co. v. Midwest Chrome Process Co.*, 418 F. Supp. 485 (N.D. Ill. 1976), concerned an appeal of the TTAB's refusal to cancel a registration, and thus the court had jurisdiction under *both* Section 21 and Section 37. And *D.M. Antique Import Corp. v. Royal Saxe Corp.*, 311 F. Supp. 1261 (S.D.N.Y. 1969), was about cancellation of a *registered* mark.

  In short, not one of Universal's cases involves cancelling a trademark *application*. As the court in *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 48 U.S.P.Q.2d 1385 (W.D. Wis. 1998), explained in rejecting the same argument that Universal urges here:

> *Because the PTO has yet to rule on the parties' competing federal applications for registration of the "St. Louis Rams" mark, this court is without authority to direct that body to grant or deny the pending applications.* Such decisions are to be made in the first instance by the Trademark Trials and Appeals Board of the PTO and appealed to a federal district court if an aggrieved party so chooses. It is premature at this point to grant the relief sought by the parties. Accordingly, the claims for declaratory and injunctive relief regarding the *registerability* of the parties' applied-for marks will be denied.

*Id.* at 1386-87 (emphases added). Were the rule otherwise, the expertise of the PTO in determining issues of trademark registration could be preempted at any time by either the applicant or any third party, merely by filing a cause of action in any court. The court would

---

*registered* mark, and is thus doubly irrelevant.

then have to override the authority of the PTO and inject itself into the determination of whether a mark should be registered. Fortunately, that is not the law.

**B.      State Claims**

### 1.      The Court should not exercise pendant jurisdiction or certify Universal's novel claims to the Ohio State Supreme Court.

Universal next urges this Court to exercise pendent jurisdiction over its Ohio state law claims even if it dismisses both federal causes of action. While this Court has discretion to exercise pendent jurisdiction, doing so in this case would be particularly inappropriate given Universal's request that this Court certify at least three of its "novel" state law claims to the Ohio Supreme Court. If—as Universal suggests—its state law claims are so novel and innovative that this Court cannot decide them without first asking the Ohio courts for help, then why exercise jurisdiction over them in the first place? After all, the easiest way to have Ohio courts interpret "novel" questions of state law would be for Universal to bring them in Ohio courts to begin with. The Court should therefore decline jurisdiction rather than exercise it only to send the matter back to the state via certification.[3]

Alternatively, this Court can dispose of Universal's state law claims on the merits without any need to turn to the Ohio Supreme Court. There is nothing "novel" or complicated about Universal's legal theories, other than the attempt to apply them to conduct that fails to satisfy the elements of each cause of action. If one were to accuse someone of assault and battery based upon their choice to wear white after Labor Day, the claim might be "novel" in the trivial sense that no one has ever brought it before. Indeed, one would expect there is no case law to guide the Court in assessing it. But this Court would not need to ask the Ohio Supreme Court whether this "fashion crime" constitutes a cause of action. It would simply need to compare the alleged facts to the elements of the claim.

---

[3]  Universal also urges the Court to exercise jurisdiction because (it speculates) YouTube would seek to remove refiled state court claims to federal court on diversity grounds. But Universal's guesses on tactics in a hypothetical future suit cannot change the suit actually filed, which does

## 2.    Ohio common law dilution claims require a famous mark.

Contrary to Universal's claim, Ohio common law dilution does require a famous mark. In support of its erroneous contention, Universal states that Ohio does not require a *nationally* famous mark, citing *Ameritech, Inc. v. American Information Technologies, Corp.*, 811 F.2d 960, 965 (6th Cir. 1987). (Opp. Br. 8.)  YouTube's motion, however, does not contend that Universal's dilution claim must be dismissed because uTube is not a nationally famous mark. Rather, it points out that uTube's complaint fails to plead any facts suggesting *any* degree of fame, whether regional or national.  For that reason, the claim fails.

All of the cases cited in YouTube's motion to dismiss and discussed in Universal's response require the element of a famous mark to support a claim for dilution. *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419 (6th Cir. 1999), discusses the elements of an Ohio common law dilution claim and notes the "the senior user must demonstrate that it has a famous mark." *Id.* at 242.  Universal's suggestion that this is mere dicta is outright false.  *Ameritech*, on which the *Jet* court relied, holds that fame *is* a necessary element, but that such fame need not be national.  *Ameritech*, 811 F.3d at 965.  *Reed Elsevier, Inc. v. TheLaw.Net Corp.*, 269 F. Supp. 2d 942 (S.D. Ohio 2003), is even more clear, listing out the four elements of a dilution claim.  The first element is that "the senior mark *must be famous.*"  *Id.* at 952 (emphasis added).  There is nothing to "misinterpret" in this explicit recitation of the law.  In sum, *Jet, Ameritech,* and *Reed* all require fame, whether local or national, to make out a dilution claim.

That there is a trend to allow dilution claims based on regional rather than national fame ignores the point of YouTube's motion to dismiss—that Universal has pled *no fame whatsoever*. Ohio common law requires fame, and there is no Ohio statute that has eliminated that requirement (as some other states have enacted).  To say that uTube is a "distinctive and strong mark" falls far short of pleading that it is a famous mark.[4]  The Court should therefore dismiss

not allege diversity.

[4] Saying that "there can only be one internet domain in the entire world named <utube.com>" misses the point.  As discussed in Section II.A.1, the fact that a web address is unique does not mean that it is *per se* distinctive and deserving of trademark protection.  After all, it is equally true that "there can be only one internet domain in the entire world named proqweijrfsemsfwoqerjio.com, (*see* Opp. at 9), but that does not magically turn

6

Universal's Ohio common law dilution claim.

> **3.     Universal has alleged neither a proper trespass nor a proper chattel.**

In an effort to salvage its trespass to chattels claim, Universal tries on various conflicting theories in its opposition brief. In its Complaint, Universal claims that its chattel is the web address utube.com. (Compl. ¶ 79.) Yet it then argues in its opposition that it is the computer servers, not the web address, that suffered diminished value, notwithstanding the fact that it does not own those servers. (Opp. Br. 9.) Finally, Universal concludes that its claim "is not that its computer is being trespassed but that its domain name" is being trespassed. (Opp. Br. 10-11.)

Universal acknowledges that its claim is "novel." Its novelty, however, lies in the fact that it does not comport with the elements necessary to make out a trespass to chattels claim. First, Universal has not pled that YouTube acted intentionally to come into physical contact with Universal's alleged chattel—utube.com. *See* Restatement (Second) of Torts § 217, cmt e. To the contrary, the contact that Universal alleges in its Complaint comes from Internet users misspelling a web address, not YouTube directing any signals at Universal. (*See* Compl. ¶¶ 43, 45.) Universal does not allege that YouTube itself comes into contact with Universal's domain name (or webservers) or that it intentionally directed others to do so.[5] Second, Universal does not plead a proper chattel: a web address is not a piece of physical property with which one can physically interfere. Instead, the right to use a web address is an intangible property right. By definition, one cannot physically trespass an intangible piece of property. The simple fact that a domain name is transferable property does not make it a "chattel"—the definition requires movable, physical property. Black's Law Dictionary 251 (8th ed. 2004).

Given these pleading deficiencies, there is no reason to go into burdensome discovery regarding intent. With no allegation of intent, no claim of physical interference by YouTube, and no physical chattel pled in the Complaint, the Court can dismiss the claim outright pursuant

---

proqweijrfsemsfwoqerjio.com or any other term into an automatically famous mark entitled to dilution protection.

[5]  The concept of joint liability has no applicability here, where there is no relationship between YouTube and random people using the Internet who visit the web address utube.com. Even if it did apply, Universal would have to plead facts in support of such a theory, which it has not done.

to Rule 12(b)(6).  In any event, the intent that Universal refers to in its brief—intent to adopt the domain name YouTube.com, intent to develop a business based on video-file sharing to attract visitors, and intent to succeed, (Opp. Br. 10)—does not equate to the intent necessary for a trespass to chattels claim.  Universal fails to plead intent to bring about a physical contact with Universal's chattel.[6]  *See* Restatement (Second) of Torts § 217, cmt e.

Universal's contention that it has a possessory interest in the computer system on which it maintains its webpages is both irrelevant and incorrect.  Universal complains of interference with its domain name, not any computer system.  (Compl. ¶ 79; *see also* Opp. Br. 9-11.)  Moreover, Universal erroneously argues that YouTube seeks to bar a trespass to chattel claim where the chattel was a tangible item located in leased warehouse space.  (Opp. Br. 10.)  The problem YouTube points out is not that the computer systems reside somewhere else, it is (1) that they aren't owned by Universal in the first place, and (2) that a domain name is not a "tangible item."

Finally, Universal does not address any of the related caselaw discussed in YouTube's motion to dismiss.  As detailed in the motion brief, trespass to chattels claims can address some unwanted intrusions via the Internet, such as unsolicited email or web aggregators.  *See, e.g., Compuserve, Inc. v. CyberPromotions, Inc.*, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997); *Register.com v. Verio*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000).  But such a claim only works where an alleged trespasser intentionally came into contact with the plaintiff's chattel—their computer system—by generating and sending electronic signals to that computer system via email or over the web.  *See id.* at 1021; *Register.com v. Verio*, 126 F. Supp. 2d at 250; *eBay*, 100 F. Supp. 2d 1070-71.  The theory does not work against YouTube because it did not intentionally come into contact with Universal's computer system.  So Universal's claim is not novel in the sense that it has been used by others to address intentional electronic intrusions, it is simply inapplicable to the facts of this case, where the alleged intruders are not YouTube, but rather third-party Internet users with no preexisting relationship with YouTube.

---

[6]  Nor could it.  It defies reason that YouTube could *intend* that its potential viewers fail to find YouTube's site, and instead stumble upon a seller of used heavy machinery.

**4.    Universal's nuisance claim must be dismissed for failure to plead an interference with land.**

Ohio common law nuisance requires an interference with land.  The Restatement (Second) of Torts defines a private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of *land*."  Restatement (Second) of Torts § 821D (emphasis added); *see also* § 822.  Ohio courts follow this definition of a private nuisance claim.  *See, e.g., Nuckols v. Nat'l Heat Exch. Cleaning Corp.*, No. 4:00-CV-1698, 2000 U.S. Dist. LEXIS 18693, *19 (N.D. Ohio Dec. 11, 2000) (quoting same).

Universal's quotation from *Taylor v. City of Cincinnati*, 143 Ohio St. 426 (1944), is inapposite.  *Taylor* addresses the issue of whether a nuisance claim involving land requires an underlying showing of negligence.  It does not address, either expressly or implicitly, whether a nuisance claim may lie against interference with non-real-property rights.

Because it alleges that YouTube interferes with its domain name utube.com, not land, Universal's nuisance claim must fail.  Universal offers no support for likening Internet domain names and physical real estate.  (Opp. Br. 11.)  Internet domain names provide the address of a web site; they are intangible property that cannot be interfered with physically.  Land, by contrast, may be physically interfered with by, for example, water runoff, smoke, noxious odors, and noise.  Nuisance law properly addresses these types of unreasonable physical interferences with land, not non-physical invasions on intangible property rights.[7]

However novel, nuisance claims should not be interpreted contrary to the legal requirement for a nontrespassory invasion of land.  As such, the Court should dismiss this claim pursuant to Rule 12(b)(6), not certify it to the Ohio Supreme Court.

**5.    Universal's negligence claim rests on bare legal conclusions.**

In its opposition, Universal points to no facts supporting its negligence claim.  Instead, it relies on its prior averments of pure legal conclusion, altogether ignoring the crux of YouTube's motion to dismiss this claim: that the claim reads merely as a recitation of the necessary legal

---

[7]  Applying Universal's broad interpretation of nuisance law as extending beyond physical interferences with land would create absurd results.  Under Universal's theory, a patent or copyright holder could recast an infringement claim as a state-law nuisance claim by alleging an

elements, but lacks underlying factual allegations.

Universal focuses its opposition on its allegation that YouTube owes Universal a duty of due care. Here again, however, Universal can only repeat its conclusory allegation that "a reasonably prudent person would have anticipated that an injury was likely to result from the acts of the [sic] YouTube." (Compl. ¶ 93.) And while Universal cites to support for this underlying principle of negligence law, it points to no facts in the Complaint to support the proposition that YouTube should have anticipated any harm to Universal from operating a video-sharing website.

Simply reciting the legal elements of a claim does not meet pleading standards. *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006.) Having failed to point to underlying facts that support its conclusory allegations, Universal's negligence claim should be dismissed.

6. **Having failed to plead facts showing that it used UTUBE as a mark, Universal's Ohio Deceptive Trade Practices must be dismissed.**

As outlined in detail in the opening brief, Universal's Ohio Deceptive Trade Practices Act claim fails for the same reason that Universal's federal unfair competition claim fails: Universal has failed to allege that it *ever* used UTUBE to identify its goods or services and distinguish them from those of others. *See* Ohio Rev. Code Ann. § 4165.01(E)-(G). Nor does Universal's statement in the opposition that whether or not it has a protectable mark is "a question of fact" somehow excuse Universal from pleading the facts that might support its cause of action.

7. **Universal's Ohio RICO claims fail for myriad reasons.**

a. **There is no basis for personal jurisdiction over Hurley or Chen**

Universal incorrectly contends that "the Ohio long-arm statute is not necessary as general jurisdiction is allowable." (Opp. Br. 13.) Jurisdiction requires a showing that (1) a defendant is amenable to suit under the forum's long-arm statute; and (2) the exercise of jurisdiction satisfies the Constitutional requirements of due process. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Because the Ohio long-arm statute has been interpreted to extend as far as the notions of federal due process allow, this two-pronged analysis collapses into one—whether

---

interference with its intangible property rights.

a defendant has sufficient minimum contacts with the jurisdiction to satisfy due process. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). That analysis requires a distinction between "specific" and "general" jurisdiction, with general jurisdiction over a defendant resting on continuous and systematic contacts with the state. *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990).

In any event, Universal misrepresents the underlying basis for YouTube's Rule 12(b)(2) motion to dismiss. YouTube does not fault Universal for relying on its allegation of general jurisdiction, as Universal suggests. (Opp. Br. 13.) Rather, YouTube's motion rests on the fact that Universal failed to plead any facts warranting the exercise of general jurisdiction over Chen and Hurley. Indeed, Universal acknowledges that it bears the burden of establishing personal jurisdiction. (Opp. Br. 4.) Moreover, it correctly notes that it may not stand on its pleadings but must by affidavit or otherwise set forth specific facts showing that the Court can exercise jurisdiction over Hurley and Chen. *Id.* (citing *Theunnisen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Yet Universal fails to meet these legal burdens.[8]

Universal points the Court to no facts justifying the exercise of jurisdiction over Chen and Hurley. Instead, Universal stands on its conclusory assertion that the "Court has personal jurisdiction over the defendants due to their continuous and systemic contacts with this district." (Compl. ¶ 6.) And it has proffered no affidavit or other proof to set forth specific facts showing that the Court can exercise jurisdiction.[9]

Universal does argue that *YouTube* has sufficient contacts with Ohio to subject the *company* to general jurisdiction. But YouTube's contacts with the state of Ohio do not confer personal jurisdiction over Chen or Hurley. Universal confuses the requirements for personal jurisdiction with the question of whether, if personal jurisdiction were to exist, Chen and Hurley

---

[8] Curiously, Universal responds to a challenge to jurisdiction over Hurley and Chen by submitting an affidavit supporting jurisdiction over YouTube. YouTube, however, did not contest jurisdiction to begin with.

[9] Nor can it. Defendants Hurley and Chen are residents of California who work in California. Neither has ever lived in Ohio. Neither has property in Ohio. Neither has done any business in Ohio. Indeed, Chen has never been to Ohio, while Hurley only visited Ohio about eight to ten times for college track and field and cross country running events.

would be protected by the corporate veil doctrine. Even if Ohio's RICO statute could pierce the corporate veil and reach Chen and Hurley, it can do so only if there is personal jurisdiction over them. It is bootstrapping to claim that jurisdiction over the corporation leads inexorably to jurisdiction over individual employees of that corporation, regardless of their contacts with Ohio. Bypassing the minimum contacts analysis in this way would be inconsistent with due process.

Contrary to Universal's argument, the fiduciary shield doctrine *does* insulate Chen and Hurley from being subject to jurisdiction in Ohio courts based upon their positions as officers of YouTube. In Ohio, the activities of corporate officers on behalf of a corporation do not confer jurisdiction over the individuals. *United States v. Flack*, No. 2:96-CV-122, 1997 U.S. Dist. LEXIS 1980, *11 (S.D. Ohio Jan. 31, 1997) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). In *Flack*, the court expressly noted that while some jurisdictions have abandoned the fiduciary shield doctrine, district courts in Ohio continue to apply the doctrine as a limit to personal jurisdiction. *See also Walker v. Concoby*, 79 F. Supp. 2d 827, 834 (N.D. Ohio 1999) (quoting *Weller* for the proposition that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," but noting that Ohio courts may exercise jurisdiction over a corporate officer if the officer were physically present in Ohio and engaged in a tortious transaction). Ignoring this precedent, Universal instead relies on inapplicable cases from jurisdictions that, unlike Ohio, have abandoned the fiduciary shield doctrine. (Opp. Br. 14.) Pursuant to *Flack*, *Weller*, and *Walker*, this Court cannot exercise jurisdiction over Chen and Hurley simply because they are officers of YouTube, and Universal has presented the Court with no facts that Chen or Hurley themselves committed any tortious acts while in Ohio. Thus, pursuant to Rule 12(b)(2), the Court should dismiss Universal's Ohio RICO claim for lack of personal jurisdiction.

### b.    Universal leaves out allegations regarding material elements.

Here again, Universal misrepresents the crux of YouTube's motion to dismiss the Ohio RICO claim. You Tube does not contend that Universal's claim must fail because the "person" and "enterprise" need to be distinct. YouTube contends that, as pleaded, Universal's RICO claim does not line up with the words of the statute.

12

As noted in the opening brief, the Ohio RICO statute states that "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Ohio Rev. Code Ann. § 2923.32(A)(1). Universal reiterates these requirements in its brief. (Opp. Br. 14.) Nonetheless, Universal's Complaint does not plead these elements.

In its complaint, Universal alleges that the *YouTube* engages in allegedly corrupt activity such as criminal copyright infringement and distribution of live musical performances. (*See* Compl. ¶¶ 114-27, 129-32, and 137-40.) It does not allege that Chen and Hurley are engaged in such activity. Nor can it; the alleged infringing activity is committed by third parties who post content on YouTube's website. And while the statute requires Universal to plead that Hurley and Chen engaged in corrupt activity while conducting the affairs of YouTube, Universal alleges the reverse: that YouTube, *not* Chen and Hurley, has engaged in corrupt activity. Universal seeks to hold Chen and Hurley liable merely because they are officers of YouTube. Such allegations do not track the statute. *See* Ohio Rev. Code Ann. § 2923.32(A)(1) & (2). Consequently, the Court should dismiss the Ohio RICO claim pursuant to Rule 12(b)(6).

### c.    The DMCA safe harbor precludes Universal's RICO claim.

Universal's argument concerning the Digital Millennium Copyright Act ("DMCA") is simply bizarre. Without citing any authority, Universal claims that YouTube, as a "mere website," is not an "Internet Service Provider" ("ISP"), and thus that the DMCA does not apply to it. Were this the law, it would come as quite a shock to the thousands of "mere websites" that register DMCA agents, establish notice-and-takedown procedures, and employ thousands of people to process notices of claimed infringements. But of course, this is not the law.

As Universal notes, the DMCA has two separate classes of ISPs. The first class includes what people vernacularly refer to as "ISP"s: the Verizons, Comcasts, AT&Ts, and the like, who provide pure connectivity. These ISPs come under 17 U.S.C. § 512(a), which provides immunity without any obligation to implement notice-and-takedown procedures (as they do not store anything to begin with, there's nothing to take down).

The second class of ISPs is much broader, and encompasses any entity that stores, locates, or caches data on the Internet.  *See* 17 U.S.C. § 512(b)-(d).  As the court held in *In re Aimster*, "[a] plain reading of both definitions reveals that 'service provider' is defined so broadly that we have trouble imagining the existence of an online service that *would not* fall under the definitions." 254 F. Supp. 2d 634, 658 (N.D. Ill. 2002) (emphasis added), *affirmed* 334 F.3d 643 (7th Cir. 2003).  Every court to consider the applicability of the DMCA to "mere websites" has found that they come within the DMCA's ambit.  *See, e.g, Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) (Amazon as ISP); *Parker v. Google*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) (Google as ISP); *Perfect 10, Inc. v. CCBill LLC,* 340 F. Supp. 2d 1077 (C.D. Cal. 2004) (credit card service as ISP).  YouTube is an Internet service that stores and indexes material that is posted by its users.  There can be no question that it is an "ISP" under the DMCA.

Universal's other point concerning the DMCA is similarly misplaced.  It consists of an argument that YouTube has actual knowledge of infringing files and fails to act on that knowledge, thus disqualifying it from DMCA safe harbors.  Such questions, Universal argues, are one of fact and preclude dismissal.  Universal misses the point:  there are no such allegations in Universal's complaint.  Nor could there be.  Universal has never sent YouTube a DMCA notice, because Universal is not a copyright holder.  *A fortiori*, Universal cannot allege that YouTube has failed to respond to such notices.  Neither does Universal allege that anyone *else* has sent a notice to which YouTube has not responded.  In fact, Universal alleges just the opposite.  (Compl. ¶¶ 25, 34, 39.)  Universal's *speculation*, in its brief, that YouTube somehow acquires knowledge of infringing postings of the works of unnamed third parties independent of such notices, and that it somehow fails to act on that knowledge, cannot substitute for pleading *facts* that would support such speculation.

14

      **d.**     **Universal's Ohio RICO claim is expressly barred by the CDA.**

Universal's CDA argument simply ignores the case law cited in our opening brief. Universal argues that its Ohio RICO claim is not preempted because it is based upon a federal intellectual property claim. It is not. Universal's claim rests upon an Ohio state statute, which itself depends on an underlying allegation of criminal conduct; Universal does not assert that YouTube has infringed any Universal copyright. Yet lacking its own copyright claims, Universal tries to litigate someone else's by dressing them up in the cloak of Ohio RICO law.

In any event, the recent decision in *Perfect 10, Inc. v. CCBill LLC* establishes that *all* state court causes of action are preempted, regardless whether they are based on claims denominated "intellectual property" or not. Nos. 04-57143, -57207, 2007 U.S. App. LEXIS 7238, *33 (9th Cir. Mar. 29, 2007). Since Universal's RICO claim is based on Ohio state law, it is preempted.[10]

The court in *Doe v. Bates* also held that state law civil claims do not survive CDA preemption, even if the underlying criminal claims on which they are based would. No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348, *8 (E.D. Tex. Dec. 27, 2006). "Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws." *Id.* at 12. The CDA therefore preempts Universal's state law RICO claim based upon allegations of criminal copyright infringement.[11]

Universal's reliance on *MGM v. Grokster*, 545 U.S. 913 (2005), is similarly misplaced. YouTube's (and the *Doe* court's) interpretation of the CDA would not mean that "websites such as Grokster [would be] immune from copyright infringement claims." (Opp. Br. 19.) The

---

[10] As Perfect 10 also points out, "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC* Nos. 04-57143, -57207, 2007 U.S. App. LEXIS 7238, *31-32 (9th Cir. Mar. 29, 2007) (citations omitted).

[11] The same analysis applies to state law civil claims based on underlying federal intellectual property claims. But, again, that is not what Universal has alleged here.

claims in *Grokster* were civil federal copyright claims, and thus the CDA did not preempt them.

        **e.**    **The alleged Ohio RICO violation is not the proximate cause of Universal's injuries.**

Universal has no standing to bring its Ohio RICO claim because there is no proximate causal connection between its alleged injury—unwelcome visits to its website—and the alleged corrupt activity—criminal copyright infringement. Although Ohio RICO law allows some indirectly injured persons to assert claims, the alleged injuries here are too legally remote from the alleged criminal conduct. An Internet user's misspelling of the web address YouTube.com is entirely divorced from any alleged corrupt activity by YouTube. Indeed, the unwanted traffic may result solely from the misspellings of Internet users looking for posted material that does not violate copyright laws. As such, Universal's claim is not like one brought by a union health trust against a tobacco company to recover medical expenses paid by the trust and allegedly caused by beneficiaries' smoking. *See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 771 (N.D. Ohio 1998). Here, unlike in *Iron Workers*, the injury is more than just indirect, it bears absolutely no relation to the alleged corrupt activity.

## III.    Conclusion

For the above reasons, Universal's claims should be dismissed without leave to amend.

Dated:  March 30, 2007                    Respectfully Submitted

                              By:___/s/ Matthias A. Kamber_____
                                    HARRY D. CORNETT, JR. - #13179
                                    CAROLYN C. RUSSELL - #73549
                                    Tucker Ellis & West LLP
                                    1150 Huntington Building
                                    925 Euclid Avenue
                                    Cleveland, OH 44115-1475
                                    Telephone:  216/696-2618
                                    Facsimile:  216/592-5009

                                    MICHAEL H. PAGE
                                    MARK A. LEMLEY
                                    MATTHIAS A. KAMBER
                                    Keker & Van Nest, LLP
                                    710 Sansome St.
                                    San Francisco, CA 94111
                                    Telephone:  415/391-5400
                                    Facsimile:   415/397-7188

                                    *Attorneys for Defendants, YouTube, Inc.,
                                    Chad Hurley, and Steve Chen*

### L.R. 7.1(f) Certification

I hereby certify that the foregoing **DEFENDANTS' REPLY TO RULE 12(b)(6) and 12(b)(2) MOTION TO DISMISS PLAINTIFF'S COMPLAINT (CLAIMS FOR RELIEF 1-8)** meets the page limitations set forth in L.R. 7.1. This case was placed upon the standard track pursuant to Order of this court on 3/8/2007 (Doc. #18).

/s/ Matthias A. Kamber
MATTHIAS A. KAMBER
Keker & Van Nest LLP
710 Sansome St
San Francisco, CA, 94111
Phone: (415) 391-5400
Fax: (415) 397-7188
E-mail: mkamber@kvn.com

### Certificate of Service

I hereby certify that on **March 30, 2007**, a copy of foregoing **DEFENDANTS' REPLY TO RULE 12(b)(6) and 12(b)(2) MOTION TO DISMISS PLAINTIFF'S COMPLAINT (CLAIMS FOR RELIEF 1-8)** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Matthias A. Kamber
MATTHIAS A. KAMBER
Keker & Van Nest LLP
710 Sansome St
San Francisco, CA, 94111
Phone: (415) 391-5400
Fax: (415) 397-7188
E-mail: mkamber@kvn.com