IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL TUBE & ROLLFORM EQUIPMENT CORPORATION, | Case No. 06-2628 |
| *Plaintiff,* | |
| -vs- | Judge: James G. Carr |
| YOUTUBE, INC., CHAD HURLEY, AND STEVE CHEN, | **PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION TO DISMISS** |
| *Defendants.* | |

Plaintiff, Universal Tube & Rollform Equipment Corporation ("uTube"), by and through its undersigned attorneys, hereby submits its Surreply to YouTube's Motion to Dismiss. The Surreply is necessary to respond to new arguments and assertions made by Defendants in their reply brief.

I.   ARGUMENT

   A.   **uTube has properly pled its claim for violation of 15 U.S.C. 1125(a) against yTube.**

yTube initially claimed that Plaintiff did not allege its mark was protectable. This argument has been thoroughly dealt with and the specific factual allegations in the Complaint were clearly listed for yTube. Amazingly, yTube has no response to the factual allegations and completely ignores them. Rather than read those factual allegations and comment on them, yTube simply ignores them and pretends they don't exists. In its reply, yTube asks for more

facts even though it did not respond to the previous ones. In this absurd request yTube goes beyond attacking the pleadings to once again seeking summary judgment on facts outside the pleadings. The Complaint clearly sets forth allegations that Plaintiff owns a mark and this is all that is required.

      **B.   15 U.S.C. § 1119 and § 1064 provide this Court with authority over applications.**

yTube asserts several new arguments in an attempt to avoid the clear meaning of 15 U.S.C. §1119. First yTube imagines that the holdings of the cases cited by Plaintiff simply don't apply because they were raised in other procedural contexts. This of course would be akin to suggesting that trademark rulings made in injunction hearings should not count, but rulings in summary judgment decisions do.

yTube cites <u>Johnny Blastoff Inc. v. Los Angeles Rams Football Co</u>., 48 U.S.P.Q.2d 1385 (W.D. Wis. 1998) for the apparent proposition that courts do not have authority over trademark applications. Rather, the case stands as an example of a district court in Wisconsin that was thoroughly confused. The court was in a position to fully litigate all issues yet forced the parties to determine the mark rights at the PTO.

Anytime there is federal court infringement litigation involving marks that have applications pending, the parties are exposed to litigating in two forums; the federal court and the Patent and Trademark Office.

> In a case where neither tribunal has rendered a decision, the court probably should not stay proceedings but go ahead, since it has the power to determine both the right to common law use and the right to federal registration in most cases. A judgment of a federal court is clearly binding upon the Trademark Board, while an administrative decision of the Trademark Board may have only persuasive value in later court

2

    proceedings. J. Thomas McCarthy, McCarthy on Trademarks and Unfair
    Competition § 32:49 (4th ed.2000).

yTube simply cannot deny that 15 U.S.C. §1119 gives this court the full and complete authority over the registration records at the PTO.

    **C.**    **This Court should exercise pendant jurisdiction or certify Universal's novel claims to the Ohio State Supreme Court.**

In a new argument, yTube suggests this court should not exercise pendant jurisdiction. The basis for this argument is that some of the state law claims are novel. yTube cites no authority to support the notion that pendant jurisdiction is remotely related to the novelty of the claims or with a request to certify. Instead yTube plays games suggesting that maybe if the claims were brought in state court it wouldn't remove them, but makes no such promise.

Even if the parties wanted to litigate the RICO claim in state court, it is not clear whether or not that would be possible. The RICO acts are based upon copyright law. Copyright claims fall within the exclusive jurisdiction of the federal district courts pursuant to 28 U.S.C. § 1338(a). In relevant part, § 1338 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." An Ohio state court would have to make copyright rulings in order to hear this RICO claim and that court would not have subject matter jurisdiction to do so.

The remaining state law claims are intertwined with the rest of this case. While a federal court does not have to exercise pendant jurisdiction it does so for reasons of judicial economy.

Certifying questions to the Ohio Supreme Court have nothing to do with the basis for this court to assert pendant jurisdiction over the state law claims.

It is understandable why yTube does not want the Ohio Supreme Court to rule that its actions violate Ohio law, but yTube has not given any reason why it is not appropriate.

### D. Ohio Common Law Dilution does not require a famous mark.

yTube like many others is confused regarding the elements of dilution in Ohio, thus showing the clear need for Supreme Court review. yTube's contention that Ohio common law dilution requires fame is clearly erroneous and simply contrived. Under Ohio common law, dilution does not require regional or national fame. See Ameritech, Inc. v. American Info. Tech. Corp., 811 F.2d 960, 965 (6th Cir. 1987); Reed Elsevier, Inc. v. the law.net Corp., 269 F. Supp2d 942, 952 (S.D. Ohio 2003). Yet, yTube goes on to claim that all of the cases cited by uTube require the element of a famous mark. This is brazenly incorrect. To succeed on a claim of Ohio common law dilution the senior user must possess a *distinctive* mark, not a famous mark. Ameritech, Inc., 811 F.2d at 965; Reed Elsevier, Inc., 269 F. Supp2d at 952 (emphasis added). In Ameritech the court held that a mark strong in a particular geographical or product area deserves trademark protection. Ameritech, Inc., 811 F.2d at 967 (citing Dreyfus Fund Inc. v. Royal Bank of Canada, 525 F. Supp. 1108, 1114 (S.D.N.Y. 1981)). This should not be interpreted as requiring regional fame as yTube is asking this Court to do. Strength of a mark is not synonymous with fame of a mark. Moreover, the Ameritech court was *not requiring* the mark to be strong in a particular geographical or product area, it was merely stating that a particularly strong mark should receive trademark protection.

Further, yTube states that Reed sets forth the four elements of a dilution claim, the first element being that the senior mark must be famous. Although the Reed court did set forth *five* elements of a dilution claim, yTube apparently ignored the relevant portion of the sentence that explicitly stated that the elements were for a claim of trademark dilution under the Lanham Act, not Ohio common law. See Reed Elsevier, Inc., 269 F. Supp.2d at 952.

yTube also continues to inappropriately rely on the dicta of the court in Jet, Inc. v. Sewage Aeration Sys., 165 F.3d 419 (6th Cir. 1999). The Jet court, which relied on Ameritech, held that the disputed marks were not sufficiently similar to support a finding of dilution, not that the mark lacked fame. *Id.* at 424. Clearly, yTube's interpretation of Ameritech, Reed, and Jet is in error.

yTube's reply suggests, that uTube claims that regional fame is required for an Ohio common law dilution claim. Rather, uTube's response to yTube's motion emphasizes that Ohio common law dilution does not require any degree of fame. Thus, contrary to yTube's suggestion, Ohio does not have to enact a statute. uTube clearly alleged that UTUBE "is distinctive and a strong mark." (2nd Am. Compl.. ¶ 71). Therefore, this Court should find that uTube has pled sufficient facts to state a claim for Ohio common law dilution. Accordingly, this Court should deny yTube's motion to dismiss.

### E.     Trespass to chattels.

yTube begins its discussion on trespass to chattels by arguing the Plaintiff was not clear as to what chattel was being interfered with. One must wonder whether yTube is feigning ignorance or simply hasn't read the filings to date. "Plaintiff maintains that both the webservers he leases and the domain name itself are chattels which have been interfered with". (Mem. in

5

Opp. 9) Ohio courts have not ruled on whether or not domain names are property subject to conversion or trespass and yTube acknowledges this. yTube also does not deny that Plaintiff's complaint mirrored the restatement elements of trespass to chattels. yTube's extensive ramblings in this regard do little to clarify the issue and simply point to the need for certification to the Ohio Supreme Court.

uTube pled that it owns the chattel <utube.com> and that yTube's actions have diminished the value, quality, or condition of the chattel. (2nd Am. Compl. 79, 80). Additionally, uTube pled that these same actions have diminished its possessory interest in its computer network and website. (2nd Am. Compl. 82, 83). In the uTube Opposition to Defendant's Motion to Dismiss, uTube has clearly established that facts could be proven which would establish it is entitled to relief. (Opp. Br. 9-11). It is clear that a trespass to chattel occurs even when the defendant does not directly contact the chattel, but, as is the case here, causes others to contact the chattel. Whether a domain name is a chattel appears to be somewhat of a novel question. However, courts have previously held the definition of chattel includes internet based property and "a trespass to chattels claim can address some unwanted intrusions via the internet." (Def. Rep. 8).

yTube's reply concerning uTube's trespass to chattel claim is nothing more than a reproduction of the arguments made in its original motion to dismiss. Neither the original motion nor the reply indicates that the facts are undisputed. The contents of the briefs are evidence that the facts are very much in dispute, especially the facts concerning yTube's intent. Further, the issues of law appear to be somewhat novel and thus should only be evaluated "in the light of actual facts rather than a pleader's suppositions." Electrical Constr. & Maintenance Co. v. Maeda

Pacific Corp., 764 F.2d 619, 623 (9th Cir. 1985); Shull v. Pilot Life Ins. Co., 313 F.2d 445 (5th Cir. 1963); In re Richmond Produce Co., 118 Bankr. 753, 755 (Bankr. N.D. Ca., 1990).

Accordingly, the unsettled issues of law and fact involved with the uTube claim of trespass to chattels makes a Rule 12(b)(2) motion to dismiss inappropriate. Any Questions relating to Ohio law should be certified to the Ohio Supreme Court.

### F.    Ohio does not limit nuisance to interference with land

Plaintiff clearly set forth the reasons why nuisance should not be limited to real property but should also include internet real estate. yTube has not directly argued to the contrary but simply keeps reciting the same verses from the restatement of torts. Once again, yTube's arguments simply stand for the proposition that the Ohio Supreme Court should be given the opportunity to make up its own mind on this issues.

### G.    Plaintiff has clearly set forth that yTube owes it the duty of ordinary care.

yTube persists in its mantra that Plaintiff has not plead the existence of a duty. Plaintiff clearly spelled out that the duty of ordinary care is involved in this case. Plaintiff averred that "a reasonably prudent person would have anticipated that an injury was likely to result from the acts of the YouTube." (2nd Am. Compl. 93). Those acts were specified extensively throughout the rest of the Complaint. Plaintiff set forth the basis of the duty owed, which is "…to exercise due care in the operation of its internet website based upon the forseeability of the harms which have occurred." (2nd Am. Compl. 94). The existence of a duty depends upon the forseeability of harm. "If a reasonably prudent person would have anticipated that an injury was likely to result

from a particular act, the court could find that the duty element of negligence is satisfied." <u>Texler v. D.O. Summers Cleaners & Shirt Laundry Co.</u>, 81 Ohio St.3d 677, 680 (1998).

yTube has yet to respond to Plaintiff's arguments and simply claims again that no duty was alleged. Even a cursory reading of the Complaint shows otherwise.

**H.    The Ohio Deceptive trade practices claim is not ripe for dismissal.**

yTube again claims a pleading deficiency which does not exist. Plaintiff has already explained that its factual allegations of mark ownership were sufficient and yTube adds nothing new in this section.

**I.    Violation of Ohio's RICO statute.**

<u>1.  Jurisdiction over Hurley and Chen</u>

yTube now argues that uTube has not plead any facts which create jurisdiction over Chen and Hurley. As previously set forth, a court is entitled to examine evidence outside the pleadings in ruling on a Fed.R.Civ.P. 12(b)(2) motion. To this end Plaintiff included the declaration of William Dusseau with its memorandum in opposition which clearly set for facts creating jurisdiction over Chen and Hurley arising from the interactive website they operated. As already explained, since this is a RICO claim and the fiduciary shield doctrine does not protect Chen and Hurley, and they directed these activities, they are subject to jurisdiction.

In general, the fiduciary shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts. However, Ohio courts would not apply the fiduciary shield doctrine under all circumstances. In <u>Heritage Funding & Leasing Co. v. Phee,</u> 120 Ohio App.3d 422 (1997), the

court subjected an officer of a company who had transacted business in Ohio to Ohio's long-arm statute even though he had acted in his official capacity in those transactions. Hence, the mere fact that the officer had acted in his official capacity did not prevent the exercise of personal jurisdiction over him.

Ohio law also recognizes that corporate officers may be liable in their individual capacity for acts of fraud. In Centennial Ins. Co. v. Tanny Internatl., 46 Ohio App.2d 137 (1975), the court held: " Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also." See, also, Lepera v. Fuson, 83 Ohio App.3d 17, 23 (1992) ("A tort victim is entitled to recover from the agent as well as the principal for fraudulent misstatements made by the agent in the course of his employment."), citing Stuart v. Natl. Indemn. Co., 7 Ohio App.3d 63 (1982).

Regardless of yTube's misconceptions there is binding Sixth Circuit precedent. The Sixth Circuit Court of Appeals overruled, or at least severely limited, the application of the fiduciary shield doctrine in its decision in Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.3d 683, 697-98 (6th Cir.2000) cert. denied 531 U.S. 927 (Oct. 10, 2000). That case involved a Lanham Act false advertising claim by a manufacturer of industrial products against a competitor, its president, and its sales manager. The Sixth Circuit held that the mere fact that the actions connecting the individual defendants to the state were undertaken in an official rather than a personal capacity did not preclude the exercise of personal jurisdiction over those defendants. The court stated:

> [T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional

9

>notions of fair play and substantial justice; i.e., whether [ ]he personally
>availed [him]self of the forum and the reasonably foreseeable consequences
>of that availment.  Balance Dynamics at 698.

Here, there is no doubt that Plaintiff has alleged that Hurley and Chen were actively and personally involved in all aspects of the operation of the YouTube website.

This is a RICO claim.  It would be absurd to suggest that the Court has jurisdiction over the illegal enterprise but does not have jurisdiction over those who conducted that illegal enterprise.

### 2.  uTube has properly pleaded all of the elements of an Ohio RICO claim.

Plaintiff has fully addressed yTube's argument that it has not properly plead a RICO claim.  yTube continues to re-hash the same arguments without apparently actually reading the complaint or Plaintiff's memorandum in opposition.  The persons (Hurley and Chen) are distinct from the illegal enterprise (yTube).  If yTube wants to seriously argue that they are not distinct then it must be claiming yTube is the alter ego of Hurley and Chen.  Of course, if this is the case, they would be liable for the acts of the corporation.

yTube has apparently thought better of its previous argument that  criminal infringement under 17 U.S.C. § 506(a)(1)(A) and (B) do not exist.  As previously pointed out by Plaintiff the current amended version of 17 U.S.C. § 506 actually does contain this provision.  The statute was amended in 2005 by Pub.L. 109-9, § 103(a), which rewrote subsection (a). yTube now has no response to this issue.

### 3.  The DMCA safe harbor does not excuse yTube's copyright infringement.

yTube continues to ignore significant portions of the DMCA in its claim that the DMCA is a defense to its willful copyright infringement. In its response, yTube addresses only two DMCA sections, the definition of an ISP (17 U.S.C. § 512(k)) and the notice and take down safe

harbor (17 U.S.C. § 512(c)(1)(C)). yTube has again failed to address the requirements described in 17 U.S.C. § 512(c)(1)(A), 512(c)(1)(B), and 512(i). (See Opp. Br. 17-18). yTube must comply with all the requirements of the DMCA to avail itself of the safe harbor not just its two favorite requirements. Even if the Court is convinced yTube is an ISP and following the notice and take down requirement, factual issues remain concerning yTube's conformance with the requirements in sections 512(c)(1)(A), 512(c)(1)(B), and 512(i). yTube has yet to offer any facts that allege it meets these requirements and the Court should not speculate as to the existence of such required facts to find the DMCA a valid defense to yTube's willful copyright infringement or valid grounds to dismiss the Ohio RICO claim.

yTube has also apparently forgotten the actual claim that uTube made. uTube is claiming that yTube, under the control and direction of its founders Chad Hurley and Steven Chen, has violated Ohio's RICO statute. (Comp. ¶¶ 106-144). uTube has properly pled all of the elements of an Ohio RICO claim, including the element of a pattern of corrupt activity. (Opp. Br. 14). The corrupt activity is yTube's willful and continuous copyright infringement. (Comp. ¶¶ 106-144). yTube suggests that it was necessary for uTube to plead that yTube did not comply with the DMCA to survive a motion to dismiss. (Def. Rep. 14). However, the DMCA is a defense being asserted by yTube. The DMCA is not a part of the uTube claim. uTube has no burden to plead facts in its complaint to counter potential defenses yTube might raise in an answer. yTube has the burden of proving its defenses and can attempt to do so at the appropriate stage in the proceedings. Accordingly, YouTube's DMCA based motion for dismissal of the RICO claim should be denied.

### 4.  YouTube's Copyright infringement is not excused by the Communications Decency Act (CDA).

yTube continues its practice of selectively quoting from statutes and case law in an attempt to forge a convoluted theory which would exempt it from the federal copyright statutes. yTube's analysis continues to ignore the plain language of the CDA that expressly states "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). The CDA is not a defense against a claim of a violation of a federal intellectual property law such as the federal copyright statutes.

In Doe v. Bates the court was dealing with allegations related to the violation of 18 U.S.C § 2252. Doe v. Bates, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 *1 (E.D. Texas Dec. 27, 2006). This statute pertains to the sexual exploitation of children *not* intellectual property law. The immunity that the court described was an interpretation of 47 U.S.C. § 230(e)(1) not section 230(e)(2) pertaining to intellectual property. Id. at 3. In fact, the court in Perfect 10, Inc. v. CCBill LLC held that the immunity provided by the CDA "does not clothe service providers in immunity from 'law[s] pertaining to intellectual property'." Perfect 10, Inc. v. CCBill LLC, No. 04-57143, 2007 WL 925727 *11 (9th Cir. Mar. 29, 2007). Further, yTube suggests there is some distinction between a civil and criminal violation of intellectual property law (Def. Rep. 15-16), but the court made no such distinction. See generally Perfect 10, Inc. at 11. The court further defined "intellectual property" as "federal intellectual property" in finding that CDA immunity applies to state intellectual property laws, but not federal intellectual property laws. Perfect 10, Inc. at 11. The uTube claim is based on a violation of federal copyright law and so is not preempted by the CDA.

Accordingly, yTube's willful and knowing violation of federal copyright law is not excused by the CDA and because yTube's willful and knowing violation of federal copyright law is not excused, such violations can constitute the predicate acts for the RICO claim.

<u>5.  The RICO violation is the proximate cause of  uTube's injuries.</u>

yTube initially did not understand that  Ohio's RICO statute  provides persons *indirectly* injured by violations of the Act, or by conspiracies to violate the Act, with standing to bring an action. O.R.C. §2923.34(B); <u>Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc</u>. 23 F.Supp.2d 771, (N.D.Ohio 1998) (holding that a union health trust had standing to sue tobacco companies to recover medical expenses paid by the trust and allegedly caused by beneficiaries' smoking even though corrupt acts were directed against others).

Now yTube apparently argues, without rationale or case law in support, that the injuries are too remote from the alleged criminal conduct.  The injury received by Plaintiff is however more direct that the injury in <u>Iron Workers</u>.   In this case the criminal act of copyright infringement caused the yTube website to be overrun with traffic.  But for yTube's illegal acts there would have been no deluge of traffic.  The traffic then caused the nuisance injury directly to the Plaintiff.

**II.     <u>CONCLUSION</u>**

Based on the foregoing points and authorities, Plaintiff requests that the Court deny Defendants' Motion to Dismiss in its entirety.  In the alternative, Plaintiff requests that the Court allow an opportunity for jurisdictional discovery if needed and/or the opportunity to amend Plaintiff's Complaint to conform to the Court's ruling.

If the Court intends to dismiss Plaintiff's claim for trespass to chattels, nuisance or dilution under Ohio law, Plaintiff requests this Court to suspend these proceedings in lieu of dismissal of the claims, to permit Plaintiff to certify the questions relating to these state law

causes of action and any novel claims to the Ohio Supreme Court pursuant to Ohio Supreme Court Rules of Practice Rule 18(1) ("S.Ct.R. 18(1)").

Dated: April 13, 2007                                    Respectfully submitted,

/s/ Anthony J. DeGidio
Anthony J. DeGidio (# 0069064)
Fraser Clemens Martin & Miller LLC
28366 Kensington Lane
Perrysburg, OH 43551-1401
419-874-1100
Fax: 419-874-1130
Email: tony@cyberlawyer.com
Co-Counsel for Plaintiff, Universal Tube
& Rollform Equipment Corporation

/s/ Richard G. Martin
Richard G. Martin (# 0043822)
Fraser Clemens Martin & Miller LLC
28366 Kensington Lane
Perrysburg, OH 43551-1401
419-874-1100
Fax: 419-874-1130
Email: martin@fraser-ip.com
Co-Counsel for Plaintiff, Universal Tube
& Rollform Equipment Corporation